**No. 23-4174**

---

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

---

### UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

**v.**

### WILLIAM ANTHONY DAVIS, JR.,
*Defendant/Appellant*.

---

**On Appeal From the United States District Court
for the Eastern District of Virginia
Newport News Division  (The Hon. Roderick C. Young)**

---

### JOINT APPENDIX

### VOLUME I of II (pages 1 - 168)

---

| | |
|---|---|
| **G. ZACHARY TERWILLIGER** | **GEREMY C. KAMENS** |
| **United States Attorney** | **Federal Public Defender** |
| | |
| | **Patrick L. Bryant** |
| **Peter G. Osyf** | **Appellate Attorney** |
| **Joseph Attias** | **Andrew W. Grindrod** |
| **Assistant United States Attorneys** | **Assistant Federal Public Defender** |
| **Counsel for Appellee** | **Counsel for Appellant** |
| **721 Lakefront Commons, Suite 300** | **1650 King Street, Suite 500** |
| **Newport News, VA 23606** | **Alexandria, VA 22314** |
| **(757) 591-4000** | **(703) 600-0800** |

This page intentionally left blank for double-sided pagination and printing

## <u>TABLE OF CONTENTS</u>

VOLUME I (pages 1 - 168)

District Court Docket Sheet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Indictment (July 18, 2022, Doc. 3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Transcript, Plea Hearing (Aug. 31, 2022, Docs. 17, 49) . . . . . . . . . . . . . . . . . . . 11

Statement of Facts (Aug. 31, 2022, Doc. 18) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

United States' Sentencing Position and Motion for Upward Variance
    (Dec. 21, 2022, Doc. 24) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Defendant's Position With Respect to Sentencing Factors and Motion for
    Downward Variance (Dec. 21, 2022, Doc. 25) . . . . . . . . . . . . . . . . . . . . . . . . . 53

        Exhibit 1 (letter in support) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

United States' Motion to Grant an Additional One-Level Reduction in the
    Offense Level for Acceptance of Responsibility (Dec. 22, 2022, Doc. 26) . . . 69

Defendant's Additional Letter in Support (Dec. 28, 2022, Doc. 27) . . . . . . . . . . 71

Transcript, Sentencing Proceedings (Jan. 23, 2023, Docs. 28, 50) . . . . . . . . . . . 75

District Court's Order (continuing sentencing) (Jan. 23, 2023, Doc. 29) . . . . . . . 82

Defendant's Objection to the Presentence Investigation Report
    (Jan. 30, 2023, Doc. 30) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

United States' Response to Defendant's Objection to the Presentence
    Investigation Report (Feb. 6, 2023, Doc. 31) . . . . . . . . . . . . . . . . . . . . . . . . . . 90

Defendant's Reply to Government's Response (Feb. 8, 2023, Doc. 32) . . . . . . . . 98

Notice of Supplemental Authority Supporting Defendant's Objection to
    the Presentence Investigation Report (Feb. 24, 2023, Doc. 34) . . . . . . . . . . . 100

i

This page intentionally left blank for double-sided pagination and printing

Exhibit 1 (Defense sentencing objections, *United States v. Cradle*, E.D. Va. No. 3:22-cr-99) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102

Exhibit 2 (Government's response to objections, *United States v. Cradle*) . . 108

Exhibit 3 (Sentencing minutes, *United States v. Cradle*) . . . . . . . . . . . . . . . 115

Transcript, Sentencing Proceedings, continued (Feb. 27, 2023, Docs. 36, 48) . . 119

Judgment in a Criminal Case (Feb. 27, 2023, Doc. 38) . . . . . . . . . . . . . . . . . . 160

Notice of Appeal (Mar. 13, 2023, Doc. 41) . . . . . . . . . . . . . . . . . . . . . . . . . . . 167

## VOLUME II (pages 169 - end) – SEALED

Presentence Report (final) (Feb. 28, 2023, Doc. 40) . . . . . . . . . . . . . . . . . . . . . 169

Sealed Statement of Reasons (Feb. 27, 2023, Doc. 39) . . . . . . . . . . . . . . . . . . . 190

This page intentionally left blank for double-sided pagination and printing

APPEAL,CLOSED

# U.S. District Court
## Eastern District of Virginia – (Newport News)
### CRIMINAL DOCKET FOR CASE #: 4:22–cr–00057–RCY–DEM–1

Case title: USA v. Davis

Date Filed: 07/18/2022
Date Terminated: 02/27/2023

Assigned to: District Judge
Roderick C. Young
Referred to: Magistrate Judge
Douglas E. Miller

Appeals court case number:
23–4174 4CCA Case Manager
Cathy Poulsen

**Defendant (1)**

| | | |
|---|---|---|
| **William Anthony Davis, Jr.**<br>*TERMINATED: 02/27/2023* | represented by | **Andrew William Grindrod**<br>Office of the Federal Public Defender for the Eastern Distri<br>500 East Main Street<br>Suite 500<br>Norfolk, VA 23510<br>757–457–0860<br>Fax: 757–457–0880<br>Email: andrew_grindrod@fd.org<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Public Defender* |

| **Pending Counts** | **Disposition** |
|---|---|
| T.18:922(g)(1) and 924(e)(1) – Felon in Possession of a Firearm / T.18:924(d)(1) and T.28:2461(c) – Criminal Forfeiture<br>(1) | 72 Months Imprisonment, 3 Years Supervised Release, $100 Special Assessment. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

**Plaintiff**

| | | |
|---|---|---|
| **USA** | represented by | **Amy E Cross**<br>United States Attorney Office (Newport News–NA) |

**J.A. 001**

721 Lakefront Commons
Suite 300
Newport News, VA 23606
**NA***
Email: amy.cross@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: US Attorney*

**Elizabeth Nielsen**
Fountain Plaza Three
721 Lakefront Commons
Suite 300
Newport News, VA 23606
202–880–2248
Email: elizabeth.nielsen@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: US Attorney*

**Grace H. Bowen**
DOJ–USAO
721 Lakefront Commons
Suite 300
Newport News, VA 23606
757–591–4019
Email: gbowen@usa.doj.gov
*ATTORNEY TO BE NOTICED*

**Peter G. Osyf**
United States Attorney Office – Newport
News
Fountain Plaza Three
721 Lakefront Commons
Suite 300
Newport News, VA 23606
757–591–4000
Email: peter.osyf@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/18/2022 | 3 | INDICTMENT RETURNED AND FILED IN OPEN COURT as to William Anthony Davis, Jr (1) count(s) 1. On motion of the Government, the Court directed a warrant to be issued. (Attachments: # 1 Criminal Cover Sheet) (bpet, ) (Entered: 07/19/2022) |
| 07/18/2022 | 1 | MOTION to Seal Indictment by USA as to William Anthony Davis, Jr. (bpet, ) (Entered: 07/19/2022) |
| 07/18/2022 | 2 | ORDER granting 1 Motion to Seal Indictment as to William Anthony Davis Jr. Further ORDERED that the indictment be unsealed upon the initial appearance of the defendant. Signed by Magistrate Judge Douglas E. Miller on 7/18/22. (bpet, ) (Entered: 07/19/2022) |
| 07/19/2022 | 6 | Arrest Warrant Issued and delivered to USM in case as to William Anthony Davis, Jr. (bpet, ) (Entered: 07/19/2022) |
| 08/10/2022 | | Set Hearings as to William Anthony Davis, Jr: Initial Appearance set for 8/10/2022 at 02:30 PM in Norfolk Mag Courtroom 2 before Magistrate Judge Robert J. Krask. (lwoo) (Entered: 08/10/2022) |
| 08/10/2022 | | Case unsealed as to William Anthony Davis, Jr (mrees, ) (Entered: 08/11/2022) |
| 08/10/2022 | 7 | Minute Entry for proceedings held before Magistrate Judge Lawrence R. Leonard: Initial Appearance as to William Anthony Davis, Jr held. (Court Reporter FTR.) Deft present in custody. Govt appeared through Amanda Turner, AUSA. Defendant to |

| | | |
|---|---|---|
| | | retain Andrew Sacks. Government Motion for Detention. Temporary Detention Ordered. Arraignment and Detention Hearing set for 8/15/2022 at 02:00 PM in Newport News Courtroom 2 before Magistrate Judge Lawrence R. Leonard. Deft remanded to USM custody. (mrees, ) (Entered: 08/11/2022) |
| 08/10/2022 | 8 | Arrest Warrant Returned Executed on 8/10/2022 in case as to William Anthony Davis, Jr. (dbra, ) (Entered: 08/11/2022) |
| 08/10/2022 | 9 | Temporary Detention Order as to William Anthony Davis, Jr. Signed by Magistrate Judge Lawrence R. Leonard on 8/10/22. (mrees, ) (Entered: 08/11/2022) |
| 08/12/2022 | | Reset Hearings as to William Anthony Davis, Jr: Arraignment and Detention Hearing reset for 8/15/2022 at 02:30 PM in Norfolk Mag Courtroom 2 Magistrate Judge Lawrence R. Leonard. (lwoo) (Entered: 08/12/2022) |
| 08/15/2022 | 10 | Pretrial Services Bond REPORT (Initial Pretrial Services Bond Report) (SEALED – government and defense counsel) as to William Anthony Davis, Jr. (bell, robert) (Entered: 08/15/2022) |
| 08/15/2022 | 11 | Minute Entry for proceedings as to William Anthony Davis, Jr held 8/15/22 before Magistrate Judge Lawrence R. Leonard. Elizabeth Nielsen, AUSA, appeared on behalf of Govt. Defendant present, in custody. Defendant unable to retain counsel and requests court appointed counsel–GRANTED. Amanda Conner, AFPD, appointed in open court. DPPA given to prosecutor. Detention Hearing continued to 8/18/2022 at 02:00 PM in Newport News Courtroom 2 before Magistrate Judge Lawrence R. Leonard. Defendant remanded. (Court Reporter FTR.)(lwoo) (Entered: 08/16/2022) |
| 08/15/2022 | 12 | CJA 23 Financial Affidavit by William Anthony Davis, Jr (lwoo) (Entered: 08/16/2022) |
| 08/15/2022 | 13 | ORDER – This matter comes before the Court on its own initiative. Pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No 116–182, 134 Stat. 894 (Oct. 21, 2020), the Court ORDERS the United States to adhere to the disclosure obligations set forth in Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. Brady v. Maryland instructs that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. at 87. Failure to adhere to this requirement may result in serious consequences, up to and including vacating a conviction or disciplinary action against the prosecution. Having given counsel the oral admonition required by the Due Process Protections Act, this Order serves as the reminder of prosecutorial obligation and duties in accordance with Rule 5(f) and the Eastern District of Virginia Standing Order concerning the same as to William Anthony Davis, Jr. Signed by Magistrate Judge Lawrence R. Leonard on 8/15/22. (lwoo) (Entered: 08/16/2022) |
| 08/18/2022 | 14 | ORDER OF DETENTION as to William Anthony Davis, Jr. Signed by Magistrate Judge Lawrence R. Leonard on 8/18/22. (jhie, ) (Entered: 08/18/2022) |
| 08/18/2022 | 15 | Minute Entry for Arraignment and Detention Hearing as to William Anthony Davis, Jr held on 8/18/2022 before Magistrate Judge Lawrence R. Leonard. Defendant present, in custody. Detention hearing held. Proffer and argument of counsel heard. Govt motion for detention–GRANTED. Arraignment held. Defendant waived formal arraignment, entered plea of not guilty, wishes to appear at preliminary hearings and demands jury trial. Preliminary motions deadline 9/8/22. Jury Trial set for 10/17/2022 at 09:15 AM in Richmond before District Judge Roderick C. Young. Defendant remanded.<br><br>**Appearances**: AUSA Elizabeth Nielsen for the Government, AFPD Andrew Grindrod for defendant (Court Reporter FTR.)(lwoo) (Entered: 08/19/2022) |
| 08/18/2022 | 16 | Agreed Discovery Order as to William Anthony Davis, Jr. Signed by Magistrate Judge Lawrence R. Leonard and filed in open court on 8/18/22. (lwoo) (Entered: 08/19/2022) |
| 08/29/2022 | | Set/Reset Hearings as to William Anthony Davis, Jr: Plea Agreement Hearing set for 8/31/2022 at 10:45 AM in Richmond Courtroom 5400 before District Judge Roderick C. Young. (jjon) (Entered: 08/29/2022) |

| 08/31/2022 | 17 | Minute Entry for proceedings held before District Judge Roderick C. Young: Plea Agreement Hearing as to William Anthony Davis, Jr held on 8/31/2022. USA appeared through Elizabeth Nielsen, AUSA. Defendant appeared through Andrew Grindrod, AFPD. Defendant sworn and advised of rights, charges and maximum penalties. Plea entered by William Anthony Davis Jr. (1) of Guilty as to Count 1 – ACCEPTED. Court FOUND defendant GUILTY as to Count 1 of the Indictment. Sentencing set for 1/4/2023 at 11:30 AM in Richmond Courtroom 6000 before District Judge Roderick C. Young. Defendant remanded to custody of USM. (Court Reporter Tracy Stroh, OCR.) (jjon) (Entered: 08/31/2022) |
| 08/31/2022 | | No plea agreement. (jjon) (Entered: 08/31/2022) |
| 08/31/2022 | 18 | Statement of Facts as to William Anthony Davis, Jr. (jjon) (Entered: 08/31/2022) |
| 08/31/2022 | 19 | Sentencing Procedures Order as to William Anthony Davis, Jr. Signed by District Judge Roderick C. Young on 8/31/22. (jjon) (Entered: 08/31/2022) |
| 11/02/2022 | 20 | NOTICE OF ATTORNEY APPEARANCE Grace Bowen appearing for USA. (Bowen, Grace) (Entered: 11/02/2022) |
| 11/30/2022 | 21 | PRESENTENCE INVESTIGATION REPORT (Disclosed Presentence Investigation Report) (SEALED – government and defense counsel) as to William Anthony Davis, Jr. Objections to PSI due 12/14/2022. (Harrison, Dorothy) (Entered: 11/30/2022) |
| 12/16/2022 | 22 | PRESENTENCE INVESTIGATION REPORT (Sentencing Presentence Investigation Report) (SEALED – government and defense counsel) as to William Anthony Davis, Jr. (harris, vanessa) (Entered: 12/16/2022) |
| 12/20/2022 | | Set/Reset Hearings as to William Anthony Davis, Jr: Sentencing set for 1/4/2023 at 11:30 AM in Richmond Courtroom 7000 before District Judge Roderick C. Young. (Please note that this is a change in location only.) (jjon) (Entered: 12/20/2022) |
| 12/21/2022 | 24 | Position on Sentencing by USA as to William Anthony Davis, Jr (Nielsen, Elizabeth) (Entered: 12/21/2022) |
| 12/21/2022 | 25 | Position on Sentencing by William Anthony Davis, Jr (Attachments: # 1 Letter from Tiffany Smith)(Grindrod, Andrew) (Entered: 12/21/2022) |
| 12/22/2022 | 26 | MOTION for Acceptance of Responsibility *3rd Point Reduction* by USA as to William Anthony Davis, Jr. (Nielsen, Elizabeth) Modified on 2/27/2023 to terminate motion following sentencing. (juljon) (Entered: 12/22/2022) |
| 12/28/2022 | 27 | Letter from Defense Counsel Respecting Sentencing (Attachments: # 1 Letter of support from Angel Williams)(Grindrod, Andrew) (Entered: 12/28/2022) |
| 01/03/2023 | | Reset Hearing as to William Anthony Davis, Jr.: Sentencing set for 1/4/2023 at 11:30 AM in Richmond Courtroom 6000 before District Judge Roderick C. Young. (only change – courtroom location) (wtuc) (Entered: 01/03/2023) |
| 01/03/2023 | | Terminate Deadlines and Hearings as to William Anthony Davis, Jr: Sentencing set for 1/4/2023 at 11:30 removed from docket following notification from USM. To be rescheduled. (jjon) (Entered: 01/03/2023) |
| 01/04/2023 | | Set/Reset Hearings as to William Anthony Davis, Jr: Sentencing RESET for 1/23/2023 at 11:00 AM in Richmond Courtroom 6100 before District Judge Roderick C. Young. (jjon) (Entered: 01/04/2023) |
| 01/23/2023 | 28 | Minute Entry for proceedings held before District Judge Roderick C. Young: Matter came on for sentencing as to William Anthony Davis, Jr. on 1/23/2023. USA appeared through Elizabeth Nielsen, SAUSA. Defendant appeared through Andrew Grindrod, AFPD. Government advised court that defendant's counsel had presented her with a new objection immediately preceding court. Government requested that matter be briefed if court was inclined to go forward with the objection. Counsel for defendant heard. Comments and questions of court. Court granted motion to continue sentencing. Sentencing RESET for 2/27/2023 at 10:00 AM in Richmond Courtroom 7000 before District Judge Roderick C. Young. Court to issue order with briefing schedule. Defendant remanded to custody of USM. (Court Reporter Tracy Stroh, OCR.) (jjon) (Entered: 01/23/2023) |

| 01/23/2023 | 29 | ORDER as to William Anthony Davis, Jr. Defendant's Unopposed Oral Motion to Continue Sentencing is GRANTED. The sentencing hearing in this matter is RESCHEDULED to take place on February 27, 2023 at 10:00 a.m. Defendant is DIRECTED to file any objections to the Presentence Report within seven (7) days of this order. The Government shall file a response within seven (7) days of Defendant's objections and Defendant shall reply within three (3) days of any such response. Signed by District Judge Roderick C. Young on 1/23/23. (jhie, ) (Entered: 01/23/2023) |
| 01/30/2023 | 30 | OBJECTION TO PRESENCE INVESTIGATION REPORT by William Anthony Davis, Jr (Grindrod, Andrew) (Entered: 01/30/2023) |
| 02/06/2023 | 31 | RESPONSE by USA as to William Anthony Davis, Jr *Response to Defendant's Objection to Presence Investigation Report* (Bowen, Grace) (Entered: 02/06/2023) |
| 02/08/2023 | 32 | REPLY TO RESPONSE to by William Anthony Davis, Jr re 31 Response (Grindrod, Andrew) (Entered: 02/08/2023) |
| 02/23/2023 | 33 | NOTICE of *Additional Authority* by USA as to William Anthony Davis, Jr (Attachments: # 1 Exhibit A)(Bowen, Grace) (Entered: 02/23/2023) |
| 02/24/2023 | 34 | NOTICE of *Supplemental Authority* by William Anthony Davis, Jr re 30 Objection to Presence Investigation Report (Attachments: # 1 Exhibit Def 1 – Def's PSR Objection in Cradle, # 2 Exhibit Def 2 – Gov't Resp. to PSR Objection in Cradle, # 3 Exhibit Def 3 – Sentencing Minutes in Cradle)(Grindrod, Andrew) (Entered: 02/24/2023) |
| 02/24/2023 | 35 | PRESENCE INVESTIGATION REPORT with BOTH Addendums Included (Sentencing Presence Investigation Report) (SEALED – government and defense counsel) as to William Anthony Davis, Jr. (frere, laurie) (Entered: 02/24/2023) |
| 02/27/2023 | 36 | Minute Entry for proceedings held before District Judge Roderick C. Young: Sentencing held on 2/27/2023 for William Anthony Davis, Jr. (1). USA appeared through Elizabeth Nielsen and Grace Bowen, SAUSAs. Defendant appeared through Andrew Grindrod, AFPD. PSR reviewed. Objection argued and ruling made. Defense motion for downward variance – WITHDRAWN. Government motions for upward variance and for acceptance of responsibility. Argument of counsel. Statement by defendant. Court GRANTED government motions for upward variance and acceptance of responsibility. SENTENCE: Count(s) 1 – 72 Months Imprisonment, 3 Years Supervised Release, $100 Special Assessment. Defendant remanded to custody of USM. (Court Reporter Tracy Stroh, OCR.) (juljon) (Entered: 02/27/2023) |
| 02/27/2023 | 37 | Consent ORDER OF FORFEITURE as to William Anthony Davis, Jr. Signed by District Judge Roderick C. Young on 2/27/23. (juljon) (Entered: 02/27/2023) |
| 02/27/2023 | 38 | JUDGMENT as to William Anthony Davis, Jr. (1). Count(s) 1 – 72 Months Imprisonment, 3 Years Supervised Release, $100 Special Assessment. Signed by District Judge Roderick C. Young on 2/27/23. (juljon) (Entered: 02/28/2023) |
| 02/27/2023 | 39 | Sealed Statement of Reasons as to William Anthony Davis, Jr. Signed by District Judge Roderick C. Young on 2/27/23. (juljon) (Entered: 02/28/2023) |
| 02/28/2023 | 40 | PRESENCE INVESTIGATION REPORT (Final Presence Investigation Report) (SEALED – government and defense counsel) as to William Anthony Davis, Jr. (smith, lisa) (Entered: 02/28/2023) |
| 03/13/2023 | 41 | NOTICE OF APPEAL by William Anthony Davis, Jr re 38 Judgment (Grindrod, Andrew) (Entered: 03/13/2023) |
| 03/13/2023 | 42 | Transmission of Notice of Appeal to 4CCA as to William Anthony Davis, Jr to US Court of Appeals re 41 Notice of Appeal – Final Judgment (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (Attachments: # 1 Notice of Appeal)(jhie, ) (Entered: 03/13/2023) |
| 03/14/2023 | 43 | USCA Case Number 23–4174, 4CCA Case Manager Cathy Poulsen for 41 Notice of Appeal – Final Judgment filed by William Anthony Davis, Jr. (jhie, ) (Entered: 03/16/2023) |

**J.A. 005**

| 03/14/2023 | 44 | ORDER of USCA appointing the Office of the Federal Public Defender as to William Anthony Davis, Jr re 41 Notice of Appeal. [23–4174] (jhie, ) (Entered: 03/16/2023) |
| 03/22/2023 | 45 | NOTICE OF ATTORNEY APPEARANCE Peter G. Osyf appearing for USA. (Osyf, Peter) (Entered: 03/22/2023) |
| 03/28/2023 | 46 | TRANSCRIPT REQUEST by William Anthony Davis, Jr for proceedings held on 8/31/2022 & 1/23/2023 before Judge Roderick C. Young, (Grindrod, Andrew) (Entered: 03/28/2023) |
| 03/28/2023 | 47 | Transcript Order Acknowledgment from USCA re 41 Notice of Appeal – Final Judgment : Court Reporter/Transcriber Tracy Stroh; 8/31/22 plea hearing; 1/23/23, 2/27/23 sentencing; deadline 5/4/23. [23–4174] (jhie, ) (Entered: 03/29/2023) |
| 04/02/2023 | 48 | TRANSCRIPT of Sentencing proceedings as to William Anthony Davis, Jr for dates of February 27, 2023 before Judge Roderick C. Young, re 41 Notice of Appeal – Final Judgment Court Reporter/Transcriber Tracy Stroh, Telephone number 804–916–2278. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov** *Does this satisfy all appellate orders for this reporter? n* **Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 5/2/2023. Redacted Transcript Deadline set for 6/2/2023. Release of Transcript Restriction set for 7/3/2023.(stroh, tracy) (Entered: 04/02/2023)** |
| 05/03/2023 | 49 | TRANSCRIPT of proceedings as to William Anthony Davis, Jr for dates of August 31, 2022 before Judge Roderick C. Young, re 41 Notice of Appeal – Final Judgment Court Reporter/Transcriber Tracy Stroh, Telephone number 804–916–2278. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov** *Does this satisfy all appellate orders for this reporter? n* **Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 6/2/2023. Redacted Transcript Deadline set for 7/3/2023. Release of Transcript Restriction set for 8/1/2023.(stroh, tracy) (Entered: 05/03/2023)** |
| 05/03/2023 | 50 | TRANSCRIPT of proceedings as to William Anthony Davis, Jr for dates of January 23, 2023 before Judge Roderick C. Young, re 41 Notice of Appeal – Final Judgment Court Reporter/Transcriber Tracy Stroh, Telephone number 804–916–2278. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov** *Does this satisfy all appellate orders for this reporter? y* **Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 6/2/2023. Redacted Transcript Deadline set for 7/3/2023. Release of Transcript Restriction set for 8/1/2023.(stroh, tracy) (Entered: 05/03/2023)** |



IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

UNITED STATES OF AMERICA          )
                                  )          CRIMINAL NO. 4:22-cr-51
                  v.              )
                                  )          18 U.S.C. § 922(g)(1) and 924(e)(1)
WILLIAM ANTHONY DAVIS JR,         )          Felon in Possession of a Firearm
                                  )          (Count One)
                  Defendant.      )
                                  )          18 U.S.C. § 924(d) and
                                  )          28 U.S.C. § 2461
                                  )          Criminal Forfeiture
                                  )

## INDICTMENT

July 2022 Term – at Newport News, Virginia

### COUNT ONE

THE GRAND JURY CHARGES THAT:

On or about March 20, 2022, in Hampton, Virginia, within the Eastern District of

Virginia, the defendant, WILLIAM ANTHONY DAVIS JR, having knowingly been convicted

of a felony crime punishable by imprisonment for a term exceeding one year, knowingly and

unlawfully possessed a firearm, to wit: a Hi-Point, C9, 9mm semi-automatic handgun, bearing

serial number P10047369, said firearm having been transported in interstate and foreign

commerce.

(In violation of Title 18, United States Code, Sections 922(g)(1) and 924(e)(1)).

**J.A. 007**

## FORFEITURE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

1.      The defendant, if convicted of the violation alleged in this Indictment, shall forfeit to the United States, as part of sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any firearm or ammunition involved in or used in the violation.

2.      If any property that is subject to forfeiture above is not available, it is the intention of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e).

3.      The property subject to forfeiture includes, but is not limited to:

   a.   A Hi-Point, C9, 9mm semi-automatic handgun, bearing serial number
       P10047369, described in Count One.

(In accordance with Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c)).

2

**J.A. 008**

Case 4:22-cr-00057-RCY-DEM   Document 3   Filed 07/18/22   Page 3 of 3 PageID# 3

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office

UNITED STATES v. WILLIAM ANTHONY DAVIS JR
4:22-cr- 57

A TRUE BILL:

REDACTED COPY

_____
F O R E P E R S O N

Jessica D. Aber
United States Attorney

By:  *Elizabeth Nielsen*
     Elizabeth Nielsen
     Special Assistant United States Attorney
     Eastern District of Virginia
     Fountain Plaza Three, Suite 300
     721 Lakefront Commons
     Newport News, Virginia 23606
     Phone: (757) 591-4000
     Fax:    (757) 591-0866
     Email: elizabeth.nielsen@usdoj.gov

By:  *Amy Cross*
     Amy Cross
     Special Assistant United States Attorney
     Eastern District of Virginia
     Fountain Plaza Three, Suite 300
     721 Lakefront Commons
     Newport News, Virginia 23606
     Phone: (757) 591-4000
     Fax:    (757) 591-0866
     Email: amy.cross@usdoj.gov

3

**J.A. 009**

This page intentionally left blank for double-sided pagination and printing

1

```
 1              UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF VIRGINIA
 2                NEWPORT NEWS DIVISION


 3

 4    _____
                                        )
      UNITED STATES OF AMERICA          )
 5                                      )
      v.                                )     Criminal Case No.:
 6                                      )     4:22 CR 57
      WILLIAM ANTHONY DAVIS, JR.        )
 7    _____)
                                              August 31, 2022
 8

 9            COMPLETE TRANSCRIPT OF PLEA HEARING
           BEFORE THE HONORABLE RODERICK C. YOUNG
              UNITED STATES DISTRICT COURT JUDGE
10

11    APPEARANCES:

12    Elizabeth Nielsen, Esquire
      OFFICE OF THE UNITED STATES ATTORNEY
13    721 Lakefront Commons
      Suite 300
14    Newport News, Virginia 23606

15            Counsel on behalf of the United States

16

      Andrew W. Grindrod, Esquire
17    OFFICE OF THE FEDERAL PUBLIC DEFENDER
      500 East Main Street
18    Suite 500
      Norfolk, Virginia 23510
19
              Counsel on behalf of the Defendant
20

21

22

23

24              TRACY J. STROH, RPR
              OFFICIAL COURT REPORTER
25          UNITED STATES DISTRICT COURT
```

2

1               (The proceeding commenced at 11:07 a.m.)

2               THE CLERK:  In the matter of criminal case

3       number 4:22 CR 57, *United States of America v. William*

4       *Anthony Davis, Jr.*

5               The United States is represented by

6       Elizabeth Nielsen, and the defendant is represented by

7       Andrew Grindrod.

8               Ms. Nielsen, is the government ready to proceed?

9               MS. NIELSEN:  The United States is ready.  Thank

10      you.

11              Good morning, Your Honor.

12              THE COURT:  Good morning.

13              THE CLERK:  And, Mr. Grindrod, is the defendant

14      ready to proceed?

15              MR. GRINDROD:  Mr. Davis is ready.

16              Good morning, Your Honor.

17              THE COURT:  Good morning.

18              All right.  So I understand that we are here for

19      an anticipated plea of guilty to Count One of the

20      indictment, charging Mr. Davis with felon in possession of

21      a firearm.  Is that correct, Mr. Grindrod?

22              MR. GRINDROD:  That is correct, Your Honor.

23              THE COURT:  All right.  Very good.  If you and

24      your client would approach the podium.

25              All right, Mr. Davis.  So it's my understanding

3

1  you're before the Court this morning for entry of a plea

2  of guilty.  But before I can accept your plea of guilty,

3  I'll need to make sure that you fully understand what it

4  is that you're doing so that I can conclude that you're

5  competent of entering a plea of guilty.

6          So the first thing I'll do is have you placed

7  under oath.  Now, while you're under oath, you have the

8  obligations to answer my questions truthfully.  If you

9  don't answer truthfully, you could be charged with

10  perjury, which carries separate consequences over and

11  above what you're facing in Count One of this indictment.

12          Do you understand that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Okay.  Any questions about that

15  before we go forward?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  All right, Ms. Jones.

18          THE CLERK:  If you'll raise your right hand,

19  please.

20          (The defendant was sworn by the clerk.)

21          THE CLERK:  Thank you.

22          THE COURT:  All right, Mr. Davis.  So at any

23  time during this process if you have a question for your

24  lawyer, simply turn to him and ask him that question.  In

25  the meantime, during this process, you may stop answering

4

1  questions if you choose to.  And at any time up until I
2  accept your plea of guilty, you may choose to withdraw it.
3  Do you understand that?
4           THE DEFENDANT:  Yes, sir.
5           THE COURT:  Okay.  However, after I accept your
6  plea of guilty, it may only be withdrawn for what's known
7  as a fair and just reason, and that's a difficult standard
8  to meet under the law.
9           So, for example, it wouldn't be enough that you
10 changed your mind about pleading guilty or you no longer
11 like the terms of your plea agreement or you feel like
12 you're facing a sentence that's more stringent than you
13 once anticipated so you just want to go to trial.
14          So, in other words, once I accept your plea of
15 guilty, you will be bound by the answers you give me,
16 which will be in response to this series of questions that
17 I'm about to ask you.  Do you understand that?
18          THE DEFENDANT:  Yes, sir.
19          THE COURT:  Do you have any questions about that
20 before we go forward?
21          THE DEFENDANT:  No, sir.
22          THE COURT:  All right.  All right, sir.  Would
23 you state your full name, please?
24          THE DEFENDANT:  William Anthony Davis, Jr.
25          THE COURT:  All right.  And, Mr. Davis, how old

5

1  are you?

2        THE DEFENDANT:  Thirty-four years old.

3        THE COURT:  All right.  How far did you go in

4  school?

5        THE DEFENDANT:  Tenth grade.

6        THE COURT:  All right.  Are you able to read,

7  write and understand the English language without the aid

8  of an interpreter?

9        THE DEFENDANT:  Yes.

10        THE COURT:  Are you a United States citizen?

11        THE DEFENDANT:  Yes.

12        THE COURT:  Have you ingested any drugs or

13  alcohol in the last 24 hours?

14        THE DEFENDANT:  No, sir.

15        THE COURT:  Are you under the influence of any

16  drugs or alcohol you may have ingested longer than

17  24 hours ago?

18        THE DEFENDANT:  No, sir.

19        THE COURT:  Have you ever been treated for a

20  mental or emotional disorder?

21        THE DEFENDANT:  Yes.  For anxiety.

22        THE COURT:  For anxiety?

23        THE DEFENDANT:  Yes, sir.

24        THE COURT:  All right.  Are you currently taking

25  any medication for anxiety?

6

1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  All right.  What are you taking?

3              THE DEFENDANT:  Hydroxyzine.  It's a pill.

4              THE COURT:  Okay.  And how often do you take

5      that?

6              THE DEFENDANT:  Morning and at night.

7              THE COURT:  Okay.  All right.  Is there anything

8      about that medication that makes it difficult for you to

9      understand the questions I'm asking you?

10              THE DEFENDANT:  No, sir.

11              THE COURT:  Okay.  Is there anything about the

12      fact that you take that medication that makes it difficult

13      for you to speak with Mr. Grindrod?

14              THE DEFENDANT:  No, sir.

15              THE COURT:  Okay.  And I know you all have

16      reviewed some materials in this case probably before you

17      appeared before me.  Is there anything about the materials

18      that you reviewed in your case with your lawyer that it

19      was difficult for you to understand because of the

20      medication you're on?

21              THE DEFENDANT:  No, sir.

22              THE COURT:  Okay.

23              All right, Mr. Grindrod.  I know in your

24      experience as a defense attorney, you've probably

25      represented individuals before who have been diagnosed

**J.A. 016**

7

1  with anxiety and take antianxiety medication.

2          Is there anything about Mr. Davis' diagnosis or

3  the medicine that he may be taking that gives you pause

4  about going forward with the plea of guilty today?

5          MR. GRINDROD:  No, Your Honor.

6          THE COURT:  All right.

7          All right, Mr. Davis.  So have you received a

8  copy of the indictment in this case?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  All right.  Have you read it?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  And have you reviewed it with

13 Mr. Grindrod?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Do you understand what you're

16 charged with?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Okay.  Another way of saying that is

19 do you understand what the government is saying that you

20 did in this case?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Okay.  So my understanding is that

23 you're pleading guilty to Count One, which charges felon

24 in possession of a firearm; is that correct?

25         THE DEFENDANT:  Yes, sir.

8

1          THE COURT:  All right.  Is there another count
2   as well or is there just that one?
3          MR. GRINDROD:  Just the sole count of the
4   indictment, Your Honor.
5          THE COURT:  Okay.  Very good.  All right.
6          All right.  So that -- so if you were to go to
7   trial on this, this is what the government would have to
8   prove.  They'd have to prove that you were previously
9   convicted of a crime that's punishable by a term of
10  imprisonment of one year or more, that you knew of this
11  conviction, and that you possessed a firearm, and that
12  that firearm had been transported, shipped or received in
13  interstate commerce, and that you knew that you could not
14  possess that firearm because of your prior conviction.
15         So do you understand that that's what the
16  government would have to prove in this case if it went to
17  trial?
18         THE DEFENDANT:  Yes, sir.
19         THE COURT:  Okay.  Now, do you understand that
20  by pleading guilty, that you're admitting to all of those
21  elements?
22         THE DEFENDANT:  Yes, sir.
23         THE COURT:  All right.  Do you understand that
24  by pleading guilty, you're admitting that the government
25  can prove all those elements beyond a reasonable doubt?

**J.A. 018**

9

```
 1              THE DEFENDANT:  Yes, sir.
 2              THE COURT:  Okay.  And do you understand that by
 3    pleading guilty, you're saying in effect that you
 4    committed this offense and you can never again say that
 5    you did not commit this offense?  Do you understand that?
 6              THE DEFENDANT:  Hold on.
 7              THE COURT:  Go ahead.
 8              THE DEFENDANT:  Yes, sir.
 9              THE COURT:  Okay.  Now, do you understand -- go
10    ahead.
11              MR. GRINDROD:  Sorry.  I was just advising him
12    that he could take his mask off --
13              THE COURT:  That's all right.
14              MR. GRINDROD:  -- so it was a little easier to
15    understand, Your Honor.
16              THE COURT:  That's all right.
17              All right.  So, Mr. Davis, do you understand the
18    maximum penalties for this offense?
19              THE DEFENDANT:  Yes, sir.
20              THE COURT:  All right.  What are the maximum
21    penalties?
22              THE DEFENDANT:  Up to 10 years in prison, a fine
23    of 250,000, forfeiture, $100 special assessment, and
24    3 years of supervised release.
25              THE COURT:  Very good.  I usually don't have all
```

1    of that.  Okay.  Yes, those are the penalties, Mr. Davis.

2            MS. NIELSEN:  Your Honor, one correction.

3            THE COURT:  Yes.

4            MS. NIELSEN:  Mr. Davis is subject to a

5    mandatory minimum term of imprisonment of 15 years --

6            THE COURT:  Hold on.  Why don't you come to the

7    podium.  I'm having a hard time hearing you.

8            MS. NIELSEN:  Sure.

9            Thank you, Your Honor.  To clarify one point on

10   the maximum penalties --

11           THE COURT:  Yes.

12           MS. NIELSEN:  -- Mr. Davis is subject to a

13   mandatory minimum term of imprisonment of 15 years

14   pursuant to 18 U.S.C. 924(e)(1) --

15           THE COURT:  Okay.

16           MS. NIELSEN:  -- as an armed career criminal.

17           THE COURT:  Okay.  All right.  Thank you.

18           Mr. Grindrod, is that your understanding?

19           MR. GRINDROD:  No, Your Honor.

20           THE COURT:  All right.

21           MR. GRINDROD:  Your Honor, in our view, the

22   elements required under the ACCA are not satisfied in this

23   case.  If the government ends up arguing later that the

24   ACCA applies, we would have a number of objections that

25   would be factual, statutory, constitutional.

11

1          THE COURT:  Okay.

2          MR. GRINDROD:  Mr. Davis answered that he

3     believes that the maximum penalty is ten years because we

4     believe it is, in fact, ten years.  But I have advised

5     Mr. Davis that if I'm wrong and his guilty plea today

6     somehow exposes him to an ACCA sentence, then the penalty

7     would be 15 years to life, and he understands that.

8          THE COURT:  So come back to the podium,

9     Mr. Davis.

10          All right, Mr. Davis.  So you rightly recited

11     the maximum penalties for a violation of Title 18,

12     United States Code, Section 922(g).  But there's a

13     section, both in the -- in the criminal code, which is

14     Title 18, United States Code, Section 924(e)(1), which

15     indicates that if you're an armed career criminal, which

16     would mean that you have certain felonies that count in a

17     certain way, then your penalties change a little bit.  And

18     the big change is that the mandatory minimum term of

19     imprisonment is 15 years and the maximum term of

20     imprisonment is life.  So do you understand that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Okay.  Do you have any questions

23     about that?

24          THE DEFENDANT:  No, sir.

25          THE COURT:  And that will be -- so from what the

12

1  parties have said, I think the government's position is

2  going to be that your mandatory minimum is 15 years and

3  your maximum is life.  Your lawyer's position is going to

4  be that you have certain -- the way your criminal history

5  works is that you will not be an armed career criminal.

6  So he thinks the maximum is ten years.

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  We won't be able to sort that out

9  today.  We won't know that until sentencing.  But what I

10 want you to understand is that your maximum penalties

11 could either be 10 years or it could be 15 years to life.

12 Do you understand that?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Okay.  Do you have any questions

15 about that from me before we go forward?

16         THE DEFENDANT:  No, sir.

17         THE COURT:  Okay.  All right.

18         Mr. Grindrod, anything else you need me to

19 explain to him about that before we go forward?

20         MR. GRINDROD:  I don't think so, Your Honor.

21         THE COURT:  Okay.  All right.

22         Now, Mr. Davis, so parole has been abolished in

23 the federal system.  So what that means is that if you're

24 sentenced to a term of imprisonment, you'll serve up to

25 85 percent of whatever term is imposed.  Do you understand

13

1  that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Okay.  And supervised release means

4  that once released from prison, you'll have to abide by

5  certain rules and conditions that have been set upon you

6  by the Court when you're released.  Do you understand

7  that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  And if the Court concludes that

10 you're not abiding by those rules and conditions, you

11 could be sent back to jail for an additional term of

12 imprisonment.  Do you understand that?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Okay.  Now, this matter involves a

15 felony.  So by pleading guilty to a felony, you're going

16 to lose some of your valuable civil rights, including your

17 right to vote, your right to hold public office, and your

18 right to own and possess a firearm.  Do you understand

19 that?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  By pleading guilty, you're also

22 waiving a number of your constitutional rights.  So, for

23 example, you're waiving your right to a speedy and public

24 trial with the assistance of counsel.  You're waiving your

25 right to see and hear all the evidence against you.

14

1  You're waiving your right to confront and cross-examine

2  all witnesses.  You're waiving your right to use the power

3  and process of this court to subpoena witnesses or

4  evidence on your behalf.  You're waiving your right to

5  testify at trial.  You're waiving your right to remain

6  silent at trial, and you're waiving your right to refrain

7  from offering any evidence at trial.  You're also waiving

8  your right to plead not guilty and demand a trial by jury.

9        And with a trial by jury, 12 citizens from the

10  Eastern District of Virginia would be impaneled and they

11  would be instructed that in order to find you guilty,

12  they'd have to find that the government has proved all the

13  elements of the offense beyond a reasonable doubt, and I

14  would also instruct them that they'd have to be unanimous

15  as to your guilt.

16        Do you understand that by pleading guilty, that

17  you're giving up all those rights?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  All right.  Now, do you understand

20  that you have the right to demand that this matter go to

21  trial even if you believe you're guilty?

22        And what I mean by that is you have an absolute

23  right to have the government prove this case against you

24  beyond a reasonable doubt, and at your trial, you wouldn't

25  have to do or say anything and that couldn't be held

15

1  against you.  Do you understand that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Okay.  Now, have you had enough time

4  to discuss this charge with your lawyer prior to appearing

5  before me today?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Have you had enough time to discuss

8  with your lawyer any defenses you may have to the charge?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  And have you had enough time to

11  discuss with your lawyer the terms of the plea agreement?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Is there a plea agreement in this

14  case?

15          MR. GRINDROD:  There's not, Your Honor.  He's

16  just pleading to the indictment.

17          THE COURT:  Okay.  So have you had enough time

18  to discuss with your lawyer -- so there is not a plea

19  agreement in this case.  So have you had enough time to

20  discuss with your lawyer the advantages and disadvantages

21  of pleading guilty without a plea agreement?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Okay.  Do you understand what I'm

24  saying when I say that?

25          THE DEFENDANT:  The sentencing guidelines and

16

1  the mandatory minimum?

2          THE COURT:  No.  So you're pleading guilty --

3  there's no plea agreement in your case, right?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  You didn't sign a plea agreement

6  with the government, correct?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  Okay.  All right.  So what I wanted

9  to -- did you have a discussion with your lawyer about

10 pleading guilty with a plea agreement or pleading guilty

11 without a plea agreement?

12         Maybe I'm having a hard time asking --

13         THE DEFENDANT:  Yeah, we didn't talk about that.

14 We were just -- it wasn't ever a plea agreement on the

15 table or anything.

16         THE COURT:  Okay.  Mr. Grindrod, let me hear

17 from you.

18         MR. GRINDROD:  Sure, Your Honor.  Because of the

19 fact that it was a sole count of the indictment, most of

20 the discussions that we had were between trial and

21 pleading guilty to the indictment.

22         THE COURT:  Okay.

23         MR. GRINDROD:  There wasn't a plea offer that

24 was conveyed or made by the government.  I think we

25 probably talked about it a little bit, but in my view, the

17

1  advantages of pleading straight up to the indictment, like
2  not waiving a right to appeal, made it pretty clear-cut
3  that there was no reason to pursue a plea agreement with
4  the government.

5          THE COURT:  Okay.  Government, your -- did you
6  ever offer a plea agreement in the case?

7          MS. NIELSEN:  No, Your Honor.  Frankly,
8  Mr. Davis agreed to plead before we had the opportunity to
9  make any kind of offer.

10         THE COURT:  Okay.  I think you kind of talked
11  around it, but just to satisfy me on this question,
12  Mr. Grindrod, would you take a minute and talk with your
13  client about the fact that you could have approached the
14  government for a plea agreement, but given some of the
15  things you already outlined, why you thought it wasn't in
16  his advantage to do that?  And then we'll satisfy this
17  question before we move on.

18         MR. GRINDROD:  Yes, Your Honor.

19         THE COURT:  All right.

20         Okay, Mr. Davis.  So I'll ask you again, did you
21  and your lawyer discuss the advantages and disadvantages
22  of pleading guilty by way of a plea agreement?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Okay.  And it's my understanding
25  that you've decided to enter a plea of guilty without a

18

1  plea agreement; is that correct?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Okay.

4          All right, Mr. Grindrod.  Did you have an

5  opportunity -- and I know you've talked with him about it

6  before and I've asked you to talk with him about it again

7  about the advantages and disadvantages of pleading guilty

8  by way of a plea agreement?

9          MR. GRINDROD:  Yes, Your Honor.

10         THE COURT:  All right.  And it's your

11  understanding your client seeks to go forward and plead

12  guilty without a plea agreement; is that correct?

13         MR. GRINDROD:  That's correct.

14         THE COURT:  Mr. Davis, do you need any more time

15  to discuss that issue with your lawyer before we go

16  forward?

17         THE DEFENDANT:  No, sir.

18         THE COURT:  Okay.  All right, Mr. Davis.  Up to

19  this point, are you entirely satisfied with what your

20  lawyer has done for you in this case?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  And do you believe Mr. Grindrod has

23  done everything necessary to help you make a decision

24  about whether or not you should plead guilty in this case?

25         THE DEFENDANT:  Yes, sir.

19

1          THE COURT:  Okay.  So although I'm sure

2    Mr. Grindrod has given you his best advice, do you

3    understand that the decision to plead guilty is your

4    decision and your decision alone and that you're the only

5    one who can make the decision about whether or not to

6    plead guilty?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Okay.  Are you pleading guilty to

9    Count One of this indictment because you are, in fact,

10   guilty of Count One in the indictment?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  All right.  Now, do you understand

13   that if I accept your plea of guilty, that there will not

14   be a trial and that the only matter remaining will be

15   sentencing, and that -- and we'll handle your sentencing

16   at another date?  Do you understand that?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Okay.  All right.  Government, I

19   don't believe restitution is an issue in this case, is it?

20         MS. NIELSEN:  No, Your Honor.

21         THE COURT:  Okay.  Now, there should be a

22   document at the podium entitled Statement of Facts.  And

23   on page 4 of the statement of facts, there's a place for

24   you to sign.  Did you sign on page 4?

25         THE DEFENDANT:  Yes, sir.

**J.A. 029**

20

1          THE COURT:  Mr. Grindrod, did you sign on

2   page 4?

3          MR. GRINDROD:  Yes, Your Honor.

4          THE COURT:  Government, did you sign on page 3?

5          MS. NIELSEN:  Yes, Your Honor.

6          THE COURT:  Now, Mr. Davis, did you review that

7   statement of facts before you signed it?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  All right.  And did you discuss that

10  statement of facts with Mr. Grindrod before you signed it?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Okay.  Now, what's contained in that

13  statement of facts, is that what happened in your case?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Okay.  Is there anything you believe

16  that needs to be added to that statement of facts or

17  subtracted from that statement of facts in order to make

18  it more truthful?

19         THE DEFENDANT:  No, sir.

20         THE COURT:  All right.  Now, other than what's

21  in that statement of facts, has any law enforcement

22  officer, the prosecutor, your attorney or anyone else made

23  you any threats or promises that are not contained within

24  that statement of facts?

25         THE DEFENDANT:  No, sir.

21

1          THE COURT:  Okay.  All right.  So now I want to
2 talk to you about sentencing for a moment.  So if I accept
3 your plea of guilty, I'm going to enter a sentencing
4 procedures order, which will set -- refer your case to a
5 U.S. probation officer for preparation of a presentence
6 report, and that's a report that helps the Court and your
7 lawyers for your sentencing hearing.  Do you understand
8 that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Now, as part of the preparation for
11 the report, the probation officer will come to interview
12 you.  And what I want to let you know is is that you have
13 the right to have your lawyer present with you when the
14 probation officer interviews you for the presentence
15 report.  Do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Okay.  Now, do you understand that
18 the presentence report will contain a section known as the
19 advisory sentencing guideline range?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  And in order to calculate that
22 guideline range, the probation officer is going to look at
23 a number of factors, including the nature and
24 circumstances of the offense.  They'll look at your prior
25 record to see if you have any prior record.  They'll see

22

1  whether or not you have obstructed justice.  They'll see

2  whether there's any relevant conduct, which means conduct

3  related to your case that may not have been in your

4  statement of facts.  And they'll look at whether you've

5  accepted responsibility for your actions.

6      The probation officer will look at all those

7  factors and others in order to calculate your advisory

8  sentencing guidelines.  Do you understand that?

9      THE DEFENDANT:  Yes, sir.

10      THE COURT:  Now, once your presentence report is

11  complete, you have the obligation to read it, to review it

12  and to discuss it with your lawyer before you come to

13  court for your sentencing hearing.  Do you understand

14  that?

15      THE DEFENDANT:  Yes, sir.

16      THE COURT:  Now, one of the reasons you'll need

17  to do that is you'll have to be prepared to make

18  objections or corrections to the report once it's

19  published.  Do you understand that?

20      THE DEFENDANT:  Yes, sir.

21      THE COURT:  All right.  So I want to talk about

22  that for a second.  So if you see something in the report

23  that you think is wrong or your lawyer thinks is

24  objectionable, then your lawyer will try to work that out

25  with the government and with the probation officer.  But

23

1  they may not be able to work it out.  And if they're not
2  able to work it out or come to a resolution, then they'll
3  submit the item to me, and at your sentencing hearing,
4  I'll decide either the information in your presentence
5  report is right and it stays as is or it's wrong and it
6  needs to be corrected in some way.  Do you understand
7  that?
8            THE DEFENDANT:  Yes, sir.
9            THE COURT:  Do you have any questions about
10 that?
11           THE DEFENDANT:  No, sir.
12           THE COURT:  Now, do you understand that no one
13 can predict what sentence you will be sentenced to?  Do
14 you understand that?
15           THE DEFENDANT:  Yes, sir.
16           THE COURT:  Okay.  So you and Mr. Grindrod may
17 have already discussed where he predicts your case may
18 fall on the advisory sentencing guidelines, and based on
19 some of the discussions we've had, I know that to be the
20 case.  But do you understand that no one knows exactly --
21 Mr. Grindrod doesn't know.  The prosecutors don't know,
22 and I don't know.  None of us know exactly what you'll be
23 sentenced to because your presentence report hasn't been
24 completed yet.  Do you understand that?
25           THE DEFENDANT:  Yes, sir.

24

1          THE COURT:  Okay.  Now, do you understand that

2    when it comes to sentencing, that I could sentence you

3    within your guidelines, below the guidelines or above your

4    guidelines, up to whatever the maximum term of

5    imprisonment is?  If the maximum term of imprisonment is

6    ten years, I could sentence you up to ten years.  If the

7    maximum term of imprisonment is life, I could sentence you

8    up to life.  Do you understand that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Now, do you understand that I can

11    impose on you the same punishment I could have imposed on

12    you had you gone to trial and a jury had found you guilty

13    of Count One?  Do you understand that?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Okay.  Now, do you have any

16    questions about the sentencing procedures order that I'm

17    going to enter at the end of this hearing if I accept your

18    plea of guilty?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  Okay.  Now, I know I've asked you a

21    lot of questions today.  Have you had enough time to

22    discuss all these matters with Mr. Grindrod before coming

23    to court?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Okay.  Before I accept your plea of

25

1  guilty, is there anything else you need to discuss with

2  Mr. Grindrod before I accept your plea?

3              THE DEFENDANT:  No, sir.

4              THE COURT:  Okay.

5              All right, Mr. Grindrod.  Are you satisfied that

6  it's in your client's best interest to plead guilty rather

7  than proceeding to trial?

8              MR. GRINDROD:  Yes, Your Honor.

9              THE COURT:  Are you satisfied that your client

10  fully understands the charges against him?

11              MR. GRINDROD:  Yes, Your Honor.

12              THE COURT:  All right.  Are you satisfied that

13  your client has been competent and fully able to cooperate

14  with you throughout the course of this matter?

15              MR. GRINDROD:  Yes, Your Honor.

16              THE COURT:  Have you had an opportunity to

17  discuss the facts of the case with your client?

18              MR. GRINDROD:  Yes, Your Honor.

19              THE COURT:  Are you satisfied that there are no

20  meritorious defenses that can be raised on his behalf or

21  even if there are, it's still in his best interest to

22  enter a plea of guilty at this time?

23              MR. GRINDROD:  Yes, Your Honor.

24              THE COURT:  Are you satisfied that all of your

25  client's rights have been preserved throughout these

1  proceedings?

2      MR. GRINDROD:  Yes, Your Honor.  The only reason

3  I hesitate is there was a potential Miranda issue that I

4  had discussed with the prosecutor, and that was just

5  not -- nothing from that was put into the statement of

6  facts.  I don't think the government concedes that there

7  was a Miranda violation.  But even if there were, that's

8  not an issue going forward.

9      THE COURT:  Okay.  So I'll -- I'll ask it

10  another way.  Is there any right that your client has that

11  you feel needs to be addressed before I accept this plea

12  of guilty?

13      MR. GRINDROD:  No, Your Honor.

14      THE COURT:  Okay.  All right.  As best as you

15  can -- again, I know that your client is taking some

16  antianxiety medication, but are you satisfied that even

17  with taking that medication, he understands the purpose of

18  this hearing today?

19      MR. GRINDROD:  Yes, Your Honor.

20      THE COURT:  Okay.  Do you know of any reason

21  that the Court should not accept your client's plea of

22  guilty to Count One?

23      MR. GRINDROD:  No, Your Honor.

24      THE COURT:  All right.

25      All right, Ms. Jones.

27

1          THE CLERK:  Do you, William Anthony Davis, Jr.,

2    understand the charges against you in the indictment?

3          THE DEFENDANT:  Yes, ma'am.

4          THE CLERK:  I ask you now, what is your plea as

5    to Count One, guilty or not guilty?

6          THE DEFENDANT:  Guilty.

7          THE CLERK:  Thank you.

8          THE COURT:  All right.  It is the finding of the

9    Court in the case of the *United States v. William Anthony*

10   *Davis, Jr.* that the defendant is fully competent and

11   capable of entering an informed plea, that the defendant

12   is aware of the nature of the charges and the consequences

13   of the plea, and that the plea of guilty is knowing and

14   voluntary and is supported by an independent basis in fact

15   containing each of the essential elements of the offense.

16   The plea is therefore accepted, and the defendant is

17   adjudged guilty of the offense of felon in possession of a

18   firearm, in violation of Title 18, United States Code,

19   Section 922(g)(1).

20          I now order that the statement of facts be filed

21   in the record, and I'll ask my court security officer to

22   retrieve that and then give it to the courtroom deputy.

23          And you all may return to your seat.

24          So now, Mr. Davis, as you return to your seat,

25   what I'm doing is I'm entering the sentencing procedures

1  order.  And that's the order I talked with you about that

2  mandates that your case be forwarded to a probation

3  officer for preparation of the presentence report.

4        And as it relates to sentencing, I believe the

5  parties have agreed on a date of January 4th, 2023, at

6  11:30 a.m.

7        Ms. Nielsen and Mr. Samuels, is that correct?

8        MS. NIELSEN:  Yes, it is, Your Honor.

9        MR. SAMUELS:  Yes, sir.

10       THE COURT:  Mr. Grindrod.

11       MR. GRINDROD:  Yes, Your Honor.

12       THE COURT:  Okay.  All right.

13       So I believe that's all we need to address

14 today, but, Ms. Nielsen, I'll ask you, is there anything

15 else the Court needs to address today in this case?

16       MS. NIELSEN:  Nothing further from the

17 United States.

18       THE COURT:  Mr. Grindrod, anything else we need

19 to address in this case today?

20       MR. GRINDROD:  No, Your Honor.  Thank you.

21       THE COURT:  All right, Mr. Davis.  Would you

22 stand up where you are, please?

23       All right, Mr. Davis.  I'm going to remand you

24 to the continuing custody of the United States Marshal

25 pending your sentencing, which will be before me on

29

1   January 4th, 2023, at 11:30 a.m.

2              All right.  In your custody, marshal.

3              Ms. Jones, do you need a recess?

4              THE CLERK:  Just briefly, Your Honor.

5              THE COURT:  Okay.  Very good.

6              All right.  This court will stand -- hold on one

7   second.  This court will stand in recess.

8              (The proceeding concluded at 11:33 a.m.)

9                     REPORTER'S CERTIFICATE

10       I, Tracy J. Stroh, OCR, RPR, Notary Public in and for

11  the Commonwealth of Virginia at large, and whose

12  commission expires September 30, 2023, Notary Registration

13  Number 7108255, do hereby certify that the pages contained

14  herein accurately reflect the stenographic notes taken by

15  me, to the best of my ability, in the above-styled action.

16       Given under my hand this 3rd day of May 2023.

17

18       _____
                  /s/
              Tracy J. Stroh, RPR

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

UNITED STATES OF AMERICA )
                         )
v.                         )
                         )    Case No. 4:22-CR-57
WILLIAM ANTHONY DAVIS JR,    )
                         )
Defendant.            )

## STATEMENT OF FACTS

If the United States were to try this case, the evidence that would be proven beyond a reasonable doubt would be:

1.      On or about March 20, 2022, in Hampton, Virginia, officers of the Hampton Police Department ("HPD") observed the Defendant driving while using a handheld device, traveling east on West Pembroke Avenue.

2.      After the HPD officers activated their emergency equipment to conduct a traffic stop, the Defendant went through a red light at the intersection of West Pembroke Avenue and Powhatan Parkway. The Defendant crashed into another vehicle.

3.      When the HPD officers were investigating the accident, they learned that the Defendant was driving on a revoked license.

4.      The HPD officers placed the Defendant under arrest for reckless driving, and transported him to the magistrate's office for booking.

5.      On arriving at the magistrate's office, the HPD officers observed a Hi-Point, C9, 9mm semi-automatic handgun, bearing serial number P10047369, in the Defendant's waistband. The HPD officers recovered the firearm from the Defendant.

6.      All of the events described occurred in the Eastern District of Virginia.

7.    The Hi-Point, C9, 9mm semi-automatic handgun, bearing serial number P10047369, was not manufactured in the Commonwealth of Virginia, and the firearm had previously been shipped or transported in interstate commerce to Virginia.

8.    Thus, the defendant, WILLIAM ANTHONY DAVIS JR, admits to knowingly possessing the Hi-Point, C9, 9mm semi-automatic handgun, bearing serial number P10047369, which had previously been shipped and transported in interstate commerce, after having been convicted of a felony offense.

9.    On March 20, 2022, the Defendant knew that he had been previously convicted of a felony because in 2008 he was sentenced to four years of active incarceration for Virginia robbery in Richmond City Circuit Court (Case No. CR08F00613-00), and his right to possess a firearm had not been restored.

10.    The acts described above taken by the Defendant, WILLIAM ANTHONY DAVIS JR, were done willfully, knowingly, intentionally, and unlawfully and not by accident, mistake or other innocent reason. The Defendant further acknowledges that the foregoing statement of facts covers the elements of the offenses charged but does not describe all of the defendant's conduct relating to the offenses charged in this case.

**J.A. 041**

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:      _Elizabeth Nielsen_

Elizabeth Nielsen
Special Assistant United States Attorney
Eastern District of Virginia
Newport News Division
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax:   (757) 591-0866
Email: elizabeth.nielsen@usdoj.gov

3

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is a partial summary of the evidence which is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
WILLIAM ANTHONY DAVIS JR
Defendant

_____
Date

I am WILLIAM ANTHONY DAVIS JR's attorney.  I have carefully reviewed the above Statement of Facts with him.  To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Andrew W. Grindrod
Counsel for defendant

_____
Date

4

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No.  4:22-cr-57 |
| | ) | |
| WILLIAM ANTHONY DAVIS, JR. | ) | |
| | ) | |
| Defendant. | ) | |

<u>UNITED STATES' SENTENCING POSITION AND MOTION FOR UPWARD VARIANCE</u>

In accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, *Guidelines Manual*, § 6A1.2, the United States of America, through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, and Elizabeth Nielsen, Special Assistant United States Attorney, hereby represents that it has reviewed the probation office's presentence report (hereinafter "PSR") and that it does not dispute any of the facts set forth therein.  For the reasons to follow, the United States respectfully requests that the Court vary upwards from the guidelines range (57-71 months) and impose a sentence of 10 years of imprisonment.  Such a sentence is necessary to fulfill the statutory mandate in 18 U.S.C. § 3553(a) to impose a sentence "sufficient but not greater than necessary."

**A.    Offense of Conviction**

As set forth in the statement of facts and the PSR, the defendant's conviction stems from his conduct on March 20, 2022.  On that day, Hampton Police Department officers observed the defendant driving while using a handheld device.  (PSR ¶ 7(1)).

1

**J.A. 044**

The officers activated their lights and sirens to conduct a traffic stop of the defendant. (PSR ¶ 7(2)).  However, the defendant failed to stop.  (*Id.*).  Instead, he took off in his car – running through a red light and crashing into another vehicle.  (*Id.*).

While investigating the collision, officers learned that the defendant was also driving on a revoked license.  (PSR ¶ 7(3)).  The officers placed the defendant under arrest for reckless driving.  (PSR ¶ 7(4)).

By the time of his arrest, the defendant had already hidden a loaded Hi-Point, C9, 9mm semi-automatic handgun, bearing serial number P10047369, under his genitals.  (PSR ¶¶ 8-9). Officers did not discover the firearm during the search incident to arrest.  (PSR ¶ 8).

After the arrest, the defendant began complaining about his handcuffs, which officers adjusted twice.  (*Id.*).  The defendant also asked that his handcuffs be moved to the front of his body, and officers denied the request.  (*Id.*).

While being transported to the magistrate's office for booking, the defendant began moving around in the backseat of the patrol car.  (*Id.*).  He told officers that it was because of a shoulder condition, but since his handcuffs had already been adjusted twice, officers became suspicious and asked if he had anything illegal on his body.  (*Id.*).

It was only after being asked multiple times and hesitating to answer that the defendant confessed to having a firearm hidden under his genitals.  (*Id.*).  Officers pulled over and secured the firearm, which, after the defendant's movements, had moved to his waistband.  (*Id.*).

The defendant knew, at the time he possessed the semi-automatic handgun, that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year and his rights to possess a firearm had not been restored through clemency or other means. (PSR

¶¶ 8-9).  The firearm was manufactured outside the state of Virginia and traveled in interstate commerce to reach Virginia. (PSR ¶ 7).

### B.  Statutory Considerations

The defendant pleaded guilty on August 31, 2022 to Count One, Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(e)(1).  It is noteworthy that The Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12004(c), 136 Stat. 1313, 1329 (2022), effective June 25, 2022, established a new penalty provision in 18 U.S.C. § 924(a)(8), increasing the statutory maximum sentence for a § 922(g) offense to 15 years' imprisonment.

### C.  Sentencing Guidelines Calculation

The United States Probation Department prepared a PSR that detailed the offense of conviction and the characteristics of the defendant.

The PSR correctly calculates a base offense level of 24, as the defendant committed the offense after sustaining at least two felony convictions of either a crime of violence or controlled substance offense.  The probation officer then reduced the offense level by three points for acceptance of responsibility, for a total offense level of 21.

The probation officer also calculated a criminal history level for the defendant.  In assigning points to the prior convictions, the defendant received the following: Robbery (3); Gang, Participate in a Criminal Act (0); Distribute/Sell for Profit Schedule I or II and Distribute/Sell for Profit Schedule I or II (3); Distribute/Sell for Profit Schedule I or II (1); Drive Under Revocation/Suspension and Fail to Stop/Yield Entering Highway (0).  These resulted in seven (7) criminal history points. Two (2) additional criminal history points are added pursuant to U.S.S.G. § 4A1.1(d) for committing the offense of conviction while under terms of probation

3

**J.A. 046**

and good behavior.  The total of nine (9) criminal history points establishes a criminal history category of IV pursuant to U.S.S.G. Chapter 5, Part A.

Accordingly, consistent with the defendant's offense level and criminal history category, the guideline provisions on Count One are 57-71 months.

**D.  Statutory Sentencing Factors under 18 U.S.C. § 3553(a)**

As set out below, the statutory factors compel an upward variance to a sentence of 10 years of imprisonment on Count One.

1.    Nature of the Offense

The nature and circumstances of the defendant's offense are extremely serious.  As detailed above, the defendant's offense of conviction involves the possession of a firearm, specifically an easily concealable semiautomatic handgun, despite his knowing status as a convicted felon, which is inherently dangerous to the community.

The defendant also took steps to evade the police and conceal the firearm that placed others in immediate danger.  The defendant's disregard for law enforcement and human life when he fled from law enforcement, ran through a red light, crashed into another vehicle, and chose to conceal a loaded firearm on his person before being placed under arrest put all those in the defendant's presence at risk.

2.    History and Characteristics of the Defendant

The defendant has an extensive criminal history.  As set out in the PSR, his prior felony convictions include a robbery in which the defendant placed his hands around the female victim's neck and mouth, a prison fight with other known gang members, and repeated drug distribution.

4

**J.A. 047**

In particular, the defendant has three prior convictions for serious drug offenses, namely distributing a Schedule I or II controlled substance on February 16, March 1, and July 20, 2012, each of which carried a 10-year sentence of incarceration. (PSR ¶¶ 28-29). These prior convictions in the PSR would have qualified the defendant for a mandatory sentence of 15 years of imprisonment under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), had the Government charged and proved that they occurred on different occasions. The defendant was put on notice of an ACCA sentence by the indictment, which referenced 18 U.S.C. 924(e)(1), as well as by statements by the Government at defendant's detention and plea hearings. However, because the grand jury did not charge, and the defendant did not admit, that he committed his prior offenses on separate occasions, the Government does not urge the Court to impose a mandatory ACCA sentence on the defendant.

Rather, the defendant's lengthy, often violent, criminal history, along with the other § 3553(a) factors described herein, compels an upward variance to 10 years' incarceration for a § 922(g) violation without any ACCA enhancement. *See, e.g., United States v. Hucks*, 2022 WL 17592127 (4th Cir. 2022) (affirming as reasonable an alternative upward variant sentence on two counts of possessing a firearm as a felon – 120 months' imprisonment on the first count, followed by a consecutive 72 months' imprisonment on the second count – that would have produced the same result as the ACCA enhancement); *United States v. McDonald*, 850 F.3d 640, 644 (4th Cir. 2017) (affirming an 188-month sentence for four counts of possession of a firearm and ammunition by a convicted felon when the district court stated that, "had it not applied the ACCA, it would have arrived at the same 188-month sentence because it would have given McDonald an above-Guidelines sentence through an upward variance in his criminal history category."). The defendant's criminal history demonstrates a lack of respect for the law and

5

**J.A. 048**

indicates a likelihood of recidivism that requires an upward variance to protect the public from his further crimes.

        3.     Deterrence

     The Court must consider both specific and general deterrence.  Regarding specific deterrence, the defendant's previous significant prison sentences and court supervision have done nothing to deter his criminal conduct.

     To the contrary, the defendant has been incarcerated or on probation during every criminal offense he has committed since 2008.  While he was incarcerated on his 2007 robbery conviction, for instance, the defendant – an admitted Bloods street gang member – was involved in a 2008 fight at the jail with other gang members.  (PSR ¶¶ 26-27).  During his incarceration, the defendant also received at least 35 disciplinary actions for conduct such as threatening bodily harm, inciting to riot, and using drugs.[1]  He was released in April 2011 and committed three serous drug offenses while still on probation in February, March, and July 2012.  (PSR ¶¶ 27-29).  The defendant was released from incarceration for the drug charges in February 2021 and committed the instant offense barely over a year later in March 2022.  (PSR ¶¶ 7(1), 28).

---

[1] The PSR states that: "According to Department of Corrections (DOC) records, the defendant received the following disciplinary actions while incarcerated: Disobeying an Order (11 times); Being in an Unauthorized Area (3 times); Failing to Follow Institutional Count Procedures or Interfering With Count (3 times); Under the Use of Drugs (pertains to the use of unprescribed drugs) (3 times); Vulgar or Insolent Language or Gestures Directed Toward an Employee (twice); Lewd or Obscene Acts Directed Toward or in the Presence of Another (twice); Indecent Exposure (twice); Failure to Follow Written/ Posted Institutional Rules/Regs (twice); Threatening Bodily Harm; Possession of Unauthorized or Unprescribed Drugs; Stealing, Intentionally Destroy/Alter/Damage Property; Violation of Conditional Penalty/Suspension for any Category I Offense; Inciting to Riot; and Tampering with Security Materials, Devices, or Equipment."  (PSR ¶ 26).

The defendant has also directly targeted the court with his misconduct. The PSR indicates that, while the defendant was incarcerated and awaiting sentencing for the robbery charge, he told the mother of one of his children in recorded jail calls what statements to make to the Judge during sentencing and stated that she should "feed the judge and lawyers some bullshit to get me out." (PSR ¶ 54). He also threatened her several times regarding her involvement with another man, who the defendant threatened to "shoot up/murder" when he was released. (*Id.*).

The defendant's repeated flagrant disregard for the law indicates a lack of concern for consequential action. A sentence of 10 years of imprisonment will create self-awareness and hopefully deter this individual from future similar conduct while providing him with any treatment that he needs.

As for general deterrence, the public must have confidence that the activities of the defendant are treated with the utmost seriousness. The public must look at the actions of the defendant; complete and utter disregard for the law and possessing an inherently dangerous weapon, and know that such conduct commands a significant punishment. The value of life, of crime free communities, and of societal stability are expressed in the sentence assigned to the defendant. Those inclined to consider committing crimes like those of the defendant must be made to pause in thinking about the consequences that follow.

        1.     Need for Just Punishment

The defendant's reckless conduct and recidivism raise serious concerns. The defendant has now repeatedly been involved in criminal conduct throughout nearly his entire adult life and, in fact, committed not only the instant offense, but also four prior felonies while on probation or while incarcerated. This behavior remains unacceptable.

**J.A. 050**

The flagrant disregard for the law and the intentional choice to be a destructive force in his neighborhood and community, risking the lives of all those around him, warrants just punishment.

      2.      Need to Protect Society

The United States urges the Court to consider this factor heavily. While one may look at the defendant's personal history from a sympathetic posture, such a position does not warrant risking the safety and lives of others. The defendant's reckless conduct indicates that society needs significant protection from the defendant given the inherent dangerousness of his conduct.

### Conclusion

The United States is primarily concerned with the defendant's undeterred recidivistic and inherently dangerous activity, specifically the unlawful possession of a firearm. For the safety of the community, an upward variance to a sentence of 10 years of imprisonment on Count One is sufficient but not greater than necessary to accomplish the goals of sentencing.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:             /s/
             Elizabeth Nielsen
             Special Assistant United States Attorney
             Eastern District of Virginia
             Newport News Division
             Fountain Plaza Three, Suite 300
             721 Lakefront Commons
             Newport News, Virginia 23606
             Phone: (757) 591-4000
             Fax:   (757) 591-0866
             Email: elizabeth.nielsen@usdoj.gov

**J.A. 051**

<u>Certificate of Service</u>

I certify that on December 21, 2022, I electronically filed a copy of the foregoing with the

Clerk of the Court using the CM/ECF system who will send notification of such filing (NEF) to

all counsel of record.

By: _____/s/_____

     Elizabeth Nielsen
     Special Assistant United States Attorney
     Eastern District of Virginia
     Fountain Plaza Three, Suite 300
     721 Lakefront Commons
     Newport News, Virginia 23606
     Phone:   (757) 591-4000
     Fax:     (757) 591-0866
     Email:   elizabeth.nielsen@usdoj.gov

**J.A. 052**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:22cr57** |
| | ) | |
| **WILLIAM ANTHONY DAVIS, JR.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS AND
MOTION FOR DOWNWARD VARIANCE**</u>

Without a plea agreement, William Davis pleaded guilty to the single count indictment in this case. He admitted that, in March 2022, he possessed a firearm even though he has a prior felony conviction. There is absolutely no evidence that Mr. Davis otherwise engaged in criminal activity. In fact, since he came home from prison this time he had been working a good-paying job (until he was injured). He stabilized his life. He reengaged in his daughter's life, resuming his duties as sole caregiver. This photo shows



Will and his daughter at her recent 8th grade graduation.

As Will's girlfriend describes it, he also assumed the role of father for her three children as

well. Will was living life as a "soccer dad," shuttling kids to practices, activities, and after-school programs. He was finally living the positive life that he didn't get as a child but that he always wanted. To be sure, Will never should have put that gun in his pants when the police pulled him over. He shouldn't have put himself in a position to be around a gun. But the government's request for an above-guideline sentence is extreme. When Will came home, he did almost everything right. There is no whiff of an allegation that he had returned to drug dealing or that he even contemplated using a gun or committing any other crime. The government relies almost exclusively on that history to justify its request. But Will didn't revert that that history.

A sentence of 36 months best reflects the seriousness of the offense, the limited nature of his criminal activity, the strong mitigation from his own abuse-ridden childhood, and the good progress he made toward creating a positive life as father, partner, and community member. We respectfully move for a downward variance to a sentence of no more than 36 months' imprisonment.

## I.    The guidelines use Mr. Davis's criminal history against him harshly and twice

Section 2K2.1 can be analogized to § 4B1.1's career offender guideline in important ways. Both § 2K2.1 and § 4B1.1 break from the normal approach to calculating the guidelines range, in that prior convictions can increase not only a defendant's criminal history score but also their offense level. Both § 2K2.1 and the career offender guideline accomplish this by focusing on the two specific types of offenses listed in § 4B1.2: crimes of violence and controlled substance offenses.

Under § 2K2.1, Mr. Davis's base offense level is set at 24 because he has those two convictions for controlled substance offenses listed in Paragraphs 28 and 29. PSR ¶ 15. Without those prior convictions, Mr. Davis's base offense level would be 14.[1] Holding all else constant – that is, you still

---

[1] To be clear, Mr. Davis's conviction for robbery is not a crime of violence under the guidelines. Under § 4B1.2(a), there are two alternative definitions of "crime of violence." First, an

2

**J.A. 054**

assign criminal history points for those drug convictions – the recommended sentence under the guidelines would be *21 to 27 months*.

In the context of the career offender guideline, the Sentencing Commission has recognized that people who receive the career offender designation based on prior drug offenses are not meaningfully more likely to reoffend than non-career-offenders, that they generally don't reoffend as quickly as violent career offenders, and they are not as likely to be rearrested for a violent crime. *See*

---

offense will qualify as a crime of violence under the "force clause" if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). Second, an offense will qualify under the "enumerated clause" if it is included in the listed offenses to be treated categorically as a crime of violence. § 4B1.2(a)(2). Robbery is enumerated in § 4B1.2(a)(2), but that does not mean that every offense that a state labels as "robbery" qualifies as the enumerated offense of "robbery" under the Guidelines.

In *United States v. Green*, 996 F.3d 176, 182 (4th Cir. 2021), the Fourth Circuit stated that because the Guidelines do not themselves define robbery, the generic definition of robbery controls the analysis. The Fourth Circuit concluded that "generic robbery … is the misappropriation of property under circumstances involving *immediate danger to the person*." *Id.* (emphasis in original; quotation marks omitted).

To qualify as the enumerated offense of "robbery" under § 4B1.2(a)(2), the state offense must match (or be narrower than) the elements of generic robbery. In other words, Virginia robbery must match or be narrower than the elements of generic robbery. Virginia robbery is plainly broader than generic robbery. In response to a certified question from the Fourth Circuit Court of Appeals, the Virginia Supreme Court held that Virginia robbery can be committed by threatening to accuse the robbery victim of sodomy. *United States v. White*, 24 F.4th 378, 381 (4th Cir. 2022). In *White*, the Fourth Circuit held that (obviously) Virginia robbery therefore does not require the use, threatened use, or attempted use of physical force. *Id.* That same feature of Virginia robbery also makes it broader than generic robbery.

To walk through the analysis: Fourth Circuit precedent says that generic robbery must contemplate immediate danger to the person. *Green*, 996 F.3d at 182. *White* tells us that Virginia robbery can be committed merely by threatening to accuse someone of having engaged in sodomy. Thus, Virginia robbery can be committed without immediate danger to the person, *i.e.*, by threatening a sodomy accusation. Because Virginia robbery can be committed by conduct broader than generic robbery, it is not a "crime of violence" under the guidelines. This all means that Mr. Davis's base offense level would be 14 without the drug convictions because he does not have a prior sentence for a crime of violence.

U.S. Sent. Comm'n, *Report to the Congress: Career Offender Sentencing Enhancements*, at 41-42 (Aug. 2016).[2] These findings led the Sentencing Commission to conclude "that drug trafficking only offenders should not be subjected to the same recidivist enhancements as the other career offenders." *Id.* at 41. Other courts have relied on these findings by the Commission to justify below-guideline sentences for defendants who qualify as career offenders based only on drug convictions. *See, e.g., United States v. Flowers*, No. 08cr188, 2020 WL 1916616, at *6 (E.D. La. Apr. 20, 2020).

Mr. Davis's guidelines are infected by the same flaw identified by the Commission. The guidelines range is *more than doubled* based on two drug convictions. PSR ¶¶ 28-29. Yet the Commission's findings give plenty of reason to doubt whether people who receive this massive increase in their base offense level under § 2K2.1 based solely on drug crimes are actually more likely to reoffend than folks without such convictions. We know that problem exists for drug-only career offenders and it's unclear why those findings would not translate directly into this analogous context. Based on the Commission's findings, the Court should pause before accepting that the doubling of Mr. Davis's guideline range based on two prior drug convictions actually helps accomplish the § 3553(a) policy objectives.

Even setting aside the Commission's findings about drug-only career offenders, it is beyond dispute that Mr. Davis's guidelines range is largely driven by his criminal history. And uniquely so. Typically, the base offense level is established via the Commission's assessment of the seriousness of the offense of conviction in its most generic form. Then specific offense characteristics can increase or decrease the offense level based on how that crime was committed in a specific case. For example, points may be added if the defendant engaged in particularly dangerous conduct or obstructed justice

---

[2] Available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/criminal-history/201607_RtC-Career-Offenders.pdf (last visited Dec. 21, 2022).

**J.A. 056**

in commission of the offense. Or the offense level may be reduced if the defendant played a minor role in the offense. But those adjustments to the offense level generally turn on how *this* crime was committed. In this way, "the seriousness of the offense" is "reflected by the base offense level inquiry under chapter two." *United States v. Thornberg*, 326 F.3d 1023, 1027 (8th Cir. 2003). *Accord United States v. Haltom*, 113 F.3d 43, 44 (5th Cir. 1997) ("The base offense level generally reflects the seriousness of the offense, as determined by the drafters of the guidelines.").

Here, Mr. Davis receives no enhancement for any offense-specific aggravating factor. He did not possess the gun in connection with another crime, he did not possess multiple guns, he did not sell guns, or use a gun in any way. His offense level is so high not because of any aggravating fact related to the commission of this offense. His offense level was increased by ten *solely* based on *prior* convictions. Yet the guidelines already account for his criminal history separately via the criminal history category. *See United States v. Garcia*, 224 F. App'x 139, 142 (3d Cir. 2007) (recognizing, in the context of an illegal reentry guidelines range driven mostly by the defendant's criminal history, that the below-guidelines sentence "reflected the Court's reasonable conclusion that the base offense level and resulting Guidelines range overstated the seriousness of Garcia's offense and instead reflected his criminal history"). Because of the anomalous way the guidelines apply to Mr. Davis, his recommended sentence is driven almost exclusively by his criminal history rather than offense-specific conduct. The result is a guidelines range that significantly overstates the seriousness of the instant offense.

A sentence below the guidelines better reflects the seriousness of the offense. Such a sentence would also help the Court avoid imposing a higher sentence based on factors the Sentencing Commission has criticized in a closely analogous context.

**J.A. 057**

II.    **The nature of the offense is mitigating**

The guidelines fail to account for significantly mitigating facts related to the commission of the offense.

The defense may offer additional evidence at sentencing about the specific circumstances under which Mr. Davis possessed a gun. But, at the very least, it is important to note that the government has not suggested that Mr. Davis possessed the gun for any nefarious purpose. To be sure, he was legally prohibited from possessing a gun for *any* purpose. Mr. Davis quickly pleaded guilty in recognition of that fact. But this would be a much different case if he possessed that gun in connection with another crime. Then, perhaps, the government's heavy reliance on his criminal history would be more persuasive. That evidence, however, does not exist.

Second, nothing in the guidelines reflect the actions Mr. Davis took to reduce the risk of a dangerous situation. The government faults Mr. Davis for having a gun in his pants. Of course, that point is well taken. He should not have possessed a gun at all. But the police arrested Mr. Davis for reckless driving, searched Mr. Davis incident to arrest, and placed him in the back of the squad car. At that point, Mr. Davis still had a gun in his pants. Mr. Davis could have tried to discard the gun or hide it either in the police cruiser or in the police facility to which he was being driven. That has happened in other cases. *See, e.g., United States v. Blunt*, ECF No. 70, at 2, No. 2:18cr131 (E.D. Va. Dec. 27, 2018). Instead, Mr. Davis voluntarily told the officers that he had a firearm in his pants. The officers – who missed the gun when searching Mr. Davis initially – were able to safely recover the firearm. Obviously, Mr. Davis knew that he was making an admission that could get him prosecuted and imprisoned. In fact, it did. Yet he did the right thing in the moment. His honest statement to the officers helped keep everyone safe that day. His guidelines range does not reflect that "super-

acceptance" of responsibility upon arrest.

### III.    Mr. Davis recently took great strides toward overcoming considerable adversity



Will Davis endured what the PSR euphemistically describes as a "difficult life in both his mother's and father's homes." PSR ¶ 46. It appears to have been a virtual hell on earth. Will must have lived in a constant state of fear. His own father was largely absent, leaving Will with no structure at home. PSR ¶ 46. When his father was home, he abused crack and alcohol. *Id.* Mom's house was no escape. Will's stepfather physically abused him mercilessly. Literally broke his jaw. PSR ¶ 48. Will was beaten with lumber, whipped with tree branches, and thrown down flights of stairs; when all else failed, he was pummeled with closed fists. *Id.* Mom knew about the abuse but either couldn't or wouldn't protect him. Both she and Will's stepfather were addicted to drugs and alcohol. To stop the abuse, Will had to stand up for himself. To numb the pain, he turned to drugs. PSR ¶ 47.

According to the Department of Justice, a child being exposed to violence "triggers a traumatic disruption of biological, cognitive, social and emotional regulation that has different behavioral manifestations depending on the child's developmental stage."[3] Exposure to violence causes "abrupt

---

[3] U.S. Dept. of Justice, *Report of the Attorney General's National Task Force on Children Exposed to Violence*, at 29 (Dec. 12, 2012), https://www.justice.gov/defendingchildhood/cev-rpt-full.pdf (last visited Dec. 21, 2022).

**J.A. 059**

changes in brain activity and altered perceptions of self, others, and the environment, leaving the child "stuck" or "frozen" without a way to escape." *Id.* After careful study, the DOJ concluded that "when violence is chronic or sources of support are inadequate, the result can be a severe and lasting impact on every aspect of the child's development." *Id.*

As the DOJ seems to comprehend, childhood trauma is not just a sad or unfortunate aspect of someone's past. It is a well-documented cause of observable, enduring changes in a person's brain that has lasting impacts. Studies have shown that childhood trauma "interferes with the normal development of the brain" and affects the "neural circuits [in] areas of the brain critical for emotional, physiological, psychological, and social development."[4] Studies have addressed the underlying biological phenomenon involved with childhood trauma:

> Research findings demonstrate differences between traumatized and normal brains. … During traumatic events, the central nervous system (which includes the brain and spinal cord) is overstimulated, and the physiological changes that occur can cause long-term, perhaps permanent, changes in brain structure and function. Such changes can affect memory, learning, ability to regulate affect, and social development.

*Id.* at 229. There is "abundant empirical literature demonstrating the regulatory effect of social experiences, in early life, on neurodevelopment."[5] In other words, what happens to you as a child affects how your brain develops.

---

[4] Kathleen M. Heide & Eldra P. Solomon, *Biology, childhood trauma, and murder: Rethinking justice*, 29 Int'l J. L. & Psychol. 220, at 223 (2006).

[5] *See, e.g.*, Nancy Wolff & Jing Shi, *Childhood and Adult Trauma Experiences of Incarcerated Persons and Their Relationship to Adult Behavioral Health Problems and Treatment*, 9 Int'l J. Envtl. Res. & Pub. Health 1908, 1920 (2012) ("Our finding of a positive association between trauma exposure and behavioral health symptoms and problems is consistent with previous research based on community and incarcerated samples.").

And we know that these changes to the brain don't magically disappear when the person becomes an adult. Childhood trauma is not something people just grow out of or get over:[6]



**Adverse Childhood Experiences impact lifelong health and opportunities.**

- Many people do not realize that exposure to ACEs is associated with increased risk for health problems across the lifespan.

**Centers for Disease Control and Prevention**
National Center for Injury Prevention and Control

**Overview:**

Adverse Childhood Experiences (ACEs) are potentially traumatic events that occur in childhood. ACEs can include violence, abuse, and growing up in a family with mental health or substance use problems. Toxic stress from ACEs can change brain development and affect how the body responds to stress. ACEs are linked to chronic health problems, mental illness, and substance misuse in adulthood.

This is the United States Department of Justice and the CDC explaining that childhood trauma is a measurable and relevant problem. It really impacts brain development. And its affects are lasting.

On top of all that, Will suffered documented disabilities as a child that were severe enough to entitle his family to social security payments. PSR ¶ 51. To qualify for such benefits, a child must have "a medically determinable physical or mental impairment or impairments which result in marked and severe functional limitations."[7] The "learning disabilities" described in the PSR must have been quite severe. PSR ¶ 51. He also has a documented history of depression dating back to "when he was a juvenile." PSR ¶ 61.

---

[6] Excerpts: CDC, *Vitalsigns: Adverse Childhood Experiences (ACEs)* (Nov. 2019), *available at* https://www.cdc.gov/vitalsigns/aces/pdf/vs-1105-aces-H.pdf (last visited Dec. 21, 2022).

[7] SSA.gov., *Supplemental Security Income (SSI) for Children: WHAT ARE THE CRITERIA FOR A "DISABLED" OR "BLIND" CHILD?*, *available at* https://www.ssa.gov/ssi/text-child-ussi.htm (last visited Dec. 21, 2022).

**J.A. 061**

The adversity and violence he experienced as a child and his documented learning disabilities and mental illness clearly put Will at a major disadvantage in life. Those circumstances surely help explain his criminal history. Yet, notwithstanding those obstacles, Will was able to make tremendous strides during his most recent time in the community. When Will went to prison in 2012, he left his young daughter behind. These photos show Will with his daughter not long before he left.

 

Will barely made it back in time for Z's 8th grade graduation. This time, Will wanted to make things different. And, in so many ways, he did. Most obviously, he did not return to drug dealing or violent crime. But he also established himself as a contributing member of society and a contributing member of his family unit.

"From June 2021 until January 2022," Will worked at Howmet Aerospace, where he "refurbished wreckage material and earned $21.50 per hour." PSR ¶ 65. He only stopped working because he was hurt on the job. *Id.* And for several months before that he was working as a sub-contractor earning $10 per hour. PSR ¶ 66. Will appears to have been consistently employed starting as soon as he was released from prison.

As for life as a family man, the attached letter from Tiffany Smith is the best summary of Will's transformation. That letter describes a very different person from the one the government sees

reflected in his criminal history. But Will's criminal history is just that, history. His most recent conviction is from an offense committed ten years ago. PSR ¶ 29. Ms. Smith's letter is much better evidence of Will's character and paints a much more accurate picture of the man he is today.

Obviously, Will Davis did not achieve perfection when he came home from prison in February 2021. But for over a year, he built a wholesome life for himself and his family. The decision he made on one March afternoon will no doubt haunt Will for a long time. It has already set him back and cost him time away from his young family. And it will surely cost him more time still. But three years for the simple possession of a gun is sufficient punishment to send a message that such conduct is not acceptable. A sentence in excess of three years would be greater than necessary to accomplish the goals of sentencing, given Will's history of trauma and adversity, his successful recent efforts to build a positive life, and the unaggravated nature of the offense.

**IV.    A sentence of 36 months would not create unwarranted sentence disparities**

Imposing a sentence of three years in this case will not lead to unwarranted sentence disparities. *See* § 3553(a)(6). As noted above, without ratcheting up Mr. Davis's offense level based on prior drug convictions, his guidelines would recommend 21 to 27 months. Thus, most people who are otherwise similarly situated to him but – for example – had prior *gun* charges instead of prior *drug* charges, would face a guidelines range significantly below three years.

Moreover, there are plenty of other cases from this District in which people with similar criminal histories engaged in significantly more aggravating offense conduct. Yet many of those people received sentences below three years. For example, in *United States v. Lawrence Jones*, the defendant pleaded guilty to distribution of cocaine and felon-in-possession. No. 4:20cr5 (E.D. Va. Nov. 5, 2021). According to the government, Jones had prior convictions for robbery, profane or threatening language over public airwaves, and other less serious offenses. ECF No. 182, at 2, in *Jones*. He fell into

Criminal History Category III. *Id.* The government noted that Jones "was engaged with Bloods Gang members in the distribution of narcotics and the sale and possession of firearms" which conduct "took place over an extended period." *Id.* The Court imposed 28-month concurrent sentences on the drug distribution and felon-in-possession charges. ECF No. 189, in *Jones.*

In *United States v. Crawley*, the defendant was seen with a gun handle sticking out of his waistband.  Statement of Facts, ¶ 3, ECF No. 13, in *Crawley*, No. 4:13cr77 (E.D. Va. Jan. 16, 2014). The defendant fled and officers followed in foot pursuit.  *Id.*  After the defendant was caught, a firearm was found along the path of the foot pursuit. *Id.* at ¶ 4. The defendant in *Crawley* had a history of violence, having been convicted of felony carjacking.  *Id.* at ¶ 2.  Despite more serious offense conduct and a serious criminal history, this Court sentenced Mr. Crawley to 30 months in prison.  *See* Judgment, at 2, ECF No. 24 in *Crawley.*

In *United States v. Davis*, No. 4:12cr118 (E.D. Va. May 22, 2013), the § 922(g) charge arose following an incident in which—at least according to the government—the defendant brandished a firearm at a hotel.  *See* Order of Detention, at 2, ECF No.13 in *Davis*. The defendant had prior convictions for drug possession and distribution, and—after being granted bond when the federal charges were pending in the state—he was arrested again and charged with felony possession with intent to distribute cocaine and possession of a firearm.  *Id.*  This Court sentenced Davis to 21 months. Judgment, ECF No. 27 in *Davis.*

In *United States v. Jennings*, No. 4:16cr33 (E.D. Va. Oct. 27, 2016), the Statement of Facts read, in part:

> The detectives decided to make consensual contact with the occupants of the Ford Edge and parked their car. […] The defendant ran from his car and attempted to flee from the detectives. As the defendant exited the car, Detective Brayboy heard a metal object hit the ground near the vehicle.  Detective Woods chased the defendant and arrested him. Located on the ground near the car, in the same area where

> Detective Brayboy heard the metal object hit the ground, was a loaded
> black Glock 27 .40 caliber handgun….

ECF No. 13, at ¶ 1, in *Jennings*.  The defendant in that case was in Criminal History Category IV.  *See* Position of U.S.A. With Respect to Sentencing, at 1, ECF No. 21. In that case, the Probation Office recommended an enhancement under § 2K2.1(b)(6)(B), but the government took the position that the enhancement "should not be applied because the evidence is insufficient to support a conviction for a felony drug *tracking* offense." *Id.* (emphasis added). Still, unlike here, it was undisputed that drugs were found in the car from which the defendant fled.  *See* Position of Def. with Respect to Sentencing Factors, at 2, ECF No. 20 in *Jennings*. So, *Jennings* involved a defendant with the same criminal history score who engaged in clearly more culpable offense conduct (having thrown gun during flight and been caught with a drug-and-gun combo). But this Court sentenced Jennings to 24 months.  Judgment, ECF No. 24 in *Jennings*.

Even a defendant in Criminal History Category VI – the most serious offense category – would be subject to a guidelines range of 30 to 37 months if he engaged in the same offense conduct present here. Thus, a sentence of 36 months would not create an unwarranted disparity between Mr. Davis and other defendants with similar criminal histories who engaged in the same conduct.

*        *        *

A sentence of 36 months in prison followed by two years of supervised release is sufficient but not greater than necessary to accomplish the purposes of sentencing in this case. The defense further requests that this Court recommend that Mr. Davis participate in the Residential Drug Abuse Program (RDAP) in the Bureau of Prisons.

Respectfully submitted,

WILLIAM ANTHONY DAVIS, JR.

By:_____/s/_____
Andrew W. Grindrod
Virginia State Bar No. 83943
Assistant Federal Public Defender
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
(757) 457-0800
(757) 457-0880 (telefax)
andrew_grindrod@fd.org

14

**J.A. 066**

**Tiffany Smith**

Hampton, VA 23663

Dec. 19, 2022

Dear Judge Young,

My name is Tiffany Smith. I'm an Assistant Store Manager at Walmart. I'm
writing you this letter on behalf of William Davis Jr. William and I have been in
a relationship for 1 year and 7 months. Prior to his arrest back in March,
William, myself , my children from a previous marriage and his daughter were
all residing at the address ███████████. Will was the best boyfriend I
have ever had and that's saying a lot after being married for over 13 years.
William always made sure that I was happy, bringing me flowers just because,
surprising me with lunch at work or me coming home to all the household
chores being done. William is a blessing not only to me but our kids as well.
He brought so much happiness into a family that had gone through alot, and I
thank him for that.

William not only cared for his daughter that he has custody of, but my 3
children as well. William took his role as being a father very seriously.
Understanding that as a parent your time is not your own anymore. He was the
"soccer dad" making sure the kids got to and from school safely.  My 2
daughters at the time were involved in a lot of after school programs and
being that I'm managing a store it was hard for me to be able to get them, but
William always was there when I couldn't be. He told me when we first met
that he always wanted a family and to feel loved and he has that in us.

He is so loving and patient with the children, always being a good listener and
being the voice of reason. I have a son with autism and he says Willaim is his
best friend. William takes out time to make sure that he spends one on one
time with my son, taking him to get hair cuts, having father son talk with him

**J.A. 067**

about life and other things so that he understands, and more. He is very patient with him and I love that about William . I can honestly say we are a true family and he brought much joy and happiness into our lives. Our life is constant work and taking care of kids.

Sincerely

**TIffany Smith**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )   Crim. No.   4:22-cr-57 |
| WILLIAM ANTHONY DAVIS, JR. | ) |
| | ) |
| Defendant. | ) |

UNITED STATES' MOTION TO GRANT AN ADDITIONAL ONE-LEVEL
REDUCTION IN THE OFFENSE LEVEL FOR ACCEPTANCE OF RESPONSIBILITY

The United States of America, by its attorney, Elizabeth Nielsen, Special Assistant United States Attorney, moves this Court pursuant to U.S.S.G. § 3E1.1(b) to grant an additional one-level reduction in the offense level for acceptance of responsibility, in the event that the Court determines the defendant has accepted responsibility. The government states that the defendant has assisted authorities in the investigation and prosecution of his own misconduct by timely notifying the United States of the defendant's intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the court to allocate their resources efficiently.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____/s/_____
Elizabeth Nielsen
Special Assistant United States Attorney
Eastern District of Virginia
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax:    (757) 591-0866
elizabeth.nielsen@usdoj.gov

**J.A. 069**

<u>Certificate of Service</u>

I certify that on December 22, 2022, I electronically filed a copy of the foregoing with the

Clerk of the Court using the CM/ECF system who will send notification of such filing (NEF) to

all counsel of record.

By: _____/s/_____
Elizabeth Nielsen
Special Assistant United States Attorney
Eastern District of Virginia
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone:   (757) 591-4000
Fax:        (757) 591-0866
Email:     elizabeth.nielsen@usdoj.gov

2

**J.A. 070**

# FEDERAL PUBLIC DEFENDER

EASTERN DISTRICT OF VIRGINIA
150 BOUSH STREET, SUITE 403
NORFOLK, VIRGINIA 23510
TEL: (757) 457-0800
FAX: (757) 457-0880
Email: andrew_grindrod@fd.org

Geremy C. Kamens
Federal Public Defender

Andrew W. Grindrod
Assistant Federal Public Defender

December 28, 2022

VIA ECF
Hon. Roderick C. Young
Spottswood W. Robinson III &
Robert R. Merhige, Jr., Federal Courthouse
701 East Broad Street
Richmond, VA 23219

RE:   Sentencing in *U.S. v. Davis*, Case No. 4:22cr57

Dear Judge Young:

I am writing to provide one additional character letter that we will ask the Court to consider at sentencing in this matter, which is scheduled for January 4, 2023.

Sincerely,

Andrew W. Grindrod

Attachment

cc (via ECF):  All counsel of record

J.A. 071

Dear Judge Young,

My name is Angel Williams, I'm a 34-year-old college graduate of Virginia Commonwealth University with a dual degree in Criminal Justice, and Sociology with certificates in Forensic Science and Homeland Security; I am also a prior armed servicemen in which I honorably served in the military for my country for a combined total of 9 years. I am writing today on behalf of William Davis who is not only my lifelong partner and best friend but also the father of my son A██ D██ who is currently 7 months old, we are not currently in a coupled relationship, but regardless of a relationship title we will always share a genuine authentic bond for the rest of our lives and after, as we were always friends first before anything else. I've known William for 16 plus years, I met him shortly after turning 18 years old and he was 19, we bonded instantly and before becoming anything more we became friend's 1st. Hes one of the easiest going, quirky, funny, and lovable guys I've ever met in my life even to this day. The warmth and genuineness of his heart is unmatched. At the time of meeting Will I was a troubled youth battling my own life issues, and eventually I would lose my home in a fire thus losing everything I ever owned, I barely had known William  for 3 months at the time and he never thought twice about it, he offered me his home and everything he had to offer along with it, in terms of making sure I was taken care of, and he never once asked for anything in return. He has always been so kind with the biggest heart to anyone, even strangers, thus explaining why he has always been so well liked and loved by all those that he encounters. William has too had a troubled youth thus another life obstacle we bonded over, life sure hasn't been easy for him from birth he suffered health conditions, and overcame so much of what others said he couldn't, he suffered abuse from his stepfather and eventually went to live with his biological father later in life, but still he rose and overcame, he's been through so much in his short 34 years, even all most losing his life to covid in December 2020 he remained in the hospital for over two weeks up until his 33rd birthday, I am moved to tears in my attempt to even recall one of the most traumatizing moments of my life; that is me being afraid that I would lose the man who has brought my life so much reason, understanding, and kindness to soon, but GOD had other plans, and all glory to be is given to the "most high" William pulled through and made it home to his loved ones. I won't sit here and tell you that he's a perfect man because he isn't, but then again no one is, he has made mistakes and bad judgement calls like we all have, but he also has answered for those mistakes and paid his debt to society. I want this letter to "your honor" to not reflect on the bad decisions he has made, as anyone can look that up; but I want to shine light on his character, and attest to the resilient, formidable, yet humble, and lovable man that is William Davis. The love and light of his life has and always will be his children, whom he without a doubt has made every possible attempt despite his shortcoming to be a great father and he has succeeded. He is loved so much, his 15-year-old daughter Z██ D██  will tell you hands down he's the best father God could have ever given her, despite him being incarcerated some of her younger years he has remained dedicated and a prominent force in her life, their bond has remained untethered. It's nothing to imagine what a day with Will would look like as he has come home from his prior incarceration, and that is simply to say you could find him always being a father, always somewhere, encouraging and uplifting his daughter, with the highest intention to ensure she becomes the fullness of greatness she was destined to become from the moment she was born. I couldn't ask for a better father for my son, and I look forward to him raising A██ to be as mighty, kind, nurturing, and loving as himself. You wouldn't know it to look at him, but Will is like the quirkiest man you'll ever meet he enjoys Pokémon, Star Wars, and Baby Yodi, I smile while writing this because its

**J.A. 072**

these best kept secrets that allowed me to easily fall in love with him. Those are just a few of the unique "don't tell all's" that make him William, he can talk for hours to you about the stars, the universe, and ancient civilizations, and let's not get him started on his love of crocodile's snakes and spiders, he's simply one of the coolest guys I know. He has taught me so many life lessons, and in so many weak moments in my life I have recounted his strength and all that he has endured/survived, that he never even complains about, and I keep going, he has been a light in my darkness even in my darkest hours. All the while he himself has been forever changed with the passing of his closest loved ones and even witnessing his cousin who was actually more like his brother pass away in his arms, that changed him forever and remembering the pain I saw in his eyes that day is a constant reminder of how short and fragile life is, life has not been fair, but Will has never made that an excuse, he has persevered and constantly pushed forward steadily always reaching for the light that it seemed like at times only he could see. I am not only proud to call him my friend but I'm so grateful God allowed me to experience him, your honor I ask mercy and not only that, but I pray the eyes that read these words in some strange way are able to experience even if only to the smallest extent, the person, the man, the father, the brother, the son, and friend that he is to so many. Our society needs William in a world so cold he is a well appreciated warmth. I pray this to you William, that you will always know that you are more special than words could ever express, that this is not your ending but rather a short detour along your path to redemption. God saves his hardest battles for his toughest soldiers, and I know you will overcome. Thank you, your honor for taking the time to read and absorb the words on this paper, may your spirit be moved to grant William another opportunity at freedom not only for himself but for the sake of his children, we love him so much and we will always need him. May God bless you, and may you find favor and grace in these words.

Be Blessed,

All my best,

Angel Williams

This page intentionally left blank for double-sided pagination and printing

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

————————————————————— )
UNITED STATES OF AMERICA            )
                                    )
v.                                  )     Criminal Case No.:
                                    )     4:22 CR 57
WILLIAM ANTHONY DAVIS, JR.          )
————————————————————— )
                                          January 23, 2023

COMPLETE TRANSCRIPT OF HEARING
BEFORE THE HONORABLE RODERICK C. YOUNG
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

Elizabeth Nielsen, Esquire
OFFICE OF THE UNITED STATES ATTORNEY
721 Lakefront Commons
Suite 300
Newport News, Virginia 23606

          Counsel on behalf of the United States


Andrew W. Grindrod, Esquire
OFFICE OF THE FEDERAL PUBLIC DEFENDER
500 East Main Street
Suite 500
Norfolk, Virginia 23510

          Counsel on behalf of the Defendant


TRACY J. STROH, RPR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT

2

```
 1              (The proceeding commenced at 11:00 a.m)
 2              THE CLERK:  In the matter of criminal case
 3  number 4:22 CR 57, *United States of America v. William*
 4  *Anthony Davis, Jr.*
 5              The United States is represented by
 6  Elizabeth Nielsen.
 7              The defendant is represented by Andrew Grindrod.
 8              Ms. Nielsen, is the government ready to proceed?
 9              MS. NIELSEN:  The United States is ready.  Thank
10  you.
11              Good morning, Your Honor.
12              THE COURT:  Good morning.
13              THE CLERK:  And, Mr. Grindrod, is the defendant
14  ready to proceed?
15              MR. GRINDROD:  Yes, the defense is ready.
16              Good morning, Your Honor.
17              THE COURT:  All right.  Good morning.
18              All right.  Government, why are we here this
19  morning?
20              MS. NIELSEN:  Sorry, Your Honor?
21              THE COURT:  Why are we here this morning?
22              MS. NIELSEN:  Well, we're here for a sentencing,
23  Your Honor, although shortly before walking in here,
24  Mr. Grindrod brought to our attention an objection that he
25  has based on potentially new case law.
```

3

1      The United States is prepared to go ahead on our

2 other sentencing arguments.  However, if the Court would

3 like to address Mr. Grindrod's new arguments, we'd

4 respectfully request an opportunity to brief those.  So

5 we'd seek a continuance.

6      THE COURT:  Well, let me hear from you,

7 Mr. Grindrod, then, on what your objection is.

8      Did you file this?

9      MR. GRINDROD:  No, Your Honor.

10      And Ms. Nielsen is right.  I just brought this

11 to her attention this morning.  The objection is based on

12 a decision by Judge Novak in a case in this court,

13 United States against Devon Howell, H-O-W-E-L-L.  And

14 that's case number 3:22 CR 68.

15      Just before court started, Your Honor, I passed

16 your courtroom deputy a packet of documents that were

17 filed in that case and a copy of the Fourth Circuit's

18 decision in United States against Campbell, which is cited

19 by the parties in that briefing.

20      And essentially the argument that was made is

21 that the Virginia controlled substance offenses in the

22 *Howell* case don't qualify as controlled substance offenses

23 under chapter 4 --

24      THE COURT:  Well, why didn't you move for a

25 continuance, then, so you could file something?

4

1          MR. GRINDROD:  I'm sorry?

2          THE COURT:  Why didn't you move for a

3  continuance so you could file something --

4          MR. GRINDROD:  Your Honor --

5          THE COURT:  -- or ask for a motion to extend the

6  briefing deadline to file objections to the presentence

7  report?

8          MR. GRINDROD:  I didn't personally become aware

9  of this issue until 10:00 this morning, Your Honor.  And

10 so I ran down to our office and pulled these documents so

11 that I could try to at least flag the issue for opposing

12 counsel and the Court, but I just wasn't aware of it until

13 this morning.

14         THE COURT:  All right.  Well, I'll grant a

15 motion to continue the sentencing --

16         MR. GRINDROD:  Thank you, Your Honor.

17         THE COURT:  -- so that you can then file your

18 objection, give the government a chance to respond.

19 You'll have a chance to reply.  I'll have a chance to

20 study the issue, and then we'll make a ruling on it.

21         MR. GRINDROD:  I appreciate it.  And I apologize

22 for the late notice, Your Honor.

23         THE COURT:  That's all right.  If you just found

24 out about it today, I understand.

25         All right, Ms. Jones.  Let's see if we can get a

5

1  date.

2              THE CLERK:  How far out do you think we would

3  need?

4              THE COURT:  I'm going to give Mr. Grindrod

5  seven days to file his objections.  So a week from today.

6  The government will have a week to respond, and then

7  Mr. Grindrod will have three days to reply.  So after

8  that.

9              THE CLERK:  How does February 22nd look?  Our

10  docket is pretty open that day.

11              MS. NIELSEN:  I'm currently set to be out of the

12  country February 11th through the 25th.  If it's possible

13  to set it after those dates.

14              THE CLERK:  How about February 27th?

15              MS. NIELSEN:  That would work for the

16  government.

17              MR. GRINDROD:  The defense is available.

18              THE COURT:  All right.

19              THE CLERK:  How about 10 a.m.?  Does that work?

20              MR. GRINDROD:  We're available all day.

21              MS. NIELSEN:  Likewise.

22              THE COURT:  Okay.  10 a.m. on February 27th?

23              THE CLERK:  Yes, Your Honor.

24              THE COURT:  All right, Mr. Davis.  Would you

25  stand up where you are, please?

6

1           All right, Mr. Davis.  So your lawyer just found
2   out about some case law that he thinks could be beneficial
3   to your case.  I don't know if that's the case yet so I'm
4   going to give him the chance to write something up.  The
5   government will have an opportunity to respond to that.
6   He'll have an opportunity to reply.  I'll study the issue
7   and then hear argument and make a ruling on that when we
8   have your next sentencing hearing.
9           So because they need to do all that, it
10  necessitates me continuing your case.  All right?
11          THE DEFENDANT:  Okay.
12          THE COURT:  All right.
13          All right.  Government, anything else we need to
14  address today?
15          MS. NIELSEN:  Nothing else from the government,
16  Your Honor.  Thank you.
17          THE COURT:  All right.  Mr. Grindrod, anything
18  else?
19          MR. GRINDROD:  No, Your Honor.  Thank you.
20          THE COURT:  Okay.  Very good.
21          Ms. Jones, anything else?
22          THE CLERK:  So you're going to issue an order
23  with a briefing schedule; is that right?
24          THE COURT:  Yes.
25          THE CLERK:  All right.  That's it.

7

1          THE COURT:  Okay.  Very good.

2          All right.  We'll stand in recess.

3          (The proceeding concluded at 11:05 a.m.)

4               REPORTER'S CERTIFICATE

5     I, Tracy J. Stroh, OCR, RPR, Notary Public in and for

6 the Commonwealth of Virginia at large, and whose

7 commission expires September 30, 2023, Notary Registration

8 Number 7108255, do hereby certify that the pages contained

9 herein accurately reflect the stenographic notes taken by

10 me, to the best of my ability, in the above-styled action.

11     Given under my hand this 2nd day of May 2023.

12

                    _____
                           /s/
13                  Tracy J. Stroh, RPR

14

15

16

17

18

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA            )
                                    )
            v.                      )          Criminal Case No. 4:22CR57 (RCY)
                                    )
WILLIAM ANTHONY DAVIS, JR.,         )
            Defendant.              )
_____ )

## ORDER

This case is before the Court on the Defendant's Unopposed Oral Motion to Continue Sentencing. Having considered the Motion to Continue Sentencing and for good cause shown, Defendant's Unopposed Motion to Continue Sentencing is GRANTED. Defendant is DIRECTED to file any objections to the Presentencing Report within seven (7) days of this order. The Government shall file a response within seven (7) days of Defendant's objections and Defendant shall reply within three (3) days of any such response. The sentencing hearing in this matter is RESCHEDULED to take place on February 27, 2023 at 10:00 a.m. To the extent the deadlines contained in the Sentencing Procedures Order (ECF No. 19) are applicable, they shall be read with regard to the new sentencing hearing date.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record AND United States Probation Office.

_____ /s/
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: January 23, 2023

**J.A. 082**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:22cr57** |
| | ) | |
| **WILLIAM ANTHONY DAVIS, JR.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**DEFENDANT'S OBJECTION TO THE PRESENTENCE INVESTIGATION REPORT**</u>

Defendant William Anthony Davis, Jr. objects to the calculation of the advisory Guidelines range set out in the Presentence Investigation Report ("PSR"). Counsel for Mr. Davis noted this objection orally at the sentencing hearing and explained why counsel had not had time to brief the issue before that hearing. The Court granted a continuance of sentencing and issued an order setting a briefing schedule to allow the parties to brief the question and modifying the deadlines in the sentencing procedures order accordingly. ECF No. 29. This objection is submitted in accordance with that order.

**Mr. Davis's base offense level should be 14 (not 24) because he does not have two felony convictions for a controlled substance offense within the meaning of § 4B1.2(b).**

In a mine-run felon-in-possession case, the base offense level is 14 pursuant to § 2K2.1(a)(6). But the base offense level can be increased to 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2). The PSR here recommended a base offense level 24 pursuant to U.S.S.G. § 2K2.1(a)(2), apparently based on Mr. Davis having sustained two convictions for controlled substance offenses as listed in paragraphs 28 and 30 of the PSR. The question here is whether Mr. Davis has two such qualifying convictions. He does not. This is so because convictions

1

**J.A. 083**

under Virginia Code § 18.2-248 categorically do not qualify as controlled substance offenses.

For purposes of this Guideline objection, the defense does not dispute the fact of conviction for the offenses listed at paragraphs 28 and 30 of the PSR. Rather, those convictions do not qualify as "controlled substance offenses" under the Guidelines as a matter of law.

The Fourth Circuit has held that attempt offenses do not qualify as "controlled substance offenses" under § 4B1.2. *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022). Virginia Code § 18.2-248, like the West Virginia statute in *Campbell*, criminalizes attempted delivery of drugs. Thus, a conviction under Virginia Code § 18.2-248 is not a "controlled substance offense" within the meaning of the Guidelines.

In *Campbell*, the defendant was sentenced as a career offender in part because of a West Virginia conviction for delivery of crack cocaine that the district court held was a "controlled substance offense" under U.S.S.G. § 4B1.2. *Campbell*, 22 F.4th at 440-41. On appeal, Campbell argued that 1) § 4B1.2 does not include attempt offenses, and the commentary adding them was invalid; and 2) the West Virginia statute included attempts and was therefore overbroad compared to the § 4B1.2 definition. The Fourth Circuit agreed on both points.

First, the Fourth Circuit observed that "[t]he text of U.S.S.G. § 4B1.2(b) contains a lengthy definition of a 'controlled substance offense' that does not mention attempt offenses." *Campbell*, 22 F.4th at 444. Rather, it is the comment to § 4B1.2 that purports to expand the definition of controlled substance offenses to include attempts and conspiracies. *Id.* But, held the Fourth Circuit, that commentary is invalid under *Stinson v. United States*, 508 U.S. 36, 38 (1993) because it is inconsistent with the text of § 4B1.2. The text of the Guideline includes only completed offenses, and the addition of whole classes of inchoate offenses conflicts with the limited language of the Guideline itself. Guidelines commentary cannot "add to the Sentencing Guidelines' scope." *Id.* at 446 (brackets,

citations omitted). Finding that § 4B1.2's definition of controlled substance offenses includes attempts "would not only allow the commentary to add offenses to the Sentencing Guidelines, but to add attempt offenses, which are generally thought of as less culpable than the relevant substantive crime." *Id.* "In short, the plain text of U.S.S.G. § 4B1.2(b) is inconsistent with the Commission's Commentary to that Guideline, and this is the only 'reasonable construction of' U.S.S.G. § 4B1.2(b)." *Id.* at 447. Section 4B1.2 does not encompass attempts.

Second, the *Campbell* court examined the West Virginia statute at issue and held that it included *attempted*, as well as completed, deliveries.

> The West Virginia conviction that served as one of the predicate offenses justifying Campbell's enhanced sentence arises from a statute that makes it "unlawful for any person to manufacture, **deliver**, or possess with intent to manufacture or deliver a controlled substance."[1]

*Id.* at 441-42 (citing W. Va. Code § 60A-4-401(a) (emphasis added)). West Virginia's definitional statute "provides that 'deliver ... means the actual, constructive **or attempted** transfer from one person to another of' controlled substances or imitation or counterfeit controlled substances." *Id.* at 442 (quoting W. Va. Code § 60A-1-101(h)) (emphasis in *Campbell*). Therefore, based on the clear text of the statutes, the *Campbell* court concluded that "the least culpable conduct criminalized by the West Virginia statute is an attempt to deliver a controlled substance." *Id.* This made the West Virginia drug statute broader than § 4B1.2, which does not include attempts.

A straightforward application of *Campbell* compels the same conclusion here: Virginia's statute is broader than the definition of a "controlled substance offense" under § 4B1.2 because Virginia's

---

[1] *Campbell* correctly employed the categorical approach in determining whether that statute included attempt offenses. 22 F.4th at 441 (citing *United States v. King*, 673 F.3d 274, 278 (4th Cir. 2012)) ("If the 'least culpable' conduct criminalized by the predicate offense statute does not qualify as a 'controlled substance offense,' the prior conviction cannot support a career offender enhancement.").

statute includes attempts.

Virginia's statute is virtually identical to the West Virginia statute analyzed in *Campbell*. Virginia penalizes distribution, possession with the intent to distribute, or dispensing a controlled substance as follows:

Virginia Code § 18.2-248 provides:

> [I]t shall be unlawful for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or **distribute** a controlled substance or an imitation controlled substance.

"Distribute" is further defined in the Drug Control Act as follows:

> **"Distribute" means to deliver** other than by administering or dispensing a controlled substance.

Va. Code § 54.1-3401 (emphasis added). And lastly, "deliver" is defined in the same statute, in relevant part:

> **"Deliver"** or **"delivery"** means the actual, constructive, **or attempted transfer** of any item regulated by this chapter, whether or not there exists an agency relationship[.]

Va. Code § 54.1-3401 (emphasis added). Therefore, the Virginia offense of distributing a controlled substance can be committed via the "attempted transfer" of a controlled substance. This reasoning has been confirmed by the Virginia Supreme Court:

> In Virginia, "**distribute**," as proscribed in Code §§ 18.2-248 and -248.1, means "to **deliver** other than by administering or dispensing a controlled substance." Code § 54.1–3401. "**Deliver**" means "the actual, constructive, **or attempted transfer**" of any controlled substance, "whether or not there exists an agency relationship," from one person to another. *Id.; Wood v. Commonwealth,* 214 Va. 97, 99, 197 S.E.2d 200, 202, *appeal dismissed,* 414 U.S. 1035, 94 S.Ct. 533, 38 L.Ed.2d 326 (1973).

*Moreno v. Baskerville*, 249 Va. 16, 18-19 (1995) (emphasis added).

4

**J.A. 086**

Thus, Virginia's statute has the same scope and definition that made West Virginia's statute fail to qualify as a controlled substance offense within the meaning of U.S.S.G. § 4B1.2. Compare:

| West Virginia<br>(§ 60A-4-401(a) & § 60A-1-101(h)) | Virginia<br>(§§ 18.2-248 & § 54.1-3401) |
|---|---|
| (a) Except as authorized by this act, it is unlawful for any person to manufacture, **deliver**, or possess with intent to manufacture or deliver a controlled substance.<br><br>(h) "Deliver" or "delivery" means the actual, constructive **or attempted transfer** from one person to another of: (1) A controlled substance, whether or not there is an agency relationship; (2) a counterfeit substance; or (3) an imitation controlled substance. | A. Except as authorized in the Drug Control Act (§ 54.1-3400 et seq.), it shall be unlawful for any person to manufacture, sell, give, **distribute**, or possess with intent to manufacture, sell, give or distribute a controlled substance or an imitation controlled substance<br><br>**"Distribute" means to deliver** other than by administering or dispensing a controlled substance.<br><br>"**Deliver**" or "delivery" **means** the actual, constructive, or **attempted transfer** of any item regulated by this chapter, whether or not there exists an agency relationship. |

As this side-by-side shows, there is no material distinction between the West Virginia statutes at issue in *Campbell*, and the Virginia statutes at issue here. Neither state's statute qualifies as a "controlled substance offense" under § 4B1.2.

Since the *Campbell* decision, the Fourth Circuit has considered drug statutes in other jurisdictions, including Maryland, North Carolina, and the District of Columbia. In *United States v. Ryles*, No. 20-4513, 2022 WL 2167615, at *1 (4th Cir. June 16, 2022), the Fourth Circuit considered whether a Maryland conviction for attempted distribution of cocaine was a controlled substance offense under U.S.S.G. § 4B1.2.[2] Relying on *Campbell*, the Court held that, "[b]ecause U.S.S.G. § 4B1.2(b)'s definition of a 'controlled substance offense' does not include attempt offenses, the district court procedurally erred in calculating Ryles' Guidelines range." *Id.*

---

[2] The Court considered whether the Maryland conviction qualified as a predicate offense for purposes of the enhanced base offense levels under U.S.S.G. § 2K2.1(a). *Campbell*, 22 F.4th 438

As to a North Carolina offense, another panel of the Fourth Circuit held that state law was clear that "delivery" under the state statute was "satisfied by attempted transfer" of drugs. *United States v. Locklear*, No. 19-4443, 2022 WL 2764421, at *2 (4th Cir. July 15, 2022). Thus, *Campbell* dictated the outcome.

As to a D.C. law, the same reasoning applied. *United States v. Monroe*, No. 20-4083, 2022 WL 1655662, at *1 (4th Cir. May 25, 2022) ("District of Columbia conviction for attempted possession with intent to distribute cocaine, which yielded an 18-month sentence, did not qualify, categorically, as a 'controlled substance offense.'"). *Accord United States v. Govan,* No. 19-4681, 2022 WL 1499643, at *1 (4th Cir. May 12, 2022) ("In light of *Campbell* … it is likewise clear here that Govan's conviction under W. Va. Code § 60A-4-401(a) does not qualify as a predicate 'controlled substance offense' under USSG § 4B1.2(b).").

Addressing the same exact question presented here, Judge Novak of this Court recently held that Virginia Code § 18.2-248 is not a "controlled substance offense" under the Guidelines after *Campbell*. *See United States v. Howell,* No. 3:22cr68 (E.D. Va. Jan. 19, 2023). The defendant in *Howell* raised the exact objection that Mr. Davis raises here. *See* ECF No. 32, in *Howell*. The minute entry from sentencing shows that Judge Novak sustained this defense objection:

OBJECTIONS TO PSR: BASE LEVEL 24 - DEFT does Not have any predicate OFFENSES that qualify as A controlled substance offense as defined IN U.S.S.G. § 4B1.2! - SUSTAINED   adopted w/changes.

ECF No. 39, at 1 in *Howell*.

We ask the Court to apply *Campbell*—as Judge Novak did in *Howell*—and conclude that Mr. Davis's convictions under Virginia Code § 18.2-248 cannot increase his offense level because they are

not controlled substance offenses under U.S.S.G. § 4B1.2(b).[3]

Should this Court sustain his objection, Mr. Davis's base offense level would be 14 rather than 24. Because his total offense level would now be less than 16, he would be entitled to only a two-level reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. A total offense level 12 and Criminal History Category IV would result in an advisory guidelines range of 21-27 months. We ask the Court to adopt that range and sustain Mr. Davis's objection to the base offense level recommended by the PSR.

Respectfully submitted,

WILLIAM ANTHONY DAVIS, JR.

By:_____/s/_____
Andrew W. Grindrod
Virginia State Bar No. 83943
Assistant Federal Public Defender
Office of the Federal Public Defender
500 East Main Street, Suite 500
Norfolk, Virginia 23510
(757) 457-0800
(757) 457-0880 (telefax)
andrew_grindrod@fd.org

---

[3] Mr. Davis previously explained why his robbery conviction is not a crime of violence under § 4B1.2(a). *See* ECF No. 25, at 2-3 n.1. Insofar as the government intends to rely on the conviction at PSR paragraph 26 to support an increased base offense level, Mr. Davis incorporates that argument by reference and maintains his objection. The correct base offense level is 14.

**J.A. 089**

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.  4:22-cr-57 |
| | ) | |
| WILLIAM ANTHONY DAVIS, JR., | ) | |
| | ) | |
| Defendant. | ) | |

UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTION TO

THE PRESENTENCE INVESTIGATION REPORT

The defendant objects to the calculation of the advisory Guidelines range set out in the

Presentence Investigation Report (the "PSR").  (ECF No. 30.)  Specifically, the defendant raised

an oral objection at the sentencing hearing and asked for additional time to brief the objection.

The Court granted the defendant's unopposed oral motion for a continuance of the sentencing

and issued a briefing schedule for the objection.  (ECF No. 29.)  The Court rescheduled the

sentencing for February 27, 2023.

The defendant objects to the calculation of his Base Offense Level of 24, pursuant to

2K2.1(a)(2).  The defendant contends that his previous convictions of Distribute/Sell for Profit

Schedule I or II substances under Va. Code Ann. § 18.2-248 are not prior controlled substance

offenses under U.S.S.G. § 4B1.2.  Consequently, the defendant argues, his Base Offense Level

should be 14, not 24.  To reach a Base Offense Level of 24, the probation officer relied on

4B1.2(b), which states that a "'controlled substance offense' means an offense under federal or

state law, punishable by imprisonment for a term exceeding one year, that prohibits the

manufacture, import, export, distribution or dispensing of a controlled substance . . . or the

1

**J.A. 090**

possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." The defendant argues that this conviction does not qualify as a controlled substance offense because the Virginia statute "criminalizes attempted delivery of drugs."[1] (ECF No. 30 at 2.)

The Fourth Circuit held in *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022) that attempt offenses do not qualify as controlled substance offenses within the meaning of the United States Sentencing Guidelines. To reach this conclusion, the Court largely relied on decisions from three sister circuits—the D.C. Circuit, Third Circuit, and Sixth Circuit. *Id.* at 443 (discussing *United States v. Winstead*, 890 F.3d 1082 (D.C. Cir. 2018); *United States v. Nasir*, 982 F.3d 144, 156–60 (3d Cir. 2020) (en banc); and *United States v. Havis*, 927 F. 3d 382, 386 (6th Cir. 2019) (en banc) (per curium)). The Sixth and Third Circuits have now considered how their previous decisions in *Nasir* and *Havis* could extend to other controlled substance offenses under the same statutes and have rejected arguments like the one advanced by the defendant here. *See United States v. Garth*, 965 F.3d 493 (6th Cir. 2020) (finding that possession with intent to distribute is a controlled substance offense); *United States v. Dawson*, 32 F.4th 254 (3rd Cir. 2022) (basing its reasoning largely on *Garth* and finding that Pennsylvania's statute, which included "attempted transfer" in the definition of deliver, did not criminalize broader conduct than federal definition). This Court should follow suit.

The decision in *Campbell* did not, as defendant essentially advances, render distribution offenses under the federal Controlled Substances Act inapplicable under the career offender

---

[1] Va Code Ann. § 18.2-248 makes it "unlawful for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give, or distribute a controlled substance." Va Code Ann. § 54.1-3401 defines "distribute" as "to deliver other than by administering or dispensing a controlled substance." It further defines "deliver" as "actual, constructive, or attempted transfer of any item regulated by this chapter."

2

**J.A. 091**

guideline.[2]  Distribution offenses, such as the one at issue here, under federal and state law are a categorical match as the Virginia Code and federal law both define distribution the same.  *See* Va. Code Ann. § 54.1-3401; 21 U.S.C. § 802(8), (11).  The lines of reasoning in *Garth* and *Dawson* are particularly compelling.  The Court started by outlining the three-step categorical approach, the same approach used in *Campbell*.  *Garth*, 965 F.3d at 495.  First, the court must "map out what conduct is criminalized under the guidelines' definition.  Next, [the court must] do the same for conduct criminalized under the state law that led to the conviction."  Here, that would be U.S.S.G. § 4B1.2(b) and Va. Code Ann. § 18.2-248.  "Finally, [the court must] overlay the two: if the outer edges of the state law—often the "least culpable conduct" that the law proscribes—extend past the guidelines' definition, then the conviction doesn't count."  *Id.*

This three-step process leads to the conclusion that state felony convictions for distributing or selling schedule I/II substances *are* controlled substance offenses under U.S.S.G. § 4B1.2(b). At their core, both U.S.S.G. § 4B1.2(b) and Va. Code Ann. § 18.2-248 require proof "that the defendant committed one of the actions—manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give, or distribute—with an identified controlled substance."  *Ward*, 972 F.3d at 369.  Further, the definitions in Va. Code Ann. § 54.1-3401 mirror those in 21 U.S.C. § 802. They both define "distribute" as meaning "to deliver (other than by administering or dispensing) a controlled substance or a listed chemical."  21 U.S.C. § 802; Va. Code Ann. § 54.1-3401.  They both then further define "deliver" as "the actual, constructive, or attempted transfer of a controlled

---

[2] The Fourth Circuit addressed a distinct question of whether the "controlled substances" covered under the state law of conviction must be coextensive with those listed in the federal Controlled Substances Act in *United States v. Ward* and concluded that Virginia's controlled substance statute—18.2-248— "qualifies under the ordinary meaning of 'controlled substance offense' in § 4B1.2(b)."  972 F.3d 364, 374 (4th Cir. 2020).

substance . . . ." *Id.* Thus, under the categorical approach, just looking at the definitions of the state and federal laws, the defendant's prior conviction counts as a controlled substance offense.

However, the defendant relies on the Fourth Circuit's decision in *Campbell* to assert that because the definition of "deliver" includes "attempted transfer," the least culpable conduct criminalized under Va. Code Ann. § 18.2-282 is broader than that under U.S.S.G. § 4B1.2. In reaching their decision in *Campbell*, the Court relied heavily on the Sixth Circuit's decision in *Havis*. Notably, however, the Sixth Circuit recognized that they reached the result in *Havis* because the parties *agreed* that the least culpable conduct that Tennessee delivery prescribed was attempted delivery. *Garth*, 965 F.3d at 497. They further emphasized this point in *United States v. Thomas*, 969 F.3d 583 (6th Cir. 2020) by saying "[the Court] did not hold that the parties' shared assumption was correct; instead, the court accepted that assumption for the purpose of deciding the case." 969 F.3d at 585 (citing *Garth* and noting that *Havis* does not support an outcome that inclusion of "attempted transfer" in the definition of delivery makes it an attempt crime). Unlike in *Havis*, the parties here do not agree that the same applies for Virginia distribution crimes under Va. Code Ann. § 18.2-282.

In addition to pointing out that they never held that attempted delivery was the least culpable conduct, the Sixth Circuit in *Garth* and *Thomas*, as well as the Third Circuit in *Dawson*, held that "attempted transfer" is a completed delivery and, thus, laws almost identical to Va. Code. Ann. § 18.2-282 are not inchoate crimes.[3]

While the Sixth Circuit did not spend too much time expounding on the relationship between state definitions of "attempted transfer" and U.S.S.G. § 4B1.2, the Third Circuit provided

---

[3] The statutes analyzed in *Garth*, *Dawson*, and *Thomas* all mirror almost exactly the West Virginia statute at issue in *Campbell* and the Virginia statute at issue here.

an extensive analysis. By looking at definitions in Black's Law Dictionary, the definitions in the Pennsylvania statute at issue, as well as the Controlled Substances Act, the Third Circuit found that inclusion of attempted transfer in the definition did not authorize state governments to prosecute broader conduct than what is included in the federal definition and, thus, the statute at issue was still a controlled substance offense under U.S.S.G. § 4B1.2. *Dawson*, 32 F.4th at 263. The Third Circuit pointed out that the definition in the Controlled Substances Act (the "CSA") is the same as the state statute and, although U.S.S.G. § 4B1.2(b) does not directly incorporate the CSA's definitions by reference, they should still inform a Court's reading of the Guidelines. *Id.* The CSA has defined distribute to include attempted transfer since 1970, well before U.S.S.G. § 4B1.2(b) was enacted. *Id.* In addition, "when similar language is used in related statutes in functionally equivalent ways, we presume the same meaning applies." *Id.* Therefore, the Third Circuit concluded that the Commission, and consequently Congress, intended "distribution" to have the same meaning as the CSA. *Id.* at 264. To find that the Guideline excludes "attempted transfer" as a controlled substance offense would be inconsistent with prior holdings regarding predicate offenses under 21 U.S.C. § 841 and "[w]orse, it would mean embracing the absurd proposition that § 841—marked out by Congress as *the* paradigmatic controlled substance statute—is *not* categorically a controlled substance offense under the Guidelines."[4] *Id.* at 265. This compels the conclusion that an offense under Va. Code Ann. § 18.2-257 *is* a controlled substance offense despite the inclusion of "attempted transfer" under the definition of delivery.

Even further, if the defendant had been convicted of attempted distribution, he would have been charged under Va. Code Ann. § 18.2-257, Virginia's attempt statute. *See Garth*, 965

---

[4] It is easy to envision a scenario where we continue down rabbit holes of definitions to find lesser culpable offense in *every* offense rendering the term controlled substance offense meaningless under U.S.S.G. § 4B1.2.

F.3d at 498 (noting "the real analogy to *Havis*" would be if the defendant was convicted under Tennessee's separate attempt statute, which he was not).  Va. Code Ann. § 18.2-257 is a separate statute which criminalizes the attempt of any crime in the Drug Control Act.  Finding that Va. Code Ann. § 18.2-248 includes any attempt of the crimes listed would make § 18.2-257 redundant, which was likely not the intent of the drafters.

In conclusion, the defendant asks the Court to apply *Campbell* to the statute at issue in a way that would lead to absurd results.[5]  The Court in *Campbell* relied heavily on the decisions out of the Third and Sixth Circuit that were decided before *Garth*, *Dawson*, and *Thomas*.  Since those decisions, those Circuits have back stepped and rejected arguments just like the one the defendant raises here.  Further, the Court in *Campbell* was dealing with a delivery offense under a West Virginia statute.  The Fourth Circuit has not specifically addressed whether Va. Code Ann. § 18.2-248 is or is not a controlled substance offense under U.S.S.G. § 4B1.2.  For the reasons outline above and further expounded upon in *Garth* and *Dawson*, the Court should follow the reasoning in the Third and Sixth Circuit cases, find that Va. Code Ann. § 18.2-248 does not criminalize broader conduct than U.S.S.G. § 4B1.2, and overrule the defendant's objection.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:      _____/s/_____
Grace Bowen
Special Assistant United States Attorney

---

[5] He also asks the Court to look to the minute entry from one of Judge Novak's cases.  However, the minute entry simply changes the Base Offense Level because "Deft does not have any predicate offenses that qualify as a controlled substance offense as defined in U.S.S.G. § 4B1.2." While the defendant notes that it was in regard to the same exact objection, the defendant did not provide any explanation on how or why Judge Novak reached the conclusion.

Eastern District of Virginia
Newport News Division
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
gbowen@usa.doj.gov

**J.A. 096**

<u>Certificate of Service</u>

I HEREBY CERTIFY that on this 6th day of February 2023, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic

notification of such filing to all counsel of record.


By:  _____/s/_____
Grace Bowen
Special Assistant United States Attorney
Eastern District of Virginia
Newport News Division
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
gbowen@usa.doj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:22cr57** |
| | ) | |
| **WILLIAM ANTHONY DAVIS, JR.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S OBJECTION TO THE PRESENTENCE INVESTIGATION REPORT**

Defendant William Anthony Davis, Jr. replies to the government's response to his objection to the Presentence Investigation Report ("PSR"). ECF No. 31. In its filing, the government maintains that the PSR correctly calculated Mr. Davis's base offense level because his convictions under Virginia Code § 18.2-248 qualify as controlled substance offenses under U.S.S.G. § 4B1.2.[1] But the government's position is flatly inconsistent with the Fourth Circuit's binding decision in *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022).

In its response, the government does not even attempt to distinguish *Campbell* or its reasoning. Instead, the government argues that 1) other circuits have taken a different view of the law than the Fourth Circuit did in *Campbell*, and 2) the approach taken in *Campbell* will lead to "absurd" results. The problem for the government is that these arguments are inconsistent with *Campbell* itself. They are essentially arguments that *Campbell* was wrongly decided. Mr. Davis is happy to defend *Campbell*'s reasoning on its own terms. But the more straightforward response is that *Campbell* binds this Court.

The Fourth Circuit held that "Campbell's West Virginia conviction is not a controlled

---

[1] Mr. Davis previously explained why his prior conviction for robbery does not qualify as a crime of violence under the Guidelines. ECF No. 30, at 7 n.3 & ECF No. 25, at 2-3 n.1. The government, correctly, does not rely on the robbery conviction to support an increased base offense level.

**J.A. 098**

substance offense." *Campbell*, 22 F.4th at 449. Mr. Davis argued that "Virginia's statute has the same scope and definition that made West Virginia's statute fail to qualify as a controlled substance offense within the meaning of U.S.S.G. § 4B1.2." ECF No. 30, at 5. Unless the government can **distinguish** the West Virginia statute analyzed in *Campbell* from the Virginia statute at issue here, this Court must follow *Campbell* and hold that a conviction under the Virginia statute is not a controlled substance offense.

On that score, the government (correctly) makes no attempt to distinguish these state statutes. In fact, the government acknowledges that they are on all fours. In explaining the analytical relevance of cases from the Third and Sixth Circuits, the government writes that the "statutes analyzed in *Garth*, *Dawson*, and *Thomas* [from the Third and Sixth Circuits] all mirror almost exactly the West Virginia statute at issue in *Campbell* **and the Virginia statute at issue here**." ECF No. 31, at 4 n.3 (emphasis added). The government is correct in observing that the West Virginia statute at issue in *Campbell* and the Virginia statute at issue here mirror each other. That concession alone should resolve this objection in Mr. Davis's favor.

Respectfully submitted,

WILLIAM ANTHONY DAVIS, JR.

By:_____/s/_____
Andrew W. Grindrod
Virginia State Bar No. 83943
Assistant Federal Public Defender
Office of the Federal Public Defender
500 East Main Street, Suite 500
Norfolk, Virginia 23510
(757) 457-0800
(757) 457-0880 (telefax)
andrew_grindrod@fd.org

2

**J.A. 099**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:22cr57** |
| | ) | |
| **WILLIAM ANTHONY DAVIS, JR.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**NOTICE OF SUPPLEMENTAL AUTHORITY SUPPORTING DEFENDANT'S
OBJECTION TO THE PRESENTENCE INVESTIGATION REPORT**

Defendant William Anthony Davis, Jr. hereby provides notice of supplemental authority supporting his objection to the Presentence Investigation Report. ECF No. 30. The case referenced below was decided after briefing concluded. *Cf.* Fed. R. App. P. 28(j) (authorizing parties to notice pertinent and significant authorities that come to a party's attention after briefing concluded).

Just yesterday, Judge Gibney of this Court ruled for the defense on the **exact legal question** presented in Mr. Davis's case. In *United States v. Cradle*, the defense objected to a career-offender designation that was purportedly based on two Virginia drug convictions. Case No. 3:22cr99 (E.D. Va. Feb. 23, 2023) (Gibney, J.). Specifically, the defense argued that, because "the Virginia drug trafficking statute is virtually identical to the West Virginia statute at issue in *Campbell*, it cannot qualify as a controlled substance offense under U.S.S.G. § 4B1.2(b)." ECF No. 22, at 6, in *Cradle* (citing *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022) (attached as Def. Ex. 1). For its part, the government raised similar arguments to those it raised here. ECF No. 26, at 1-4, in *Cradle* (attached as Def. Ex. 2). The briefing in *Cradle* makes clear that the *Campbell* issue was the only argument presented. The career-offender designation in *Cradle* would rise or fall based solely on the determination whether—after *Campbell*—convictions under Virginia Code § 18.2-248 are controlled substance offenses under

1

**J.A. 100**

§ 4B1.2(b).

Judge Gibney sided with the defense and sustained the objection:

> OBJECTIONS TO PSR: *arguments heard on dft's obj. to career offender enhancement; the Court sustains the objection and the enhancement is removed resulting in an OL 25, CH IV, GR 84-105*

Sentencing Minutes, ECF No. 27, at 1, in *Cradle* (attached as Def. Ex. 3). In so holding, Judge Gibney decided the exact legal question presented in this case. He decided it the same way Judge Novak did in *United States v. Howell*, No. 3:22cr68 (E.D. Va. Jan. 19, 2023). As these judges have apparently recognized, this conclusion is dictated by *Campbell*.

We ask this Court to likewise apply *Campbell* and hold that Mr. Davis's convictions under Virginia Code § 18.2-248 cannot increase his offense level because they are not controlled substance offenses under U.S.S.G. § 4B1.2(b).

Respectfully submitted,

WILLIAM ANTHONY DAVIS, JR.

By:_____/s/_____
Andrew W. Grindrod
Virginia State Bar No. 83943
Assistant Federal Public Defender
Office of the Federal Public Defender
500 East Main Street, Suite 500
Norfolk, Virginia 23510
(757) 457-0800
(757) 457-0880 (telefax)
andrew_grindrod@fd.org

2

**J.A. 101**

**EXHIBIT**

**Def 1**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 3:22CR99 |
| | ) | Hon. John A. Gibney, Jr. |
| REVELLE HOWARD CRADLE, | ) | Sentencing: February 23, 2023 |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT

COMES NOW the defendant, Revelle Howard Cradle, by counsel Mary E. Maguire, and files his objections to the presentence report pursuant to Rule 32 of the Federal Rules of Criminal Procedure. Mr. Cradle has received and reviewed the presentence report ("PSR") with the assistance of counsel. Mr. Cradle objects to the career offender designation because he does not have two predicate offenses that qualify as a controlled substance offense, as that term is defined in U.S.S.G. § 4B1.2. (PSR ¶43).

Mr. Cradle entered a guilty plea to Count 1 of the pending indictment which charges him with Possession with Intent to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and (C). The maximum penalty for this offense is a mandatory minimum of five years' imprisonment and up to forty years' imprisonment, a fine of $5,000,000, and not more than four years of supervised release, and a special assessment of $100. Establishing the appropriate advisory guideline range is just the beginning of this Court's sentencing determination. Indeed, the Guidelines "now serve as one factor among several courts must consider in determining an appropriate sentence." *Kimbrough v. United States*, 552 U.S. 58, 90 (2007).

1

**J.A. 102**

## ARGUMENT

As listed in the PSR, Mr. Cradle has been convicted of the following Virginia drug offenses: Distribution of Cocaine (PSR ¶ 35), and Possession of Cocaine with Intent to Distribute. (PSR ¶ 37). Distribution and Possession with Intent to Distribute Cocaine is penalized under Va. Code Ann. 18.2-248. Neither of these convictions qualify as a "controlled substance offense," as that term is defined in U.S.S.G. § 4B1.2(b).

The Fourth Circuit has held that attempt offenses do not qualify as "controlled substance offenses" under § 4B1.2, *see United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022), and Virginia's statute, like the West Virginia statute in *Campbell*, is a statute that criminalizes attempt offenses. It is therefore outside the definition of a "controlled substance offense."

In *Campbell*, the defendant was sentenced as a career offender in part because of a West Virginia conviction for delivery of crack cocaine that the district court held was a "controlled substance offense" under U.S.S.G. § 4B1.2. *Id*. at 440-41. On appeal the appellant argued that 1) § 4B1.2 does not include attempt offenses, and the commentary adding them was invalid; and 2) the West Virginia statute included attempts and was therefore overbroad compared to the § 4B1.2 definition. The Fourth Circuit agreed on both points.

First, it held that the comment to § 4B1.2, which adds attempts and conspiracy, was invalid under *Stinson v. United States*, 508 U.S. 36, 38 (1993) because they were inconsistent with the text of § 4B1.2. They were inconsistent because the text of the guideline includes only completed offenses, and the addition of whole classes of inchoate offenses conflicted with the limited language of the guideline itself; commentary cannot "add to the Sentencing Guidelines' scope." *Id*. at 446 (brackets, citations omitted). The Fourth Circuit concluded that the plain text of U.S.S.G.

2

**J.A. 103**

§ 4B1.2(b) is inconsistent with its commentary to that Guideline, and this is the only "reasonable construction of" U.S.S.G. § 4B1.2(b)." *Id*. at 444, 446, 447.

Second, it examined the West Virginia statute and held that it included attempted, as well as completed, deliveries.

> The West Virginia conviction that served as one of the predicate offenses justifying Campbell's enhanced sentence arises from a statute that makes it "unlawful for any person to manufacture, *deliver*, or possess with intent to manufacture or deliver a controlled substance."[1]

*Id*. at 441-42 (citing W. Va. Code § 60A-4-401(a) (emphasis added)). The definitional statute states that "deliver . . . means the actual, constructive *or attempted* transfer from one person to another of" controlled substances or imitation or counterfeit controlled substances. (emphasis in opinion)." *Id*. at 442 (emphasis in opinion) (citing W. Va. Code § 60A-1-101(h)). Therefore, based on the clear text of the statutes, the Court concluded that "the least culpable conduct criminalized by the West Virginia statute is an attempt to deliver a controlled substance." *Id*. Thus, it was overbroad compared to the text of § 4B1.2, which does not include attempts.

Virginia's statute is virtually identical, and therefore the same result should follow. Virginia penalizes distribution, possession with the intent to distribute, or dispensing a controlled substance as follows:

Virginia Code § 18.2-248(A) provides:

[I]t shall be unlawful for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or **distribute** a controlled substance or an imitation controlled substance.

Virginia Code §248.1 reads:

---

[1] The Court employed the categorical approach in determining whether that statute included attempt offenses. *See Campbell*, 22 F.4th at 441 (citing *United States v. King*, 673 F.3d 274, 278 (4th Cir. 2012)) ("If the 'least culpable' conduct criminalized by the predicate offense statute does not qualify as a 'controlled substance offense,' the prior conviction cannot support a career offender enhancement.").

> Except as authorized in the Drug Control Act (§ 54.1-3400 et seq.), it is unlawful for any person to sell, give, **distribute** or possess with intent to sell, give, or distribute marijuana.

Va. Code Ann. § 18.2-248(A); Va. Code Ann. § 18.2-248.1 (emphasis added). "Distribute" is further defined in the Drug Control Act as follows:

> **"Distribute"** means to deliver other than by administering or dispensing a controlled substance.

Va. Code § 54.1-3401 (emphasis added). And lastly, "deliver" is defined in the same statute, in relevant part:

> **"Deliver"** or **"delivery"** means the actual, constructive, **or attempted transfer** of any item regulated by this chapter, whether or not there exists an agency relationship[.]

Va Code § 54.1-3401 (emphasis added). Therefore, the Virginia offense of distributing a controlled substance includes acts constituting the "attempted transfer" of a controlled substance. This reasoning has been confirmed by the Virginia Supreme Court:

> In Virginia, "**distribute**," as proscribed in Code §§ 18.2-248 and -248.1, means "to **deliver** other than by administering or dispensing a controlled substance." Code § 54.1–3401. "**Deliver**" means "the actual, constructive, **or attempted transfer**" of any controlled substance, "whether or not there exists an agency relationship," from one person to another. *Id.; Wood v. Commonwealth,* 214 Va. 97, 99, 197 S.E.2d 200, 202, *appeal dismissed,* 414 U.S. 1035, 94 S.Ct. 533, 38 L.Ed.2d 326 (1973).

*Moreno v. Baskerville*, 249 Va. 16, 18-19 (1995).

Thus, Virginia's drug trafficking statute has the same scope and definition that made West Virginia's drug trafficking statute ineligible to form a Career Offender predicate under U.S.S.G. § 4B1.2. Compare:

4

**J.A. 105**

| West Virginia (§§ 60A-4-401(a), 60A-1-101(h)) | Virginia (§§ 18.2-248(a), 18.2-248.1, 54-1-3400) |
|---|---|
| (a) Except as authorized by this act, it is unlawful for any person to manufacture, **deliver**, or possess with intent to manufacture or deliver a controlled substance.<br><br>(h) "Deliver" or "delivery" means the actual, constructive **or attempted transfer** from one person to another of: (1) A controlled substance, whether or not there is an agency relationship; (2) a counterfeit substance; or (3) an imitation controlled substance. | A. Except as authorized in the Drug Control Act (§ 54.1-3400 et seq.), it shall be unlawful for any person to manufacture, sell, give, **distribute**, or possess with intent to manufacture, sell, give or distribute a controlled substance or an imitation controlled substance.<br><br>**"Distribute"** means to **deliver** other than by administering or dispensing a controlled substance.<br><br>"Deliver" or "delivery" means the actual, constructive, **or attempted transfer** of any item regulated by this chapter, whether or not there exists an agency relationship. |

As this side-by-side shows, there is no material distinction between the West Virginia statutes at issue in *Campbell*, and the Virginia statutes at issue here. Neither statute qualifies as a "controlled substance offense" under § 4B1.2.

Since the *Campbell* decision, the Fourth Circuit has considered drug trafficking offenses in other states, including Maryland. In *United States v. Ryles*, No. 20-4513, 2022 U.S. App. LEXIS 16675 (4th Cir. June 16, 2022), the Court considered whether a Maryland conviction for attempted distribution of cocaine was a controlled substance offense under U.S.S.G. § 4B1.2.[2] Relying on *Campbell*, the Court held that, "[b]ecause U.S.S.G. § 4B1.2(b)'s definition of a 'controlled substance offense' does not include attempt offenses, the district court procedurally erred in calculating Ryles' Guidelines range . . . ." *Ryles*, 2022 U.S. App. LEXIS 16675, at *3. The Court reached the same conclusion with respect to the North Carolina and District of Columbia drug trafficking statutes. *See United States v. Locklear*, No. 19-4443, 2022 U.S. App. LEXIS 19588, at

---

[2] The Court considered whether the Maryland conviction qualified as a predicate offense for purposes of the enhanced base offense levels under U.S.S.G. § 2K2.1(a).

*5 (4th Cir. July 15, 2022) (holding that felony sale or delivery of a controlled substance within 300 feet of a school is not a controlled substance offense); *United States v. Monroe*, No. 20-4083, 2022 U.S. App. LEXIS 14446, at *1-2 (4th Cir. May 25, 2022) ("District of Columbia conviction for attempted possession with intent to distribute cocaine, which yielded an 18-month sentence, did not qualify, categorically, as a 'controlled substance offense.'"); *see also United States v. Govan*, No. 19-4681, 2022 U.S. App. LEXIS 12896, at *1 (4th Cir. May 12, 2022) (holding that a West Virginia conviction for delivery of heroin is not a controlled substance offense).

Therefore, as the Virginia drug trafficking statute is virtually identical to the West Virginia statute at issue in *Campbell*, it cannot qualify as a controlled substance offense under U.S.S.G. § 4B1.2(b). Should this Court sustain this objection, Mr. Cradle's base offense level would be 14 instead of 24. There would be a 2-level increase under U.S.S.G. §2K2.1(b)(4)(A), that would result in a total offense level of 16, minus 3 for acceptance with an advisory guideline range of 30-37 months.

For the reasons stated above, Mr. Cradle requests this Court sustain his objection to the presentence report.

Respectfully submitted,
REVELLE HOWARD CRADLE

By: _____/s/_____
          Counsel

Mary E. Maguire, Esq.
Va. Bar # 42505
Counsel for Revelle Howard Cradle
Assistant Federal Public Defender
Office of the Federal Public Defender
701 E. Broad Street, Suite 3600
Richmond, VA 23219
(804) 565-0860
(804) 648-5033 (fax)
Mary_Maguire@fd.org

6

**J.A. 107**

**EXHIBIT**

**Def 2**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) CRIMINAL NO. 3:22-CR-0099-JAG |
| | ) |
| REVELLE HOWARD CRADLE, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**RESPONSE IN OPPOSITION TO DEFENDANT'S OBJECTIONS TO CAREER
OFFENDER DESIGNATION AND MOTION FOR DOWNWARD VARIANCE**

The defendant's objections to the career offender enhancement should be rejected.  The

Fourth Circuit's decision in *United States v. Campbell* made clear that attempt offenses do not

qualify as controlled substance offenses within the meaning of the United States Sentencing

Guidelines.  That decision—largely following the paths of the United States Court of Appeals for

the Sixth Circuit and Third Circuit—did not, however, alter the landscape of controlled

substance offenses such that a federal conviction for possession with intent to distribute or

distribution offenses do not apply.  More importantly, the defendant's convictions in this case

were for manufacturing a controlled substance and possession with intent to manufacture under

Virginia law.  Virginia's statutory scheme tracks that of the federal Controlled Substances Act.

This Court, in keeping with the Third and Sixth Circuits, and consistent with the Fourth Circuit's

decision in *Campbell*, should reject the defendant's argument to extend *Campbell* to an illogical

extreme.

**J.A. 108**

"…[T]he Guidelines category of "distribution" offenses includes prohbitions on the "attempted transfer" of drugs, including Section 841(a). *United States v. Dawson*, 32 F.4th 254, 266 (2022). The "Guidelines cover distribution offenses at least to the extent those are defined under the CSA, which includes 'attempted transfer.'" *Id.* Virginia's law is a categorical match with federal law. The Court should overrule the objection.

## I.  BACKGROUND

On May 11, 2022, Richmond Police Officers executed a search warrant at defendant's mother's residence, where defendant had been storing illegal controlled substances that he intended to sell. ECF No. 22, ¶ 8. From the home, the police recovered 245 grams of cocaine, over 140 grams of heroin/fentanyl mix, 7 grams of fentanyl, 16 grams of crack cocaine, 6.5 grams of a mix of heroin, fentanyl, and para-fluorofentanyl, along with packaging material, cutting agent, digital scale, false-bottom containers, and two handguns. From defendant's person, the police recovered $1,279 in cash, and from defendant's car, the police recovered a loaded 9mm semiautomatic pistol with an extended magazine.

Defendant admitted that he was an ounce-weight drug trafficker and that he stored his drugs at his mother's residence.

## II.  APPLICATION OF THE CAREER OFFENDER DESIGNATION

When the Fourth Circuit reached its decision in *United States v. Campbell*, it relied upon three sister circuits—the D.C. Circuit, Third Circuit, and Sixth Circuit—and their analysis of the career offender guideline to conclude that the Commentary of the Guidelines cannot substantively add attempt offenses to the text of the guidelines. 22 F.4th 438, 443 (4th Cir. 2022) (discussing *United States v. Winstead*, 890 F.3d 1082 (D.C. Cir. 2018), *United States v.*

*Nasir*, 982 F.3d 144, 156–60 (3d Cir. 2020) (en banc), and *United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) (en banc) (per curiam).

Two of those circuits—the Sixth Circuit and Third Circuit—have now considered and rejected arguments like the one advanced by the defendant on the heels of those decisions. *See United States v. Garth*, 965 F.3d 493 (6th Cir. 2020); *United States v. Dawson*, 32 F.4th 254 (4th Cir. 2022). Those arguments were rejected. This Court should follow suit.

*Campbell*'s decision did not, as defendant essentially advances, render distribution offenses under the federal Controlled Substances Act inapplicable under the career offender guideline.[1] Distribution and possession with intent to distribute offenses under both federal and state law are a categorical match.

Virginia and federal law both define distribution the same. *See* Va. Code Ann. § 54.1-3401; 21 U.S.C. § 802(8), (11). As to the elements for possession with intent to distribute, in addition to possession, Virginia must prove that there was also an intent to distribute. *Cole v. Commonwealth*, 806 S.E.2d 387, 398 (Va. 2017). And to prove distribution, "circumstantial evidence," including "the quantity of the drugs seized, the manner in which they are packaged, and the presence of an unusual amount of cash, equipment related to drug distribution, or firearms" is sufficient. *Cole v. Commonwealth*, 806 S.E.2d 387, 398 (Va. 2017). No different federally. To establish possession with intent to distribute, the United States must show "(1) possession of the controlled substance; (2) knowledge of the possession; and (3) intent to distribute." *United States v. Hall*, 551 F.3d 257, 267 n. 10 (4th Cir.2009). "[T]he intent to

---

[1] Although the Fourth Circuit addressed a distinct question of whether the "controlled substances" covered under the state law of conviction were coextensive with those listed in the federal Controlled Substances Act in *States v. Ward*, the Fourth Circuit concluded that Virginia's controlled substance statute—18.2-248— which makes it "unlawful for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance or an imitation controlled substance" "qualify under the ordinary meaning of 'controlled substance offense' in § 4B1.2(b)." 972 F.3d 364, 374 (4th Cir. 2020).

distribute can be inferred from a number of factors, including but not limited to: (1) the quantity of the drugs; (2) the packaging; (3) where the drugs are hidden; and (4) the amount of cash seized with the drugs." *United States v. Collins*, 412 F.3d 515, 519 (4th Cir. 2005). No different with distribution. *See United States v. Brower*, 336 F.3d 274, 276 (4th Cir.2003) (laying out elements of distribution offenses); *Parker v. Commonwealth*, 2008 WL 1944141, *2 (Va. Ct. App. May 6, 2008) (affirming conviction for distribution of controlled substance).

Further, as the Third and Sixth Circuit explained, these offenses are not, as a legal matter, inchoate offenses. Rather, they are completed offenses. *Garth*, 965 F.3d at 497; *Dawson*, 32 F.4th at 259. This reality distinguishes them from the *Campbell* decision just the offenses in *Garth* and *Dawson* were distinguished from their *Campbell*-adjacent decisions.

In the present case, defendant was previously convicted of distribution of cocaine and possession of cocaine with the intent to distribute. ECF No. 22, ¶¶ 35, 37. Defendant's instant offense is possession with intent to distribute. Both the instant offense and defendant's prior convictions were all completed crimes that properly triggered the career offender guidelines. Thus, the Court should overrule the defendant's objection to the application of the career offender guidelines.

### III.    DEFENDANT'S MOTION FOR DOWNWARD VARIANCE

Defendant seeks a downward variance because "sentencing a non-violent drug offender as a career offender is senseless." ECF No. 23 at 1. In essence, defendant urges this Court to ignore the Commission's career offender guidelines that explicitly apply to individuals with two prior drug trafficking convictions. Those guidelines were mandated by Congress to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized. *See* 28 U.S.C. § 994(h). Further, Congress mandated that the Commission "assure

that the guidelines specify a sentence to a substantial term of imprisonment for defendants that

have a history or two or more prior federal state or local felony convictions for offenses

committed on different occasions." 28 U.S.C. § 994(i)((1). These guidelines are not "senseless."

Rather, they reflect the need for a sentence to promote respect for the law, provide just

punishment for the offense, afford adequate deterrence to criminal conduct and to protect the

public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(A), (B), (C). By its terms,

the career offender guidelines only apply to repeat offenders. Defendant urges this Court to

ignore certain repeat offenders as a matter of policy.

Although the Commission might have suggested that "drug only" convictions should be

removed from the Career Offender guidelines, they were not removed. And while the defendant

cites statistics of courts imposing below-guideline sentences in drug-only career offender cases,

this Court is dutybound to consider the § 3553(a) factors as they apply in ***this*** case, not how other

courts applied those factors in other cases. This Court must start with the properly applicable

guideline range. In this case, it is the career offender guidelines.

Defendant's crime of conviction carries a mandatory minimum sentence of 5 years'

imprisonment up to 40 years imprisonment. The career offender guidelines come back to 188 to

235 months, which is less than half the maximum statutory sentence defendant is facing. Thus,

even the high-end of the career offender guidelines is less than half of what Congress established

to be the maximum sentence for defendant's crime of conviction.

As a three-time repeat offender, defendant's sentence should reflect defendant's criminal

past. Applying the § 3553(a) factors to the present defendant, great emphasis should be placed

on a number of factors. First, defendant's crime was serious. Defendant did not just traffic large

quantities of seriously harmful drugs to include fentanyl and a fentanyl analogue, he armed

**J.A. 112**

himself.  He was carrying a 9mm semiautomatic pistol with an extended magazine.  Second, defendant has not been deterred from returning to large-scale, armed drug trafficking and has demonstrated a total lack of respect for the law.  Defendant's prior drug trafficking crimes were not his only prior crimes.  Defendant was charged with accessory after the fact of possession of cocaine prior to his two prior state drug trafficking convictions.  ECF No. 22 at ¶ 33.  Defendant was also convicted of possession of a weapon by an inmate.   ECF No. 22 at ¶ 38.  While incarcerated in the Virginia Department of Corrections, defendant had numerous disciplinary offenses, including refusing to work, fighting with a person, unauthorized use of mail, vulgar or insolent language, possession of gambling equipment, possession of contraband, being in an unauthorized area and disobeying an order, possession of contraband, unauthorized transfer of property, disobeying an order (twice), and lewd or obscene acts.  ECF No. 22 at ¶ 35.  While incarcerated in the Bureau of Prisons, defendant was found in possession of an unauthorized item and with destroy/dispose of item-search.  ECF No. 22 at ¶ 39.

A variance sentence of 84 months as proposed by the defendant will not sufficiently reflect the seriousness of the defendant's crimes, the defendant's prior criminal history, the defendant's lack of respect for the law, the need to deter the defendant from committing any future crimes or the need to protect the public.  The defendant's prior 10-year sentence did not.  The defendant's prior 92-month sentence did not.  In fact, less than a year after finishing supervised release, defendant was back to being a large-scale, armed drug trafficker.

The sentence imposed in this case must be sufficient to fulfill the purposes of sentencing as reflected in § 3553.  A variance sentence of 84 months will not.  For all of these reasons and for the reasons set forth in the government's sentencing position, the defendant should be sentenced within the advisory career offender guideline range.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:    _____/s/_____
       Olivia L. Norman
       VSB No. 31418
       Assistant United States Attorney
       Eastern District of Virginia
       919 E. Main Street, Suite 1900
       Richmond, VA 23219
       (804) 819-5400
       Fax: (804) 771-2316
       Email: Olivia.Emerson@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify on the 22nd day of February, 2023, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send a notification of such

filing (NEF) to Counsel of Record.

       _____/s/_____
       Olivia L. Norman
       VSB No. 31418
       Assistant United States Attorney
       Office of United States Attorney
       919 E. Main Street, Suite 1900
       Richmond, Virginia 23219
       Phone:  804-819-5400
       Fax:     804-771-2316
       Olivia.Emerson@usdoj.gov

7

**J.A. 114**

**SENTENCING MINUTES**

| EXHIBIT |
| --- |
| Def 3 |

DATE: 2/23/2023          CASE NUMBER: 3:22CR99

JUDGE: <u>GIBNEY</u>          CT REPORTER: G. Halasz, OCR

INTERPRETER: _____

UNITED STATES OF AMERICA          Olivia Norman

v.          COUNSEL

Revelle Howard Cradle          Mary Maguire

**SENTENCING ON COUNT(S):** ____1____          ( ) Criminal Information
(✓) Indictment ( ) Superseding Ind.

**OBJECTIONS TO PSR:** arguments heard on dft's obj. to career offender enhancement; the Court sustains the objection and the enhancement is removed resulting in an OL 25, CH IV, GR 84-105

**PRELIMINARY MATTERS:**
arguments heard on dft's motion for a downward variance – the motion is denied
_____

**STATEMENTS MADE BY:** GOV'T (✓) DEFENSE COUNSEL (✓) DEFT (✓)

**ON MOTION OF GOV'T, ( ) INDICTMENT (✓) REMAINING CTS. DISMISSED.**

DEFT ADVISED OF RIGHT OF APPEAL within 14 days of today  (✓)

DEFT REMANDED TO CUSTODY (✓)

**DEFENDANT TO VOLUNTARILY REPORT TO DESIGNATED INSTITUTION**
ON:_____ BY:_____
(  ) IF NO DESIGNATION MADE, REPORT TO U.S. MARSHAL IN RICHMOND

CASE SET:        BEGAN:        ENDED:        TIME IN COURT:
9:30 am        9:31 am        10:29 am        58 mins.

**J.A. 115**

**PAGE TWO (2)**

**SENTENCE TEXT**

**COUNT** __1__     IMPRISONMENT __90__ MOS.   CONCURRENT ( )   CONSECUTIVE ( )

CREDIT FOR TIME SERVED ON THIS CHARGE ( X )

SUPERVISED RELEASE __10__ YEARS

PROBATION _____ YEARS

FINE $_____   ( ) Fine not imposed

SPECIAL ASSESSMENT $100 due immediately

**COUNT** ____     IMPRISONMENT _____ MOS.   CONCURRENT ( )   CONSECUTIVE ( )

SUPERVISED RELEASE _____ YEARS   CONCURRENT ( )

PROBATION _____ YEARS   CONCURRENT ( )

FINE $_____   ( ) Fine not imposed

SPECIAL ASSESSMENT $_____ due immediately

**COUNT** _____     IMPRISONMENT _____ MOS.   CONCURRENT ( )   CONSECUTIVE ( )

SUPERVISED RELEASE _____ YEARS   CONCURRENT ( )

PROBATION _____ YEARS   CONCURRENT ( )

FINE $_____   ( ) Fine not imposed

SPECIAL ASSESSMENT $_____ due immediately

**CONSENT ORDER OF FORFEITURE MADE A PART OF JUDGMENT IN CASE (** ✓ **)**

**RESTITUTION ORDERED:** _____

_____

**RECOMMENDATION(S) TO BOP:**
( ✓ ) Designate dft. to (a facility near family) __Richmond__
( ✓ ) BOP 500-hr intensive drug treatment program, if the defendant qualifies and volunteers
( ) UNICOR program ( ) with _____ portion of earnings directed to child support
( ✓ ) Educational /Vocational training ( ) SHOCK Incarceration Program ( ) BRAVE Program

( ) OTHER:_____

**J.A. 116**

**PAGE THREE (3)**

**SPECIAL CONDITIONS of Probation / Supervised Release:**

_____ ✓ (1) Incur no new credit without approval of probation officer
_____ ✓ (2) Provide probation officer with access to financial information
_____ ✓ (3) Participate in drug/alcohol treatment, if deemed necessary; _____ Pay cost
_____ (4) Participate in mental health treatment, if deemed necessary; _____ Pay cost
_____ Participate in anger management
_____ ✓ (5) The defendant shall not consume any alcohol *or marijuana, even if legal.*
_____ ✓ (6) Participate in a program such as Narcotics Anonymous/Alcoholics Anonymous or a
similar secular program (any secular equivalent to NA/AA must be approved by the
probation officer and the Court.) Dft shall begin attendance within *10 days* of
release. Defendant shall attend 90 meetings within 90 days. Defendant shall obtain a
sponsor who will confirm the sponsor relationship with the probation officer.
_____ ✓ (7) Pay child support in amount ordered by social services or Court.
_____ ✓ (8) Defendant shall pay any balance owed on the S/A imposed by the Court
_____ ✓ Pay in installments of not less than $ *10* per month,
to begin 30 / *60* days after start of supervision until paid in full
_____ (9) Defendant to apply monies received from tax refunds, lottery winnings, and any
anticipated or unexpected financial gains to the Court-ordered financial obligation
_____ (10) Mandatory drug testing waived; ___ PO may still administer drug test if appropriate
_____ (11) Perform community service _____ HOURS during period of supervision
_____ (12) Participate in home confinement program for _____ with monitoring
_____ Permitted to work, attend church, or other approved activities
_____ Maintain telephone without special features; no cordless phone
_____ Pay costs of electronic monitoring
_____ (13) Defendant to be surrendered to BICE for deportation proceedings
_____ If deported, defendant to remain outside the United States
_____ (14) Waive all rights of confidentiality regarding mental health/substance abuse treatment
(or other treatment) to allow release of information to Probation, etc.
_____ (15-19) ___ Defendant shall register with the state sex offender registration agency in any state where he resides, is
employed, a student, etc., _____ Defendant shall not own or have a computer in his residence or place of employment. Also,
he shall not use a computer to access any online computer services at any location, including employment without the prior
approval of the probation officer. This includes any internet service provider bulletin board systems, or any other public or
private computer network. ___ Defendant shall not have any access to or possess any pornographic material, pictures
displaying nudity, or magazines using juvenile models or pictures of juveniles under the age of 18 years. ___ Defendant
shall not be in the presence of children under the age of 18 without another responsible adult being present. ___ Defendant
shall not accept any paid or volunteer positions involving children.
_____ (---) **Other special conditions:**

_____

_____

_____

_____

**J.A. 117**

This page intentionally left blank for double-sided pagination and printing

1

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF VIRGINIA
 2                 NEWPORT NEWS DIVISION

 3

 4   _____
                              )
     UNITED STATES OF AMERICA  )
 5                             )
     v.                        )    Criminal Case No.:
 6                             )    4:22 CR 57
     WILLIAM ANTHONY DAVIS, JR.)
 7   _____  )
                                    February 27, 2023
 8
            COMPLETE TRANSCRIPT OF SENTENCING
 9       BEFORE THE HONORABLE RODERICK C. YOUNG
            UNITED STATES DISTRICT COURT JUDGE
10

11   APPEARANCES:

12   Elizabeth Nielsen, Esquire
     Grace H. Bowen, Esquire
13   OFFICE OF THE UNITED STATES ATTORNEY
     721 Lakefront Commons
14   Suite 300
     Newport News, Virginia 23606
15
              Counsel on behalf of the United States
16

17   Andrew W. Grindrod, Esquire
     OFFICE OF THE FEDERAL PUBLIC DEFENDER
18   500 East Main Street
     Suite 500
19   Norfolk, Virginia 23510

20            Counsel on behalf of the Defendant

21

22

23

24              TRACY J. STROH, RPR
              OFFICIAL COURT REPORTER
25          UNITED STATES DISTRICT COURT
```

2

```
 1              (The proceeding commenced at 10:04 a.m.)
 2              THE CLERK:  In the matter of criminal case
 3    number 4:22 CR 57, United States of America v. William
 4    Anthony Davis, Jr.
 5              The United States is represented by Grace Bowen
 6    and Elizabeth Nielsen.
 7              The defendant is represented by Andrew Grindrod.
 8              Ms. Nielsen, is the government ready to proceed?
 9              MS. NIELSEN:  Yes, the government is ready.  And
10    thank you.
11              Good morning, Your Honor.
12              THE COURT:  Good morning.
13              THE CLERK:  And, Mr. Grindrod, is the defendant
14    ready to proceed?
15              MR. GRINDROD:  Yes.  Mr. Davis is ready.
16              Good morning again, Your Honor.
17              THE COURT:  Okay.  Government, why are we here
18    this morning?
19              MS. NIELSEN:  We're here this morning for the
20    sentencing of Mr. Davis.  And my co-counsel will be
21    handling arguments for the government on the objection
22    that was recently raised by the defense.
23              THE COURT:  Okay.  Very good.
24              All right.  So, government, do you have any
25    victims that needed notification pursuant to Title 18,
```

3

1  United States Code, Section 3771?

2              MS. NIELSEN:  No, Your Honor.

3              THE COURT:  All right.  Very good.

4              All right.  So, Mr. Grindrod, have you had a

5  sufficient opportunity to review the presentence report

6  with your client prior to appearing before me today?

7              MR. GRINDROD:  Yes, Your Honor.

8              THE COURT:  All right.  Mr. Davis, if you'd

9  stand up where you are, sir.

10             All right, Mr. Davis.  Did you receive a copy of

11 your presentence report?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  All right.  Did you read that

14 report?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  And did you review it with

17 Mr. Grindrod?

18             THE DEFENDANT:  Yeah.

19             THE COURT:  Did you have enough time to ask

20 Mr. Grindrod any questions you may have had about the

21 report?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  Okay.  Is there anything else you

24 need to discuss with Mr. Grindrod before we move forward

25 with your sentencing hearing?

**J.A. 121**

4

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Okay.  You may have a seat.  Thank

3  you very much.

4          All right.  Government, are there any additions,

5  corrections or objections to the presentence report from

6  your perspective?

7          MS. NIELSEN:  No, Your Honor.

8          THE COURT:  All right.  Mr. Grindrod, I do

9  believe you have an objection to the base offense level

10 based on the Fourth Circuit's ruling in *United States v.*

11 *Campbell*, 22 F.4th 438; is that correct?

12         MR. GRINDROD:  That is correct, Your Honor.

13         THE COURT:  All right.  I will hear you in any

14 way that you'd like to be heard on your objection.

15         MR. GRINDROD:  Thank you, Your Honor.  I don't

16 have any evidence.  I'll just have brief argument.

17         THE COURT:  Very good.

18         MR. GRINDROD:  So, Your Honor, I tried to set

19 out our objection in our written filings, but I'll just

20 briefly give a high-level overview of the argument and

21 where I think the parties' briefing ultimately leads.

22         So we set out our argument, which is essentially

23 that *Campbell*, and the Fourth Circuit's decision in

24 *Campbell*, looked at a West Virginia statute and whether

25 that West Virginia statute was a categorical match for the

5

1  controlled substance offense definition in Chapter 4 of

2  the guidelines.

3          And in our original filing, which is at ECF 30,

4  we tried to do a side-by-side comparison of the Virginia

5  statute at issue in this case and the West Virginia

6  statute that the Fourth Circuit already ruled on in

7  *Campbell*.  And what we tried to show, and what I think our

8  briefing shows, is that these statutes are

9  indistinguishable in any meaningful way that's relevant to

10 this question presented before Your Honor.

11         The government's response I don't think really

12 takes issue with the lack of a meaningful distinction

13 between the West Virginia statute and the Virginia

14 statute, and I hope that if that's wrong, the government

15 corrects me in their response here.

16         But the government does not meaningfully even

17 attempt to distinguish the two statutes at issue.  And I

18 think where that leaves Your Honor is that the government

19 has some arguments about whether *Campbell*, and the

20 reasoning in *Campbell*, should be the law, but this Court

21 and the Third Circuit and the Sixth Circuit cannot

22 abrogate a published decision by the Fourth Circuit.

23         And so, you know, the government --

24         THE COURT:  Well, it's a little more than what

25 the law should be.  I think what they're saying, if I'm

**J.A. 123**

6

1  not misunderstanding their argument, is that *Campbell* is

2  based on a Third Circuit and Sixth Circuit case and that

3  since those cases have been decided, there's been other

4  cases in those circuits, or at least in the Sixth Circuit,

5  that have cut against that reasoning.  The same reasoning

6  that the Fourth Circuit then used for *Campbell* --

7            MR. GRINDROD:  Right.

8            THE COURT:  -- I think is the Reader's Digest

9  version of their argument.

10           MR. GRINDROD:  Right.

11           THE COURT:  Yeah.

12           MR. GRINDROD:  And I would say you can think all

13 of that is right and you can think that the later cases

14 from those other circuits are a better reading of the law.

15 And I'm happy to explain why I don't think that's right.

16           But what I think the really fundamental, core

17 problem with that argument is that the Fourth Circuit

18 adopted the reasoning that it adopted and applied it to

19 this West Virginia statute.  So it's not just enough to

20 say that the cases that the Fourth Circuit relied on in

21 *Campbell* have led other courts to reach a different

22 ultimate conclusion.

23           The government has to say something about this

24 case that is different from *Campbell* to avoid having

25 *Campbell* not be just binding precedent.  And the only way

7

1  to do that is to say there's either a later Fourth Circuit

2  decision from *Campbell* or a later Supreme Court decision

3  that makes its reasoning no longer valid or that the

4  West Virginia statute that was analyzed in *Campbell* is

5  different in some way from the Virginia statute at issue

6  here.  And neither of those arguments I don't think are

7  being made.

8       So I think this is -- you know, I'm happy to get

9  into the weeds of the reasoning in *Campbell*, but the easy

10  answer to this question is that unless the government does

11  something to distinguish the West Virginia statute from

12  *Campbell* and the Virginia statute at issue here*, Campbell*

13  is binding and this Court doesn't have the discretion to

14  reason differently.  That reasoning has been done.

15       THE COURT:  Thank you very much, Mr. Grindrod.

16       All right.  I think, Ms. Bowen, you're

17  responding for the government.

18       MS. BOWEN:  Good morning, Your Honor.

19       THE COURT:  Good morning.

20       MS. BOWEN:  I've been a little sick.  So if you

21  can't hear me, just give me the signal and I'll speak up a

22  little bit.

23       Like the defense, I won't belabor our points too

24  much because I think we hit on it in our briefing pretty

25  thoroughly, and I think the more I try to talk about it,

8

1   sometimes the more complicated it gets.

2            But the point is not that the West Virginia

3   statute and the Virginia statute are totally different.

4   I'm not going to sit up here and try to say that they're

5   distinguishable in a way that they're not.

6            But the point is *Campbell* dealt with the

7   West Virginia statute.  It briefly said, okay, this

8   West Virginia statute has attempt in the language, so

9   therefore, you know, it's not a controlled substance

10  offense under 4B1.2, but they haven't made that ruling

11  about this Virginia statute.

12           And I think Your Honor hit on it perfectly when

13  we said it's not that we're saying *Campbell* is wrong.

14  What we're saying is those Third and Sixth Circuit cases

15  that it relied on have since been cut against, like you

16  said.

17           And there's been a whole line of cases where

18  they've reasoned that just because they made this decision

19  in an earlier case doesn't mean it categorically, for lack

20  of a better word, precludes all of the similar statutes

21  from being controlled substance offense statutes.  And I

22  think the important thing to note is that the

23  Sixth Circuit stated that their original case *Havis*, which

24  *Campbell* relied on heavily, they found that attempt was

25  the least culpable conduct under that statute because the

9

1   parties agreed to that.  They didn't make any sort of

2   finding, you know, for or against that agreement.  They

3   just said, okay, the parties agreed, we'll move forward

4   and go on.  And that's the case that *Campbell* relied on.

5           And since then, as we noted, the Third and

6   Sixth Circuits have said that that attempt to transfer

7   language does not make those statutes attempt statutes.

8           And I think something that demonstrates that

9   pretty clearly was Judge Allen's order, which the

10  government filed for the Court on Thursday, which in that

11  order, Judge Allen found that possession with intent to

12  distribute under the Virginia statute at issue here is not

13  an attempt crime and is a controlled substance offense

14  under 4B1.2.

15          So what that demonstrates is that just because

16  *Campbell* said this West Virginia statute prohibited

17  conduct broader than 4B1.2 doesn't mean that we can then

18  take the *Campbell* decision and blanketly apply it to all

19  similar statutes because it would lead to absurd results.

20  It would lead to results like a result that Judge Allen

21  rejected in finding that possession with intent to

22  distribute is a completed crime, it's not an attempt

23  crime.

24          And so the reasoning in *Campbell* just is not

25  practical under every offense in that Virginia statute.

**J.A. 127**

1  And I think that shows that this Court could make the

2  decision that the Virginia Code 18.2-248 does not

3  categorically criminalize conduct broader than 4B1.2.

4           And even further than that, Your Honor, as we

5  stated in our briefing, the Third and Sixth Circuits have

6  done a pretty detailed analysis of that attempt to

7  transfer language and found that actually attempt to

8  transfer language is also in the federal statutes,

9  particularly the Controlled Substances Act, which should

10 inform our reading of 4B1.2. And therefore, the state

11 statutes that include that language, particularly the

12 Virginia statute here, is a categorical match to the

13 federal statute as they define these crimes exactly the

14 same.

15          And I think the situation could be different if

16 the statute -- or if the defendant's previous convictions

17 were for attempted distribution, but they weren't. An

18 attempted distribution would be charged under

19 Virginia Code 18.2-257, as well as 18.2-248, because

20 Virginia criminalizes attempt of the crimes under 248 with

21 257. And so it's -- it's clear that 248 does not include

22 attempt crimes because that would make 18.2-257 a

23 superfluous code section that we would not need.

24          And so, Your Honor, without hitting the points

25 too many times here, I think our briefing outlines pretty

 1  clearly our position, and the Court should overrule the
 2  defendant's objection.
 3          And, actually, Your Honor, just one more point.
 4  I know the defense cited a couple minute entries of courts
 5  in this division that had granted those objections, but
 6  those minute entries provided no direction, no analysis.
 7  But what we've provided to you is an order from
 8  Judge Allen outlining pretty clearly her reasoning for
 9  finding that 248 is not -- does not criminalize broader
10  conduct.  So we'd ask you to overrule the objection,
11  Your Honor.  Thank you.
12          THE COURT:  Thank you very much.
13          All right.  Mr. Grindrod, it's your objection.
14  You don't have to, but is there anything else you'd like
15  to say?
16          MR. GRINDROD:  Just briefly, Your Honor.
17          THE COURT:  You can have the last word.
18          MR. GRINDROD:  So just to address a few points
19  that the government made.
20          So first, with respect to Judge Allen's order, I
21  don't think that you have to say that Judge Allen was
22  right or wrong here because on page 5 of Judge Allen's
23  order, Judge Allen makes a move that is just not one
24  that's available to the government here.
25          Judge Allen says that *Campbell* and the district

12

1   court cases that are cited in the defense's position paper

2   in that case involved either delivery or attempted

3   controlled substance offenses, not possession with intent

4   to distribute offenses.

5          So I think that that case -- the case that the

6   government cites there presents a separate question of

7   whether the Virginia statute is divisible between

8   possession with intent to distribute and distribution

9   offenses and if that divisibility exists, is a possession

10  with intent to distribute offense distinguishable and not

11  within the definition presented in *Campbell* that would be

12  problematic.

13         Paragraphs 28 and 29 of the PSR in this case

14  show distribute/sell for profit Schedule I or Schedule II

15  for both of the predicates at issue here.

16         So that intellectual move that Judge Allen made

17  to distinguish *Campbell* is not available to the government

18  here.  This is not a possession with intent to distribute

19  prior that could be saved by finding the Virginia statute

20  divisible somehow.

21         The second thing I would say about the district

22  court cases that we cited by referencing minute entries is

23  that I take the government's point that you don't have the

24  in-depth analysis conducted by those judges, but I think

25  when you read the briefing and the minute order together,

**J.A. 130**

13

1  it's pretty clear that the only argument that's being

2  raised for the points not to apply either in the career

3  offender context or the base offense level context is this

4  *Campbell* argument, and the minute entry makes clear that

5  the objection was sustained.

6         And so we at least have the holding, even if we

7  don't have kind of the precise reasoning that those judges

8  applied.  So I do think there's some persuasive value

9  there.

10         And the third thing that I'll end on is, you

11  know, I think the government should be commended in this

12  case because they are not -- I mean, we just heard an

13  explicit acknowledgment that the government is not trying

14  to distinguish the language of the Virginia statute from

15  the West Virginia statute.  I think that's intellectually

16  honest.  But that resolves this question.  *Campbell* is

17  binding.  They're saying the statute that was analyzed in

18  that case and the statute at issue here are

19  indistinguishable.  They're not even trying to distinguish

20  them.  That, right there, should end the analysis.

21         THE COURT:  All right.  Thank you very much,

22  Mr. Grindrod.

23         All right.  So Mr. Davis, by way of

24  Mr. Grindrod, objects to the presentence report's base

25  offense level of 24, stating that it should instead be 14.

14

1   Mr. Davis bases his objection on the Fourth Circuit's

2   ruling in *United States v. Campbell*, 22 F.4th 438, 4th

3   Cir. 2022, wherein the Court held that attempt offenses do

4   not qualify as controlled substances offenses under

5   Guideline Section 4B1.2.  Thus, the enhancement of

6   Mr. Davis' base offense level is improper because his

7   conviction is under Virginia Statute 18.2-248.

8        So in *United States v. Campbell*, the

9   Fourth Circuit held that attempt offenses do not qualify

10  as controlled substance offenses under Section 4B1.2.

11       Here, Mr. Davis has two state court convictions

12  under 18.2-248, a statute that, among other things,

13  criminalizes the attempted delivery of drugs.  After the

14  U.S. Supreme Court's ruling in *Stinson*, lower courts must

15  first look to the text of the U.S. Sentencing Guidelines

16  rather than to the commentary.  And here, the text of

17  United States Guideline Section 4B1.2 includes only

18  completed offenses, not inchoate offenses.

19       Thus, after the Court's reading of *Campbell* and

20  the reading of the briefs and considering the argument of

21  counsel, the Court concludes that Mr. Davis' convictions

22  under 18.2-248 of the Virginia Code are broader than the

23  definition of controlled substance offenses under

24  United States Sentencing Guideline Section 4B1.2.

25       Thus, the Court rules in favor of the defendant

1  and sustains his objection to the total offense level.

2  The base offense level will therefore be lowered from 24

3  to 14.  As a result, Mr. Davis is only entitled to a

4  two-level reduction for acceptance of responsibility,

5  resulting in a total offense level of 12.

6          All right.  So given the Court's ruling,

7  Mr. Davis' total offense level is now a 12.  His Criminal

8  History Category is IV, which yields an advisory

9  sentencing guideline range of 21 to 27 months

10 imprisonment.

11         Government, based on my ruling, is that the

12 correct guideline range?

13         MS. NIELSEN:  Yes, based on your ruling,

14 Your Honor.

15         THE COURT:  Mr. Grindrod?

16         MR. GRINDROD:  Yes, Your Honor.

17         THE COURT:  All right.  Any further objections,

18 Mr. Grindrod, to the presentence report?

19         MR. GRINDROD:  No, Your Honor.

20         THE COURT:  All right.

21         All right.  So given that, the presentence

22 report is hereby amended, accepted and adopted as amended.

23         And I'll ask the probation writer to amend the

24 presentence report based on my ruling.

25         The presentence report will be placed in the

16

 1  Court's official record and filed under seal.

 2          Now, government, I know you're moving for an

 3  upward variance in this case.  Do you have any evidence to

 4  present on that variance or anything else as it relates to

 5  your position on sentencing?

 6          MS. NIELSEN:  No evidence.  Only argument,

 7  Your Honor.

 8          THE COURT:  Thank you.

 9          All right.  Mr. Grindrod, given my ruling, are

10  you still asking for a downward variance?

11          MR. GRINDROD:  No, Your Honor.  I'll amend my

12  request and ask for a sentence at the low end of the

13  guidelines, 21 months.

14          THE COURT:  Okay.  Very good.  Do you have any

15  evidence to present in support of your position on

16  sentencing?

17          MR. GRINDROD:  Your Honor, we submitted two

18  character letters, and we would ask the Court to consider

19  those, but I have no additional evidence this morning.

20          THE COURT:  All right.  A letter from Tiffany

21  Smith, the girlfriend of Mr. Davis, and a letter from

22  Angel Williams, a friend and mother of Mr. Davis'

23  children.  I have reviewed both of those letters prior to

24  taking the bench, and I will include those as evidence in

25  your case.

**J.A. 134**

17

1          Government, any rebuttal evidence to those

2   letters?

3          MS. NIELSEN:  No, Your Honor.

4          THE COURT:  All right.  I'll hear argument.

5          MS. NIELSEN:  Thank you.

6          Your Honor, the United States maintains its

7   request for an upward variance to a sentence of ten years,

8   which would be sufficient to meet the 3553(a) factors, but

9   not greater than necessary.

10         Since the parties have already briefed this,

11  I'll just focus on responding to four points that have

12  been raised by the defendant.

13         So first, a sentence of ten years reflects the

14  seriousness of the offense here.  The defendant seems to

15  be arguing in his position paper that because he only

16  possessed a firearm as a prohibited person, meaning that

17  he wasn't caught committing any other felonies at the same

18  time, that he didn't commit a serious offense.  But

19  possessing a firearm as a convicted felon is itself a

20  dangerous crime.  Indeed, Congress recently underscored

21  the seriousness of the offense when it increased the

22  statutory maximum sentence for a 922(g) offense from

23  10 years to 15 years imprisonment.

24         And while that law went into effect in June, so

25  after the instant offense here occurred in March, it's

18

1  worth noting that in five recent cases the Fourth Circuit
2  has referred to the date of the conviction, as opposed to
3  the date of offense, as the relevant date for when the
4  15-year statutory maximum would apply in a particular
5  case.  One of the most recent cases was *United States v.*
6  *Breeden*, Case Number 21-4671, decided by the Fourth
7  Circuit in December 2022.  I'm happy to provide the cites
8  for the other cases if helpful for the Court.

9          But just to be clear, the United States is not
10 arguing that the 15-year statutory maximum necessarily
11 applies here, just that given the implications of the
12 current Fourth Circuit case law, it seems that it could
13 and yet the United States is only asking for a 10-year
14 sentence here.

15         Second, contrary to the defendant's arguments,
16 the nature of his offense is not mitigating.  The
17 defendant claims that he did the right thing in the moment
18 and reduced the risk of a dangerous situation, arguing
19 that he should get credit for what he describes as a
20 super-acceptance of responsibility for admitting that he
21 was carrying a gun.

22         But he ignores everything that he himself did to
23 create the dangerous situation in the first place.  The
24 defendant did not do the right thing when, knowing that he
25 was a prohibited person, he chose to carry a loaded

1  semiautomatic weapon while also driving a car on a revoked

2  license and using a handheld device.

3          He didn't do the right thing when, after

4  officers turned on their lights and sirens to pull him

5  over, he instead took off, running through a red light and

6  crashing into another vehicle, placing the occupants of

7  that other car and everyone else in the area at risk.  He

8  didn't do the right thing when, after the crash, he got

9  out of the car with the gun concealed under his genitals

10  or when he was arrested, searched, handcuffed, placed in a

11  patrol car and driven towards the magistrate's office, all

12  without admitting that he still had a gun on his person.

13          Now, the defendant claims that he should get

14  credit for not trying to discard the gun or hide it either

15  in the police cruiser or in the police facility to which

16  he was being driven.  But that raises the question of

17  exactly what it was the defendant was trying to do when he

18  repeatedly asks for his handcuffs to be moved from behind

19  his body to the front of his body, citing a shoulder

20  injury that switched from the right to the left as he was

21  describing it, which would have meant that his hands would

22  have been positioned where he would have had easier access

23  to the gun, or what he was trying to accomplish when he

24  was moving around so much in the back of the car that a

25  gun that had been concealed under his genitals, to the

20

1  point where it wasn't discovered during a search, had
2  moved so that it was visible and hanging partly out of his
3  waistband by the time it was taken from him.

4         And, of course, we don't know today what the
5  defendant would have done if he had been able to reach his
6  loaded gun.  We don't know if he would have tried to
7  discard it in the police car.  We don't know if he even
8  would have tried to turn it against the officers, but the
9  fact that he wasn't successful in reaching his gun wasn't
10 for lack of trying.

11        The defendant should also not get credit for
12 what he describes as voluntarily telling the officers that
13 he had a firearm in his pants in order to help keep
14 everyone safe that day.

15        This was not a spontaneous admission borne out
16 of a selfless desire to reduce the risks to everyone
17 involved.  It was only after he had tried to escape arrest
18 in the first place, he tried to have the handcuffs moved
19 to the front, tried to move around so much that the
20 officers noticed he was acting suspiciously, and
21 repeatedly asked him if he had anything illegal on his
22 body, and at a point where he was only blocks away from
23 the magistrate's office where the gun, which, again, at
24 that point was now visible in his waistband, would have
25 been discovered anyway.  So this was not a

1  super-acceptance of responsibility but an admission of the

2  inevitable.  It was cutting his losses only after he

3  exhausted all other possible options.

4       Third, an upward variance to a sentence of

5  ten years would not create any sentencing disparities.

6  The handful of cases that the defendant cites in his

7  position paper are distinguishable.  In *United States v.*

8  *Lawrence Jones*, for example, the defendant there received

9  a sentence of 28 months.  But he had a Criminal History

10 Category of II, compared to the defendant's IV, and he

11 appeared to have been living crime free for five years.

12      Instead, a better comparison would be to the

13 15-year mandatory minimum sentence to which the

14 defendant's three prior convictions for serious drug

15 offenses would have qualified him under the Armed Career

16 Criminal Act had the government charged and proved that

17 they occurred on different occasions.

18      Of course, consistent with current DOJ policy

19 and in light of the Supreme Court's recent decision in

20 *Wooden v. United States*, the United States is not arguing

21 that a mandatory 15-year sentence applies to the

22 defendant.  Instead, that his long and often violent

23 criminal history, which includes the fact that he

24 committed not only this offense but his prior four

25 felonies while either on probation or while actually still

22

1  in prison, requires an upward variance to protect the

2  public from his further crime.

3          And, in fact, in the *Hucks* and *McDonald* cases

4  cited in the government's papers, the Fourth Circuit has

5  affirmed similar above guideline sentences in 922(g) cases

6  based on criminal history, exactly when the district court

7  varied upward to the same sentence that would have applied

8  under the ACCA.

9          And finally, I won't dwell on the letters of

10 support from the defendant's current and former

11 girlfriends, but it bears noting that, as detailed in

12 paragraph 54 of the PSR, the defendant was previously

13 caught on recorded jail calls threatening another

14 girlfriend and telling her what statements to make to the

15 judge during sentencing to, quote, feed the judge and

16 lawyers some bullshit to get me out, end quote.

17         So in conclusion, Your Honor, the United States

18 respectfully requests an upward variance to a ten-year

19 sentence, which would be sufficient, but not greater than

20 necessary here.

21         THE COURT:  Thank you.

22         MS. NIELSEN:  Thank you, Your Honor.

23         THE COURT:  All right.  Mr. Grindrod.

24         MR. GRINDROD:  Your Honor, I would ask the Court

25 to impose a sentence at the low end of the guidelines.

**J.A. 140**

23

1   And I set out the reasons in support of that sentence in

2   my position paper so I'll highlight some of that today but

3   use most of my time to respond to some of the government's

4   arguments that it made this morning.

5           First, with respect to the statutory maximum, I

6   think it's pretty clear that the statutory maximum here is

7   ten years.  The ex post facto clause would obviously

8   prohibit a sentence that would be an increase more severe

9   going into effect after Mr. Davis engaged in the criminal

10  conduct here.

11          So what the government is asking for is a

12  statutory maximum sentence on a guilty plea where the

13  guidelines call for about two years.  So that's an

14  extraordinary upward variance request.  They're not asking

15  for a sentence slightly above the guidelines.  They're

16  asking for a sentence roughly five times the guidelines at

17  the statutory maximum.

18          To support its argument, the government has a --

19  I guess a response to our argument about what exactly

20  happened with this gun coming into police possession.  I

21  don't see any -- well, I don't see a lot of the facts that

22  the government relied on in its oral presentation this

23  morning being anywhere in this record.  So I would direct

24  the Court to the statement of facts and to the paragraph

25  that follows the statement of facts that's in the PSR

1  about the recovery of the firearm.  But a lot of the

2  aggravating facts that the government alleged this morning

3  are just not in this record, and we would object to

4  considering anything along those lines.

5          And then, of course, there's the government's

6  argument about ACCA, which the government agrees that the

7  Armed Career Criminal Act does not apply.  It never

8  charged Mr. Davis.  It never alleged that these offenses

9  were committed on different occasions, on occasions

10 different from one another.  And, in fact, ACCA would not

11 apply -- ACCA does not apply not because of some

12 technicality, but because these offenses did not occur on

13 occasions different from one another.

14         There are three convictions that the government

15 is referring two, two of which happened within essentially

16 two weeks of each other, February 16th and March 1st, and

17 the third fell within a six-month time period.  We know

18 from *Wooden* that that would be a fact-intensive inquiry.

19 It's our position that it's one that the jury would have

20 to make, but the government routinely argues in other

21 cases -- just in the *Lee* case that was before Your Honor a

22 month and a half ago maybe, the government made extensive

23 arguments about how conduct over the course of years was

24 all part of the same conduct for relevant conduct

25 purposes, but the relevant conduct purposes analysis is a

25

1 fact-intensive inquiry about whether things happened at

2 the same time or whether they're separated, similar to the

3 different occasions test announced in *Wooden*.

4          So the government is justifying their request

5 for an extreme upward variance based on the admitted

6 inapplicability but purported potential applicability of

7 the sentencing enhancement, none of which has been

8 litigated because the government didn't charge it or

9 allege it in the indictment.  So I don't think that's an

10 appropriate thing for the Court to consider.

11          And, in fact, the things that have been

12 litigated in this case, the applicability of guideline

13 enhancements, the applicability of the controlled

14 substance offenses and whether that should lead to an

15 increased base offense level, those are legal questions

16 that have actually been presented, actually been decided,

17 and the resulting guideline range that's the starting

18 point and initial benchmark for deciding the appropriate

19 sentence is 21 to 27 months.

20          So those are my responses to the government's

21 points, Your Honor.

22          And I would note that the guidelines in this

23 case do not account for significant mitigation.  Some of

24 that mitigation is what my friend on the other side

25 commented on about the circumstances of Mr. Davis telling

26

1  the officers that there was a firearm in his pants.  But

2  if there's some controversy about whether that's supremely

3  demonstrating some extraordinary level of acceptance,

4  what's not in dispute at all is the extraordinary level of

5  difficulty and hardship that Mr. Davis had to overcome in

6  his life.

7          And 3553(a) talks about considering the

8  nature -- or the history and characteristics of the

9  defendant, but that -- the only thing that the guidelines

10  take into account are his criminal history.  The other

11  parts of his history are not taken into account by the

12  guidelines.  The fact -- and we set this out in our

13  position paper, but the difficulty of growing up in the

14  environment that he did and surviving the abuse that he

15  did, these aren't just sad things that he had to endure.

16  We cite the academic literature and the findings by the

17  CDC and the Department of Justice itself about how these

18  adverse childhood experiences lead to long-term negative

19  effects.  We talk about, also in our position paper, the

20  documented disabilities that Mr. Davis had to overcome.

21          And so yes, his criminal history is part of what

22  this Court has to consider, and that's in the guidelines.

23  He's in Criminal History Category IV.  That affects his

24  guideline range.  But the questions of all the things he

25  had to endure in his life and that, I think, undoubtedly

**J.A. 144**

1  contributed to him taking that path earlier in his life,

2  those are not baked into the guidelines.

3        And the last thing I would say, Your Honor, is

4  part of our argument about why this is not -- this is a

5  serious offense.  It's a felony offense, and it's one in

6  which both sides are asking for some term of

7  incarceration.  That's serious when someone loses their

8  liberty.  So we're not asking for a slap on the wrist.

9  But Mr. Davis' conduct should be viewed in context.  It

10  should be viewed as somebody who came home and, by all

11  accounts, whether you read it in the letters or you see

12  his employment history, he was doing the right thing in

13  many ways.

14        And the government's right.  He should not have

15  had a gun.  That's why he's in this courtroom.  That's why

16  he's facing prison time at all.  But his -- the fact that

17  there is no evidence or suggestion that he had that gun

18  for any nefarious purpose and the significant strides that

19  he had made in terms of employment, creating a stable life

20  for himself, integrating into not just the community but

21  into a family where he was a productive member of society

22  and a productive member of the family, those are all

23  things that I think suggest that this Court can impose a

24  sentence that punishes the conduct -- a sentence of

25  21 months punishes the conduct and takes his conduct

1  seriously -- but also recognizes that this was not part of

2  some ongoing criminal activity.  And there's no evidence

3  that he was involved in any broader criminal activity.  In

4  fact, there's a lot of evidence to suggest that this time

5  when he came home, he had largely done things the right

6  way.

7         THE COURT:  All right.  You may stay at the

8  podium, and I'll ask your client to join you there.

9         So before I move forward, I just want to -- one

10 of the things, Mr. Grindrod, you raised is that there were

11 statements made by the government that weren't present in

12 this record.  And the only thing that I really see that

13 they said as it relates to the facts -- well, a couple of

14 things, but the big thing is about the facts underlying

15 the reckless driving, the car crash, running away from the

16 car crash.  I won't consider any of that.

17        But I will consider the following:  "A review of

18 the government's file revealed that after officers placed

19 the defendant under arrest for reckless driving, he was

20 searched incident to the arrest and placed in the back of

21 a patrol car.  He began complaining of pain from the

22 handcuffs.  Officers adjusted the handcuffs twice.  The

23 defendant asked to be handcuffed in the front, and

24 officers denied the request.  While being transported, the

25 defendant began moving around in the back seat of the

1  vehicle.  He told officers that it was because of a

2  shoulder condition, but since his handcuffs had already

3  been adjusted twice, officers became suspicious and asked

4  him if he had anything illegal on his body.  After being

5  asked multiple times and hesitating on answering all of

6  them, the defendant confessed to having a firearm hidden

7  on -- on his genitals.  Officers pulled over and gave him

8  commands to tell them the exact location of the firearm.

9  The firearm was located in his waistband and was secured."

10         So I read that because there is information in

11 there that is not in the statement of facts.  There were a

12 couple of facts that were raised about the gun raising up

13 through -- through the waistband and the circumstances of

14 the reckless driving that were not -- that are not in the

15 record.

16         So to the extent that things were stated that

17 were not in the record, I'm not going to consider them

18 under the nature, circumstances, and seriousness of the

19 offense, but I will consider the information that's in the

20 presentence report, along with what's in the statement of

21 facts.

22         All right.  Fair enough?

23         MR. GRINDROD:  That's fair, Your Honor.  I would

24 only add that there's also a reference, in paragraph 65 of

25 the presentence report, to the fact that Mr. Davis had

30

1  hurt his shoulder on the job, and that was unobjected to

2  by the government.

3      So I think the notion that there was a fake

4  shoulder injury, or I think there was reference in the

5  proffer that he was changing which shoulder was

6  referenced, I would suggest that that's not only not in

7  the record, but contradicted by an unobjected to paragraph

8  in there.

9      THE COURT:  All right.  Very good.  Thank you.

10     All right.  So, Mr. Davis, you don't have to,

11  but is there anything you'd like to say before I pronounce

12  sentence?

13     THE DEFENDANT:  Yes.  I'd like to address you

14  and the Court.  I just want to start off by apologizing to

15  you first, Judge, and apologizing to the DA, my family for

16  the penalties that I brought forth to court.  I feel as

17  though I matured a lot, but I'm still also human while I

18  realize I made a costly mistake that has affected my

19  friends and family, as well as the public.

20     I only ask for forgiveness from my family and

21  anyone else that these charges may effect.  I only look to

22  learn from my mistakes, move forward and understand my

23  focus determines my reality.  I wish to do my time

24  productively and get back home to my family where I can

25  continue to execute my goals.  And that will be it.

31

```
 1           THE COURT:  Okay.  Thank you very much,
 2  Mr. Davis.
 3           All right.  So I've reviewed the presentence
 4  report and the attached sentencing guidelines, which are
 5  advisory, and I've considered the government's position on
 6  sentencing and the defendant's position on sentencing, the
 7  defendant's letters of support, the argument of counsel,
 8  and the defendant's allocution.
 9           I've also reviewed all of the sentencing factors
10  outlined in Title 18, United States Code, Section 3553(a).
11  Specifically, I've considered the nature, circumstances
12  and the seriousness of the offense.  The presentence
13  report describes the nature and circumstances of the
14  firearm charge.  The evidence of Mr. Davis' guilt was
15  substantial.  He was arrested for reckless driving and
16  upon being transported to the magistrate's office, the
17  officers found a semiautomatic handgun on his person.  The
18  evidence further shows that Mr. Davis knowingly possessed
19  the firearm as a felon, and that his right to possess the
20  firearm had not been restored.  I also read paragraph 8
21  from the presentence report, which also illuminated some
22  of the facts and circumstances around the arrest.
23           I've also considered the history and
24  characteristics of Mr. Davis.  Mr. Davis' childhood was
25  marked by instability, sickness, and abuse.  His father
```

32

1   abused alcohol and crack cocaine.  His stepfather

2   physically abused him.  And both his stepfather and mother

3   also abused drugs.  He spent time in the hospital as a

4   child and dealt with learning disabilities.  As referenced

5   earlier, the Court has received letters of support from

6   two of his friends who he's had relationships with,

7   including his girlfriend and the mother of one of his

8   children.

9        The Court has also considered the need for the

10  sentence imposed to promote respect for the law, to

11  provide just punishment for the offense, to afford

12  adequate deterrence to criminal conduct, and to protect

13  the public from the further crimes of the defendant.

14       When considering these factors, the Court notes

15  that Mr. Davis has an extensive criminal history that

16  began when he was 19 years old, which includes convictions

17  for robbery, gang activity, distribution or sale of

18  Scheduled I or II controlled substances, and driving on a

19  suspended license.

20       All of these convictions result in Mr. Davis

21  having a Criminal History Category of IV.  The Court also

22  notes that Mr. Davis committed the instant offense that's

23  before me while under a period of court supervision.

24       The Court also considers the need to provide the

25  defendant with educational or vocational training, medical

33

1  care and other correctional treatment.  Mr. Davis has a

2  high school Graduate Equivalency, a GED.  Thus, the Court

3  will recommend that Mr. Davis be permitted to seek

4  educational and vocational training while he's

5  incarcerated.

6        The Court also considers the advisory sentencing

7  guideline range, and after granting the defendant's

8  objection to the advisory sentencing guidelines based on

9  the ruling in *Campbell*, the total offense level for

10 Mr. Davis is 12.  He has a Criminal History Category

11 of IV, which yields an advisory sentencing guideline range

12 of 21 to 27 months imprisonment.

13       The Court also considers the kinds of sentences

14 available, the need to avoid unwarranted disparities in

15 sentencing, and the Court has considered both arguments

16 from the government and from the defense as to that

17 3553(a) factor.  The Court considers any pertinent policy

18 statements and the need to provide restitution to any

19 victims of the offense.  And I don't believe restitution

20 is an issue here.

21       Now, the government moves for an upward variance

22 based on the nature of the offense, the history and

23 characteristics of Mr. Davis, and specific and general

24 deterrence, the need for just punishment, and the need to

25 protect society.  The government is requesting an upward

34

1   variance of 120 months based on those factors.

2          And so the Court has reviewed the presentence

3   report, has considered the nature and circumstances of the

4   offense, has considered Mr. Davis' background, both the

5   troubled background he had as a child and the parental

6   influences on him, and has considered his history and

7   characteristics of what he's done since he's 19 years old.

8          Having considered the arguments and the

9   Section 3553(a) factors, I'm going to grant the

10  government's motion for an upward variance.  Mr. Davis

11  committed this offense after sustaining at least two other

12  convictions involving drug distribution.  Moreover,

13  Mr. Davis' actions and attempting to conceal the firearm

14  from law enforcement upon his arrest placed a number of

15  individuals in serious danger.  Mr. Davis has an extensive

16  criminal history, alleged gang affiliations, his repeated

17  incarceration.

18         He's had -- and what is most troubling to the

19  Court is his disciplinary record while incarcerated, which

20  is laid out in the presentence report, but while

21  incarcerated on the robbery offense that occurred in

22  Richmond, not too far from here, where he and another

23  individual robbed a woman by knocking her to the ground

24  and taking contents that were in her purse, while

25  incarcerated for that, Mr. Davis was sanctioned for

1  disobeying orders 11 times; for being in unauthorized

2  areas three times; for failing to follow institutional

3  procedures three times; for using -- for being under the

4  use of drugs or pertaining to the use of unprescribed

5  drugs three times; vulgar or insolent gestures or language

6  directed toward employees twice; lewd or obscene acts

7  directed toward or in the presence of another twice;

8  indecent exposure twice; failure to follow written and

9  proposed institutional rules and regulations twice;

10  threatening bodily harm; possession of unauthorized or

11  unprescribed drugs; stealing, intentionally

12  destroying/altering property; violations of conditions of

13  conditional penalties/suspension for any Category I

14  offenses; inciting a riot; and tampering with security

15  materials, devices or equipment.

16         And in addition to all of that, also, every time

17  Mr. Davis has been convicted of a crime since he was

18  released on that robbery conviction, after committing all

19  of these offenses while incarcerated, he's done so while

20  he's been under a period of supervision from the Court.

21         So obviously, what has happened now has not

22  worked, and I don't believe, when I look at this record,

23  that a guideline range of 21 to 27 months is sufficient,

24  given the nature of the circumstances that's before me now

25  and his criminal history and his history and

36

1  characteristics when I look at everything as a whole.

2        Therefore, it is the judgment of the Court that

3  the defendant, William Anthony Davis, Jr., is hereby

4  committed to the custody of the United States Bureau of

5  Prisons to be imprisoned for a term of 72 months on

6  Count One.  The Court finds that this sentence is

7  sufficient, but not greater than necessary, pursuant to

8  the factors enumerated in Title 18, United States Code,

9  Section 3553(a).  The defendant shall be given credit for

10 any time served pursuant to Title 18, United States Code,

11 Section 3585.

12       Mr. Davis, upon your release from incarceration,

13 you shall be placed on supervised release for a term of

14 three years on Count One.  Within 72 hours of your release

15 from the custody of the Bureau of Prisons, you shall

16 report to the U.S. Probation Office in the district in

17 which you've been released.

18       While on supervised release, you shall comply

19 with all of the mandatory terms of supervised release as

20 outlined in Title 18, United States Code, Section 3583(d)

21 and which are in your presentence report.  Namely, you

22 shall not commit another federal, state or local crime.

23 You shall not unlawfully possess a controlled substance.

24 You shall not possess a firearm or other destructive

25 device.

37

1          While on supervised release, you shall also

2   comply with all of the standard conditions of supervised

3   release that have been adopted by this court and are set

4   forth in your presentence report and to which you've

5   raised no objection.

6          While on supervised release, you shall also

7   comply with these additional special conditions:  You

8   shall provide the probation officer access to any

9   requested financial information.

10          If you test positive for a controlled substance

11  or show signs of alcohol abuse, you shall participate in a

12  program approved by the United States Probation Office for

13  substance abuse treatment, which program may include

14  residential treatment and testing to determine whether you

15  have reverted to the use of drugs or alcohol, with partial

16  costs to be paid by you, all as directed by the probation

17  officer.

18          You shall participate in a program approved by

19  the United States Probation Office for mental health

20  treatment.  The cost of this program is to be paid by you,

21  as directed by the probation officer.

22          You shall waive all rights of confidentiality

23  regarding substance abuse or mental health treatment in

24  order to allow the release of the information to the

25  U.S. Probation Office and authorize communication between

38

1   the probation officer and the treatment provider.

2           The Court has considered your negative net worth

3   and lack of liquid assets, your lifestyle and financial

4   needs as reflected in the presentence report, your earning

5   potential and the two dependents relying on you for

6   support.  The Court finds that you are not capable of

7   paying a fine, but you are capable of paying the following

8   penalties:  A special assessment of $100 per count of

9   conviction.

10          The special assessment shall be due in full

11  immediately.  Any balance remaining unpaid on the special

12  assessment at the inception of supervision shall be paid

13  by you in installments of not less than $25 per month

14  until paid in full.  Said payments shall commence 60 days

15  after your supervision begins.

16          With respect to recommendations, the Court

17  recommends that you receive educational and vocational

18  training while incarcerated.  The Court recommends that

19  you receive an evaluation for the need for substance abuse

20  treatment and mental health treatment while incarcerated,

21  and the Court recommends that you be housed as close to

22  your family as possible, although it is ultimately up to

23  the Bureau of Prisons to decide where you will be housed.

24          So, Mr. Davis, you pled guilty without a plea

25  agreement, and I'm not suggesting that there's a reason

39

1  for appeal, but should you desire to appeal, you have to

2  file a written notice of appeal within 14 days of today's

3  date.  If you don't file a notice within that time period,

4  the Court of Appeals may determine that you've waived your

5  right to appeal.  Do you understand that?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  All right.  Mr. Grindrod, your

8  representation of Mr. Davis shall extend through the

9  filing of a notice of appeal should there be a request for

10 the same.

11         MR. GRINDROD:  Yes, Your Honor.

12         THE COURT:  You all may return to your seat.

13         All right.  I have before me a consent order of

14 forfeiture as it relates to the firearm in question that's

15 the subject matter of this case, and based on that, I will

16 go ahead and endorse that now.

17         All right.  Government, do we have any remaining

18 charges and any indictments that we need to deal with?

19         MS. NIELSEN:  No, Your Honor.

20         THE COURT:  All right.  Very good.

21         So, government, is there anything else we need

22 to address today?

23         MS. NIELSEN:  Nothing further from the

24 United States, Your Honor.

25         THE COURT:  Okay.  Mr. Grindrod, anything else?

**J.A. 157**

40

 1          MR. GRINDROD:  No, Your Honor.

 2          THE COURT:  Okay.  Mr. Davis, would you stand up

 3  where you are, please?

 4          All right, Mr. Davis.  So you've been before

 5  courts a number of times, and I hope -- you know, I hope

 6  it's going to finally sink in this time after this term of

 7  imprisonment, that you'll get your life together.  And I

 8  hope that when you come out, that you'll never be standing

 9  before me or any other judge as a defendant ever again,

10  and I wish you luck in the service of your sentence.  All

11  right.

12          Ms. Jones, anything else on this case?

13          THE CLERK:  You signed the consent order?

14          THE COURT:  I did, yes.

15          THE CLERK:  No.  That's it.

16          THE COURT:  Okay.  I'm going to take a brief

17  recess between now and the next case.

18          All right.  Let's stand in recess.

19          (The proceeding concluded at 10:57 a.m.)

20

21              REPORTER'S CERTIFICATE

22     I, Tracy J. Stroh, OCR, RPR, Notary Public in and for

23  the Commonwealth of Virginia at large, and whose

24  commission expires September 30, 2023, Notary Registration

25  Number 7108255, do hereby certify that the pages contained

**J.A. 158**

41

1   herein accurately reflect the stenographic notes taken by
2   me, to the best of my ability, in the above-styled action.
3        Given under my hand this 2nd day of April 2023.

4
5                              _____
                                      /s/
                               Tracy J. Stroh, RPR
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Case 4:22-cr-00057-RCY-DEM   Document 38   Filed 02/27/23   Page 1 of 7 PageID# 191

AO 245B (Rev. 09/19) (VAE 01/22)  Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT
## Eastern District of Virginia
### Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | Case Number:    4:22cr57 |
| WILLIAM ANTHONY DAVIS, JR. | USM Number:    15476-510 |
| | Defendant's Attorney: Andrew Grindrod, AFPD |

The defendant pleaded guilty to Count 1.

The defendant is adjudged guilty of these offenses:

| Title and Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 922(g)(1) and 924(e)(1) | Felon in Possession of a Firearm | 03/20/2022 | 1 |

The defendant is sentenced as provided in pages 2 through 7 of this Judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

The defendant has been found not guilty on count(s)
Count(s)              ☐ is    ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

2/27/2023
Date of Imposition of Judgment

/s/
Signature of Judge

Roderick C. Young, United States District Judge
Name and Title of Judge

2/27/2023
Date

**J.A. 160**

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case                                                    Page 2 of 7
          Sheet 2 - Imprisonment

___

Case Number:          4:22cr57
Defendant's Name:     Davis, William Anthony

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a
term of 72 MONTHS ON COUNT 1. The defendant shall receive credit for time served pursuant to 18 U.S.C. § 3585.

The Court makes the following recommendations to the Bureau of Prisons:

1. The defendant shall receive educational and vocational training while incarcerated.
2. The defendant shall receive an evaluation for the need of substance abuse treatment and mental health treatment while
   incarcerated.
3. The Court recommends that the defendant be housed as close to his/her family as possible.

The court makes the following recommendations to the Bureau of Prisons:

☒   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐   at _____ ☐ a.m. ☐ p.m. on_____.

    ☐   as notified by the United States Marshal.

The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐   before 2 p.m. on _____ .

☐   as notified by the United States Marshal.

☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows: _____

_____

Defendant delivered on _____ to_____
at_____, with a certified copy of this Judgment.


                                        _____
                                        UNITED STATES MARSHAL


                        By              _____
                                        DEPUTY UNITED STATES MARSHAL



**J.A. 161**

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case                                                                      Page 3 of 7
Sheet 3 – Supervised Release

---

| | |
|---|---|
| **Case Number:** | **4:22cr57** |
| **Defendant's Name:** | **Davis, William Anthony** |

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of 3 YEARS ON COUNT 1.

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    ☐  The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.  ☐  You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.  ☐  You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.  ☐  You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.  ☐  You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**J.A. 162**

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case                                                                                           Page 4 of 7
    Sheet 3 – Supervised Release

---

| Case Number: | 4:22cr57 |
|---|---|
| Defendant's Name: | Davis, William Anthony |

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov

Defendant's Signature _____    Date _____

**J.A. 163**

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case                                                    Page 5 of 7
Sheet 3A – Supervised Release

---

**Case Number:**              **4:22cr57**
**Defendant's Name:**         **Davis, William Anthony**

# SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant shall provide the probation officer access to any requested financial information.

2.  If the defendant tests positive for a controlled substance or shows signs of alcohol abuse, the defendant shall participate in a program approved by the United States Probation Office for substance abuse treatment, which program may include residential treatment and testing to determine whether the defendant has reverted to the use of drugs or alcohol, with partial cost to be paid by the defendant, all as directed by the probation officer.

3.  The defendant shall participate in a program approved by the United States Probation Office for mental health treatment. The cost of this program is to be paid by the defendant, as directed by the probation officer.

4.  The defendant shall waive all rights of confidentiality regarding substance abuse/mental health treatment in order to allow the release of information to the United States Probation Office and authorize communication between the probation officer and the treatment provider.

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case                                                                    Page 6 of 7
    Sheet 5 – Criminal Monetary Penalties

---

**Case Number:**           **4:22cr57**
**Defendant's Name:**    **Davis, William Anthony**

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $  100.00 | $ | $ | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

    If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $ | $ | |

☐ Restitution amount ordered pursuant to plea agreement  $

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:
    ☐ the interest requirement is waived for the ☐ fine ☐ restitution.
    ☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**Payments of Restitution are to be made payable to the Clerk, United States District Court, Eastern District of Virginia.**

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case                                                    Page 7 of 7
Sheet 6 – Schedule of Payments

| | |
|---|---|
| Case Number: | 4:22cr57 |
| Defendant's Name: | Davis, William Anthony |

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☐   Lump sum payment of $_____ due immediately, balance due
       ☐   not later than _____ , or
       ☐   in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B**  ☒   Payment to begin immediately (may be combined with ☐ C, ☒ D, or ☐ F below); or

**C**  ☐   Payment in equal    *(e.g., weekly, monthly, quarterly)* installments of $      over a period of      *(e.g., months or years)*, to commence      *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**  ☒   Payment in equal monthly installments of not less than $25.00 per month, to commence 60 days after release from imprisonment to a term of supervision; or

**E**  ☐   Payment during the term of supervised release will commence within      *(e.g., 30 or 60 days)* after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

☐   Joint and Several

| Case Number Defendant and Co-Defendant Names *(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| | | | |

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☒   The defendant shall forfeit the defendant's interest in the following property to the United States:
    **See Consent Order of Forfeiture entered and filed in open court on 2/27/23.**

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

**J.A. 166**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Newport News Division

UNITED STATES OF AMERICA

      v.                          Criminal Case No. 4:22cr57

WILLIAM ANTHONY DAVIS, JR.,

      Defendant.

## **NOTICE OF APPEAL**

NOTICE is hereby given that William Anthony Davis, Jr., Defendant in the above-named

case, hereby appeals to the United States Court of Appeals for the Fourth Circuit from the judgment

entered on February 27, 2023. *See* ECF Doc 38.

Respectfully submitted,

WILLIAM ANTHONY DAVIS, JR.

By               /s/
                 Andrew W. Grindrod
                 Virginia State Bar No. 83943
                 Assistant Federal Public Defender
                 Attorney for William Anthony Davis, Jr.
                 Office of the Federal Public Defender
                 500 E. Main Street, Suite 500
                 Norfolk, Virginia 23510
                 Telephone: 757-457-0800
                 Facsimile: 757- 457-0880
                 Email: andrew_grindrod@fd.org

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of March, 2023, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to the following:

Elizabeth Nielsen, SAUSA
Grace Bowen, SAUSA
Office of the United States Attorney
721 Lakefront Commons, Suite 300
Newport News, Virginia 23606
Telephone: 757-591-4000
Email: elizabeth.nielsen@usdoj.gov
        gbowen@usdoj.gov

And I hereby certify that I will mail the document by U.S. mail to the following non-filing
user once he reaches his BOP destination:

William Anthony Davis, Jr., BOP Reg. No. 15476-510

By    _____/s/_____
        Andrew W. Grindrod
        Virginia State Bar No. 83943
        Assistant Federal Public Defender
        Attorney for William Anthony Davis, Jr.
        Office of the Federal Public Defender
        150 Boush Street, Suite 403
        Norfolk, Virginia 23510
        Telephone: 757-457-0800
        Facsimile: 757- 457-0880
        Email: andrew_grindrod@fd.org

**J.A. 168**